**LOEB & LOEB LLP**
Schuyler G. Carroll
Daniel B. Besikof
Noah Weingarten
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Fax: (212) 407-4990
Email: scarroll@loeb.com
        dbesikof@loeb.com
        nweingarten@loeb.com

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| | ) Chapter 11 |
| | ) |
| | ) Case No. 19-45422 |
| | ) Case No. 19-45423 |
| In re: | ) Case No. 19-45424 |
| | ) Case No. 19-45425 |
| Absolut Facilities Management, LLC, *et al.* | ) Case No. 19-45426 |
| | ) Case No. 19-45427 |
| Debtors.[1] | ) Case No. 19-45428 |
| | ) Case No. 19-45429 |
| | ) |
| | ) (Joint Administration Requested) |
| | ) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO (A) OBTAIN
POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1),
364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND (B) USE CASH COLLATERAL**

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

**PURSUANT TO 11 U.S.C. § 363, (C) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (D) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)**

By this Motion (this "**Motion**"), the above-captioned debtors (the "**Debtors**"), as debtors and debtors-in-possession herein, request the entry of an order, substantially in the form attached hereto (the "**Proposed Order**"), (a) authorizing, but not directing, the Debtors to (i) obtain postpetition financing, (ii) use cash collateral, (iii) grant adequate protection and certain protections to prepetition secured parties; and (b) scheduling a final hearing on the Motion. In support of this Motion, the Debtors respectfully represent as follows:

**Preliminary Statement**

1.      The relief sought in this Motion is critical for the Debtors to pay their ordinary course expenses, finance their chapter 11 cases, and ultimately, to reorganize as a going concern. As further described in the Wyse Declaration (as defined below), the Debtors' immediate objectives in these chapter 11 cases are to: (a) provide for payment to their creditors; and (b) restructure their unsustainably high lease obligations to landlords. The proposed financing is designed to allow the Debtors to achieve these objectives.

2.      ABS DIP, LLC (the "**Lender**"), an entity related to and controlled by the Debtors' principal, Israel Sherman, has agreed to support the Debtors' chapter 11 cases so that the Debtors may reorganize and maximize value for all creditors and parties in interest. Specifically, the Lender has agreed to provide up to $2,000,000 in a secured, superpriority, debtor-in-possession, credit facility (the "**DIP Facility**"), which will be made available upon the entry of the Interim DIP Order. The DIP Facility will be secured by the Collateral (as hereinafter defined) described below.

3.      The DIP Facility will be junior to the obligations of Capital Finance, LLC, the Debtors' pre-petition lender (the "**Pre-Petition Lender**"), as well as all other pre-petition liens

that are perfected as of the Petition Date, subject to the Debtors' right to subsequently challenge or avoid any such liens during these Chapter 11 Cases.  The Debtors seek authorization to use the Pre-Petition Lender's cash collateral throughout the pendency of these cases, in exchange for the Debtors' offer to make regular monthly payments of interest at the pre-petition non-default rate set forth in the pre-petition loan agreements, and offer replacement liens senior to those of the Lender, in each case solely to the extent of any diminution in the value of the Prepetition Collateral (as hereinafter defined) occurring from and after the Petition Date (the "**Diminution**"), that may be caused by or arising as a result of (A) the incurrence and payment of the DIP Obligations (as hereinafter defined), (B) the use of Pre-Petition Collateral (including cash collateral), (C) the granting of the DIP Liens (as hereinafter defined), (D) the subordination of the Pre-Petition Obligations to the Carve-Out (each as hereinafter defined), and (E) imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

4.    Access to the DIP Facility will provide the Debtors with otherwise unavailable capital that is essential to fund the operations of these chapter 11 cases and avoid irreparable harm to the Debtors' estates.  As described below and in the Wyse Declaration, the Debtors reached out to over 20 different lenders who typically lend in distressed situations regarding the possibility of postpetition financing.  None of these lenders agreed to provide any funding at this time. Indeed, only 6 signed a non-disclosure agreement, and ultimately none other than the Lender expressed any interest in considering making a loan of any nature to the Debtors in the timeframe in which the Debtors needed to obtain financing, although the Debtors reserve the right to continue discussions with such parties to assess their cash needs postpetition if a better offer for financing is made in the Debtors' business judgment.  The DIP Facility was negotiated at arms'

length and has been reviewed and approved by an independent advisor[2] of the Debtors, with separate counsel negotiating the facility terms on behalf of the Lender.  The resulting DIP Facility incorporates terms favorable to the Debtors that were unavailable through other financing options.

5.    Based on the above, the Debtors believe that they are unable to obtain any other postpetition financing on terms more favorable than the DIP Facility.  As a failure to secure financing and use cash collateral would effectively mean the end of these chapter 11 cases, the wind-down of the Debtors' operations, and the displacement of hundreds of sick and elderly individuals from the Debtors' nursing home facilities, the Debtors request that the Court grant the relief requested.

## Jurisdiction and Venue

6.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.    The statutory predicates for the relief requested in this Motion are sections 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of the Bankruptcy Code, Bankruptcy Rules 2002,4001, 6004, and 9014, and Local Rule 4001-5.

## Background

8.    On September 10, 2019 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") commencing the above captioned cases (the "**Chapter 11 Cases**").  The Debtors continue to manage and operate their business as debtors-in-possession pursuant to Bankruptcy Code

---

[2] William K. Lenhart has been appointed as independent advisor to the Debtors, with sole authority to consider and approve any related party transactions. In a corporate structure, Mr. Lenhart's title likely would be independent director. The Debtors' organizational structure, however, does not provide for directors. Thus, he has been given a different title, even though his role is that of a typical independent director.

§§ 1107 and 1108.  Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of the Chapter 11 Cases.

9.      An official committee of unsecured creditors has yet to be appointed in these Chapter 11 Cases.  Further, no trustee or examiner has been requested or appointed in these Chapter 11 Cases.

10.      A detailed description of the Debtors and their business, the facts and circumstances leading up to the filing of the Debtors' Chapter 11 Cases, and the facts supporting this Motion are set forth in greater detail in the *Declaration of Michael Wyse in Support of Debtors' Chapter 11 Petitions and First-Day Motions* (the "**Wyse Declaration**"), which is being filed concurrently herewith and is incorporated by reference in this Motion.

## The Pre-Petition Secured Financing

11.      As of the Petition Date, certain Debtors are parties to financing arrangements with Pre-Petition Lender.  Specifically, Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC; Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC; Absolut Center for Nursing and Rehabilitation at Allegany, LLC; Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC; Absolut Center for Nursing and Rehabilitation at Gasport, LLC; and certain non-debtor entities (collectively, the "**HUD Borrowers**") are party to that certain Credit and Security Agreement dated as of May 22, 2009 among the HUD Borrowers and the Pre-Petition Lender (as amended, the "**HUD Prepetition Loan Agreement**") in the maximum outstanding principal amount of $5,800,000.  Additionally, Absolut Facilities Management, LLC and Absolut Nursing and Rehabilitation Center of Westfield, LLC (collectively, the "**Non-HUD Borrowers**") are parties to that certain Credit and Security Agreement dated as of May 22, 2009 among the Non-HUD Borrowers and the Pre-Petition Lender (as amended, the "**Non-HUD Prepetition**

**Loan Agreement**", and together with the HUD Prepetition Loan Agreement, the "**Pre-Petition Loan Agreements**") in the maximum outstanding principal amount of $920,000. The obligations under the Pre-Petition Loan Agreements are secured by liens on substantially all of the personal property of the HUD Borrowers and Non-HUD Borrowers, as described in more detail in the Pre-Petition Loan Agreements (collectively, the "**Pre-Petition Collateral**"). Additionally, Absolut at Orchard Brooke, LLC has also granted liens on substantially all of its assets to the Pre-Petition Lender. As of the Petition Date, the HUD Borrowers and Non-HUD Borrowers owe approximately $5,000,000 under the HUD Prepetition Loan Agreement and approximately $700,000 under the Non-HUD Prepetition Loan Agreement, exclusive of accrued and unpaid interest (collectively, the "**Pre-Petition Obligations**").

12.     As set forth in more detail in the Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Using Their Cash Management System and (B) Maintain Existing Bank Accounts and Business Forms; (II) Waiving Certain Deposit Guidelines; and (III) Granting Related Relief, filed with the Bankruptcy Court contemporaneously with this Motion (the "**Cash Management Motion**"), as additional security for the Pre-Petition Obligations, the majority of the Debtors accounts receivable (other than for Orchard Brooke) are deposited by accounts debtors into lockbox accounts (collectively, the "**Lockbox Accounts**") that are subject to liens in favor of the Pre-Petition Lender and that are swept daily by the Pre-Petition Lender, M&T Bank, and CFG Community Bank (collectively, the "**Deposit Banks**").

## The Debtor-in-Possession Financing

13.     The Debtors' assets are fully encumbered by liens in favor of the Pre-Petition Lender. However, the Debtors believe that the value of their assets exceeds the Pre-Petition

Obligations, with not less than $15 million in accounts receivable owing from Medicare and Medicaid.  As described in more detail in the Wyse Declaration, the Debtors do not receive borrowing availability for the majority of their accounts receivable from the Pre-Petition Lender due to the accounts being more than 180 days old, despite the fact that the Debtors eventually collect the vast majority of these receivables in the ordinary course of their businesses.

14.    The DIP Facility consists of a $2.0 million revolving line of credit to be provided by the Lender to the Debtors.  Amounts repaid under the DIP Facility are permitted to be reborrowed.  The DIP Facility will be junior in all respects to the Pre-Petition Obligations, including the proposed adequate protections liens in favor of the Pre-Petition Lender, as well as all other pre-petition liens that are perfected as of the Petition Date, subject to the Debtors' right to subsequently challenge or avoid any such liens during these Chapter 11 Cases.  There are no origination or prepayment fees owing to the Lender, no financial covenants, and no significant milestones other than those relating to entry of the Interim Order and Final Order.  Accrued and unpaid interest under the DIP Facility is payable on the last business day of each month (and shall be paid in connection with any borrowing request), and principal under the DIP Facility will be payable upon the maturity or termination of the DIP Facility.

15.    Prior to the Petition Date, the Debtors engaged in a process to identify new capital providers and post-petition lenders.  The Debtors did not receive any offers for postpetition financing more favorable than those being offered by the Lender.  Indeed, the Debtors did not receive **any** other offers for postpetition financing.  The Debtors submit that due to the lack of any significant unencumbered assets in which to grant a security interest, the nature of the Debtors' businesses, and the unwillingness of any other lender to offer financing that would not

prime the Pre-Petition Lender or other pre-petition secured parties that the Lender is the only viable financing source for the Debtors.

16.     The Debtors determined that neither the sole use of cash collateral, nor the sole reliance on the DIP Facility, would be sufficient on its own, to provide sufficient liquidity to allow the Debtors to operate their businesses in an appropriate manner. Further, in the event of any delay in receiving proceeds of cash collateral post-petition from the Deposit Banks via the Lockbox Accounts and operating accounts, the Debtors need to ensure that they have adequate sources of liquidity to meet daily working capital needs. Consequently, the DIP Facility, combined with the ongoing use of cash collateral, will give the Debtors the liquidity they need, at least in the immediate short-term, to obtain breathing room and effectuate a restructuring and reorganization of their affairs to right size their ongoing expenses and repay their creditors while continuing to operate as a going concern and preserve jobs and minimize disruption to their patients and customers.

## **Relief Requested**

17.     By this Motion, the Debtors request entry of the Interim Order and the Final Order, substantially in the forms attached hereto, (a) seeking (i) the ability to obtain postpetition financing on the terms and conditions set forth on Exhibit A hereto (the "**DIP Loan Agreement**"), (ii) authorization for the Debtors to grant superpriority administrative claim status, pursuant to § 364(c)(1) of the Bankruptcy Code, to the Lender in respect of all obligations under the DIP Loan Agreement (the "**DIP Obligations**") (subject to the Carve-Out (as defined below)), (iii) authorization to provide adequate protection to the Pre-Petition Lender, and (iv) grant certain protections to the Lender; (b) pursuant to Bankruptcy Rule 4001, to schedule a preliminary hearing on this Motion and obtain authorization, from the entry of the Interim Order until the final hearing (the "**Final Hearing**"), to obtain credit under the terms contained in the Loan Documents

and to utilize the Pre-Petition Lender's cash collateral (the "**Cash Collateral**") to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates; (c) requesting the Court schedule the Final Hearing as soon as practicable after the 21st day following the entry of the Interim Order to consider approval of the relief requested on a final basis and establish the date that is seven (7) days prior to the Final Hearing as the deadline for parties to file objections to the Motion; and (d) such other relief as this Court shall deem appropriate.

## Summary of Material Terms of the DIP Facility

18.    The following chart contains a summary of the material terms of the proposed DIP Facility as required by Bankruptcy Rule 4001(b)(1)(B) and 4001(c)(1)(B).

| Summary of Material Terms of DIP Facility | |
| --- | --- |
| **Borrowers** | The Debtors.  The Debtors will be jointly and severally liable for all loans, advances, debts, liabilities and obligations under the DIP Facility. |
| **Guarantors** | None |
| **Lender** | ABS DIP, LLC |
| **Borrowing Limit** | $2,000,000 |
| **Interest Rate** | 14%.  Upon the occurrence of an event of default, the interest rate shall be increased by 2%. |
| **Payments** | Accrued and unpaid interest shall be payable on the last business day of each month, and in connection with any notice of borrowing. All unpaid principal shall be payable in full on the Termination Date. |
| **Collateral** | All assets of the Debtors, whether now owned or hereafter acquired, and all proceeds thereof, including, without limitation, all personal property, all real property, all equipment, inventory, deposit accounts, securities accounts, cash, and cash equivalents of the Debtors, any claims and causes of action of the Debtors including without limitation all commercial tort claims, but excluding avoidance actions as well as any claims for preferences, fraudulent conveyances, and other avoidance power claims under sections 541, |

|  | 542, 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code; and (the "**DIP Collateral**"). |
|---|---|
| **Superpriority Claim** | Subject to the Carve-Out, pursuant to section 364(c)(1) of the Bankruptcy Code, all the proceeds of the DIP Facility shall constitute allowed administrative expense claims against each of the Debtors' estates, jointly and severally, with priority over any and all administrative expenses (other than the Pre-Petition Adequate Protection Liens), including any superpriority claims associated with any other postpetition financing, any adequate protection claims, and, to the fullest extent permitted under the Bankruptcy Code, all other claims against the Debtors, now existing or hereafter arising, other than claims in favor of the Pre-Petition Lender arising under the Pre-Petition Loan Agreement and all validly perfected liens existing as of the Petition Date, subject to the Debtors' right to challenge or avoid any such liens. |
| **Use of DIP Proceeds** | For the ongoing operations, professional fees and capital needs of the Debtors.<br><br>Proceeds of the DIP Facility or cash collateral shall not be used (a) to permit the Debtors, or any other party-in-interest or their representatives to challenge or otherwise contest or institute any proceeding to determine the validity, perfection or priority of security interests in favor of the Lender, (b) to commence, prosecute or defend any claim, motion, proceeding or cause of action against the Lender and its agents, attorneys, advisors or representatives including, without limitation, any lender liability claims or subordination claims, (c) to commence, prosecute or defend any claim or proceeding or cause of action to disallow or challenge the obligations of the Debtors under the DIP Loan Agreement, or (d) to fund acquisitions, capital expenditures, capital leases, or any other similar expenditure. |
| **Expenses and Fees** | None, other than reimbursement of Lender's reasonable, actual, third party legal fees. |
| **Maturity Date** | The earliest to occur of: (a) fifteen (15) days after the Petition Date if the Interim Order has not been entered, (b) forty (40) days after the Petition Date if the Final Order has not been entered; (c) the occurrence and continuance of any Event of Default (as defined below) beyond the expiration of any applicable cure or grace period; (d) the effective date of a confirmed plan of reorganization or liquidation that provides for indefeasible payment in full of all Obligations or is otherwise acceptable to DIP Lender in its reasonable discretion; and (e) the date which is the closing date of any 363 Sale. |

| Financial Covenants | None |
|---|---|
| **Events of Default** | • The Chapter 11 Cases shall be converted to a case under Chapter 7 of the Bankruptcy Code or be dismissed or a motion requesting such relief shall have been filed.<br><br>• Filing or support of a proposed plan of reorganization by Debtors that does not provide for the indefeasible payment in full of the Obligations, unless otherwise agreed in writing by Lender in its commercially reasonable discretion.<br><br>• Entry of an order confirming (or the filing of any motion or pleading requesting confirmation of) a plan of reorganization that does not require the indefeasible repayment in full of the DIP Facility as of the effective date of the plan, unless otherwise agreed in writing by the Lender in its commercially reasonable discretion.<br><br>• Appointment of a trustee under Section 1104 of the Bankruptcy Code without the express written consent of the Lender, or the filing of any motion or other pleading requesting such relief which the Debtors fail to timely oppose.<br><br>• Entry of an order by the Bankruptcy Court staying or vacating the DIP Facility, the Interim Order or Final Order approving the DIP Facility, without the prior written consent of the Lender or the filing of a motion or other pleading requesting such relief which the Debtors fail to timely oppose.<br><br>• Any attempt by Debtors to obtain, or if any other party in interest obtains, an order of the Bankruptcy Court or other judgment, and the effect of such order or judgment is to, invalidate, reduce or otherwise impair the Lender's claims, or to subject any of the Lender's collateral to a surcharge pursuant to Section 506(c) of the Bankruptcy Code.<br><br>• A final order is entered granting any creditor with a claim in excess of $250,000 relief from the automatic stay.<br><br>• Failure to make all payments under the DIP Facility when due.<br><br>• Any breach in any material respect of any covenant or obligation set forth in the DIP Facility.<br><br>• Any material representation or warranty by the Debtors is incorrect or misleading in any material respect when made. |

|  | |
|---|---|
|  | • The Debtors shall take (or support any other Person in taking) any action in order to restrict or prohibit the Lender or Pre-Petition Lender from submitting a "credit bid" for any assets of the Debtors.<br><br>• The Debtors fail to disburse the sale proceeds to the Lender, in accordance with the priority of proceeds set forth herein, contemporaneously with the closing of a sale of substantially all of their assets, subject to payment of the Carve Out.<br><br>• (a) The material impairment of any of the Debtors' ability to perform its obligations under the DIP Facility or of the Lender to enforce the Obligations, (b) a material adverse effect on the value of the Debtors' assets or the amount that the Lender would be likely to receive (after giving consideration to delays in payment and costs of enforcement) in the liquidation of such assets, or (c) a material impairment of the priority of the Lender's rights and liens with respect to the Collateral pledged to it hereunder.<br><br>• The commencement of any suit by any Person that is not subject to the automatic stay against the Lender that would, or seek to, in any way reduce, set off, or subordinate the Obligations or DIP Liens.<br><br>• The Debtors shall be denied, or otherwise not obtain or lose authorization to, use cash collateral as that term is used in section 363 of the Bankruptcy Code.<br><br>• Any Person is granted (or awarded) an administrative expense claim that is not subordinated to the super-priority administrative claims granted to the Lender.<br><br>• The Debtors' seek to grant a security interest or lien on or to any of their assets other than the DIP Liens.<br><br>• The Court enters an order requiring the Debtors to pay rent to any landlords within the first 60 days of the Chapter 11 Cases.<br><br>• Medicare or Medicaid, or any other governmental entity, sets off or otherwise withholds payment against any accounts receivable owing to Debtors. |
| **Milestones** | None |
| **Carve-Out** | (a) unpaid, postpetition fees and expenses of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) in such |

| | |
|---|---|
| | amount, with respect to the U.S. Trustee as agreed to by the U.S. Trustee or as determined by the Court (collectively, the "Statutory Fees"); (b) the unpaid postpetition fees and expenses of the professionals retained by the Debtors and by any Committee (up to a maximum of $50,000 in the case of any professionals retained by the Committee), whose retentions are approved pursuant to final orders of the Court under sections 327, 328, 363 or 1103(a) of the Bankruptcy Code (the "Chapter 11 Professionals"), but only to the extent that such fees and expenses are (i) incurred prior to the giving of a notice of the occurrence of the Termination Date by the DIP Lender to the Debtors and any Committee, (ii) subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code, and (iii) not otherwise paid from retainers; (c) postpetition fees and expenses of the Chapter 11 Professionals retained by the Debtors and incurred after a DIP Lender's transmission of notice of the Termination Date, to the extent such fees and expenses are (i) subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code, and (ii) not otherwise paid from any retainers; provided that such notice of Termination Date is not rescinded or withdrawn; and (d) all reasonable fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code in an aggregate amount not exceeding $10,000 (collectively, the "**Carve-Out**"). |
| **Challenge Period** | 60 days after the formation of any official committee of unsecured creditors in these chapter 11 cases, or 75 days after the Petition Date for any other party-in-interest |
| **Entities with Interest in Cash Collateral** | The Pre-Petition Lender |
| **Usage of Cash Collateral** | The Debtors propose to use the cash collateral of the Pre-Petition Lender, subject to the terms of the Interim Order and Final Order. |
| **Adequate Protection** | As adequate protection for the use of its cash collateral and in consideration for being primed in part by the DIP Lender's claims and liens, the Pre-Petition Lender (a) shall receive a claim having priority over any and all expenses of the kind specified in, among other sections of the Bankruptcy Code, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, and 1114, subject to payment of the Carve Out and subject to the super-priority administrative claims of the Lender under the DIP Facility and existing claims of the Pre-Petition Lender on its pre-petition collateral; and (b) shall have valid, binding, enforceable and perfected replacement liens in all DIP Collateral, subject to payment of the Carve Out and any prepetition liens, in each case equal to the sum of the aggregate diminution, if any, subsequent to the Petition |

| | |
|---|---|
| | Date, in the value of its pre-petition collateral resulting from the sale, use, lease or disposition of such pre-petition collateral during the Chapter 11 Cases (the **"Pre-Petition Lender Adequate Protection Liens"**). |
| **Waivers/Modification of Automatic Stay** | The automatic stay is modified as necessary to effectuate all of the terms and provisions of the DIP Facility. |
| **Releases** | In consideration of the furnishing of the DIP Facility, the Debtors, subject to the entry of the Final Order, hereby absolutely release and forever discharge the Lender from any and all claims and causes of action of every kind and nature that the Debtors may hold against such released parties. |
| **Indemnification** | The Debtors shall indemnify and hold the Lender and its officers, directors, employees and agents (including all of their professionals) (each an **"Indemnified Party"**) harmless from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, all fees and disbursements of attorneys and other professionals) to which any Indemnified Party may become liable or which may be incurred by or asserted against any Indemnified Party, in each case in connection with or arising out of or by reason of any investigation, litigation or proceeding arising out of or relating to or in connection with the DIP Facility, any obligation, or any act, event or transaction related or attendant thereto or any use or intended use of the proceeds of the DIP Facility, except to the extent the same is found in a final, nonappealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's fraud, bad faith, negligence or willful misconduct. The Debtors' indemnification obligations include the obligation to pay all out-of-pocket expenses of the Lender (including reasonable attorneys' fees) upon the lawful enforcement of any provision of this agreement or under the DIP Facility in response to the occurrence of any Event(s) of Default.  The Debtors' obligations under this section shall be capitalized and added to the outstanding principal balance of the DIP Facility and thereafter bear interest in accordance with this agreement. |
| **Cross-Collateralization** | None |
| **Provisions Deeming Prepetition Debt to be Postpetition Debt** | None |
| **Non-Consensual Priming Liens** | None |

| Section 506(c) Waiver | Upon entry of the Final Order, subject to the Carve Out, the Debtors hereby waive any right to surcharge the prepetition collateral or DIP Collateral, whether pursuant to Bankruptcy Code sections 506(c) or 105(a) or under any other applicable law |
|---|---|
| Section 552(b)(1) Waiver | None |

**Highlighted Provisions Pursuant to Financing Guidelines**

19.    Pursuant to Local Rule 4001-5(a)(i)-(iii), the Debtors are required to disclose the

following provisions of the Interim Order and Loan Documents:

| REQUIRED DISCLOSURES | RESPONSE |
|---|---|
| The absence of any carve-out for professional fees, or provisions that provide treatment for the professionals retained by the debtor that is different than that provided for the professionals retained by a creditors' committee with respect to a professional fee carve-out.<br><br>Local Rule 4001-5(a)(i). | The DIP Loan Agreement reflects the Lender's willingness to provide funding for professional fees incurred by the Debtors and the Committee, subject to the limits set forth in the DIP Loan Agreement. |
| Provisions that require the debtor to pay the secured creditor's expenses and attorneys' fees in connection with the proposed financing or use of cash collateral, without any notice or review by the Office of the United States Trustee, creditors' committee (if formed), or the Court.<br><br>Local Rule 4001-5(a)(ii). | The Debtors are required to pay the Lender's reasonable costs and expenses (including without limitation, professional fees and legal fees and expenses) set forth in the DIP Facility Documents whether incurred before or after the Petition Date; provided, that Debtors will pay all such reasonable fees and expenses within thirty (30) days of delivery of a statement or invoice for such fees and expenses (it being understood that such statements or invoices shall not be required to be maintained in accordance with the U.S. Trustee Guidelines, nor shall any such counsel or other professional be required to file any interim or final fee applications with the Court or otherwise seek Court's approval of any such payments) to the Debtors, the U.S. Trustee and the Committee. |

| Provisions that exclude from a carve-out any request for professional fees related to the investigation of whether the secured creditor's lien is valid or properly perfected.<br><br>Local Rule 4001-5(a)(iii). | The Lender has not extended any pre-petition indebtedness to the Debtors. |
|---|---|

**Basis for Relief Requested**

I.     **Entry into the DIP Facility Is an Exercise of Sound Business Judgment**

20.     The Court should authorize the Debtors, as an exercise of their sound business judgment, to enter into the DIP Facility.  Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing when such financing would not otherwise be available on an unsecured basis or as an administrative expense.  11 U.S.C. § 364(c).  Courts grant debtors considerable deference in acting in accordance with their business judgment in obtaining postpetition secured credit as long as the agreement to obtain such credit does not run afoul of the provisions of and policies underlying the Bankruptcy Code.  *See, e.g., In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) (stating that courts will "almost always" defer to the business judgment of a debtor when selecting a lender); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (stating that a debtor should be permitted to use reasonable business judgment in entering into a financing agreement).

21.     In evaluating proposed postpetition financing under section 364(c) of the Bankruptcy Code, courts will consider various factors, including whether:

a.     unencumbered credit or alternative financing without superpriority status is available to the debtor;

b.     the credit transactions are necessary to preserve assets of the estate;

c.     the terms of the credit agreement are fair, reasonable, and adequate;

      d.      the proposed financing agreement was negotiated in good faith and at arm's-length and entry thereto is an exercise of sound and reasonable business judgment and in the best interest of the debtor's estate and its creditors; and

      e.      the proposed financing agreement adequately protects prepetition secured creditors.

*See, e.g., In re L.A. Dodgers LLC*, 457 B.R. at 312 (applying the first three factors); *In re Aqua Assoc.*, 123 B.R. 192, 195–96 (Bankr. E.D. Pa. 1991) (applying the first three factors in section 364(c) review); *In re Crouse Grp., Inc.*, 71 B.R. 544, 546 (Bankr. E.D. Pa. 1987) (same); *Bland v. Farmworker Creditors*, 308 B.R. 109, 113–14 (S.D. Ga. 2003) (applying all factors in making a determination under section 364(d)).

      22.      For the reasons discussed below, the Debtors satisfy the standards required to obtain postpetition financing under section 364(c) of the Bankruptcy Code as entry into the DIP Facility was within their sound business judgment considering the circumstances of this case. The use of cash collateral alone is insufficient to meet the Debtors' working capital needs to operate their businesses in the ordinary course. The DIP Facility contains terms and conditions that are the best available under the circumstances and provide the Debtors with sufficient liquidity during the early stages of the Chapter 11 Cases.

## II.      Debtors Were Unable to Obtain Financing on More Favorable Terms

      23.      Whether a debtor was unable to obtain unsecured credit is determined by application of a good faith effort standard, and a debtor must make a good faith effort to demonstrate that credit was not available without granting a security interest. *See In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."); *In re Gen. Growth Props., Inc.*, 412 B.R. 122, 125 (Bankr. S.D.N.Y. 2009). The showing under section 364 that unsecured credit was not available is not rigorous standard to meet. *See, e.g., Bray v. Shenandoah Fed. Sav.*

& *Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986) (stating that section 364(d) of the Bankruptcy Code imposes no duty to seek credit from every possible lender, particularly when "time is of the essence in an effort to preserve a vulnerable seasonal enterprise").

24.     Further, in considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances and disparate bargaining power of both the debtor and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Ellingsen MacLean Oil Co.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (a debtor may have to enter into hard bargains to acquire funds).

25.     As set forth in the Wyse Declaration, here the Debtors have been unable to obtain sufficient financing on an unsecured basis.  Notwithstanding the Debtors efforts to contact various lenders, the Debtors have been unable to obtain postpetition financing or other financial accommodations from any alternative prospective lender or group of lenders, much less financing on more favorable terms and conditions that those for which approval is sought herein.  Therefore, the Debtors respectfully submit that their efforts to obtain postpetition financing satisfy the standards required by section 364 of the Bankruptcy Code.

## III.     The Lender is Extending Credit in Good Faith

26.     Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

11 U.S.C. § 364(e).

27.     As discussed above, the Debtors and the Lender negotiated the DIP Facility at arms' length and in good faith.  The Lender is agreeing to be a junior lender in the capital stack behind the Pre-Petition Lender and other validly perfected pre-petition secured claims. Additionally, the Lender is not taking liens on avoidance actions and is not charging any fees in connection with the Debtors' entry into the DIP Facility or charging any other amounts that are not normal and customary for similar facilities.  Thus, the Interim DIP Order and Final DIP Order should provide that the Lender is entitled to all the protections set forth in section 364(e) of the Bankruptcy Code.

## IV.     The Debtors' Request For Use Of Cash Collateral And The Proposed Adequate Protection Is Appropriate.

28.     The Debtors' use of property of the estates is governed by section 363 of the Bankruptcy Code, which provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section ... 1108 ... of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C.§ 363(c)(1).

29.     Under section 363(c)(2), a debtor may not use cash collateral unless an entity that has an interest in it consents or such use is authorized by the court after notice." *In re Cerrico Realty Corp.*, 127 B.R. 319, 321 (Bankr. E.D.N.Y. 1991). "Cash collateral" is defined as, "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a).

30.     The Debtors have an urgent need for the immediate use of the Cash Collateral pending the final hearing on this Motion and seek to use Cash Collateral existing on or after the Petition Date in accordance with the DIP Loan Agreement. The Debtors require the use of the

Cash Collateral to, among other things, fund payroll, maintain their ongoing business operations and to pay the costs and expenses associated with the administration of these chapter 11 cases. Absent the use of Cash Collateral, the value of the Debtors' business as a going concern would be irreparably impaired.

31.    The Court may authorize the debtors to use Cash Collateral.  Factors that courts use in determining whether to authorize such use is whether the affected party is overcollateralized and whether the debtors are offering sufficient adequate protection. Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens and other forms of relief. *See In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985). The focus of the requirement is to protect a secured creditor from the diminution in value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Group, Inc*., 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained pre-bankruptcy.") (internal citations omitted).

32.    Courts have also held that adequate protection may be demonstrated by showing that the secured creditor's interest in the collateral is preserved by the debtor's use of the cash collateral in a manner that maintains or enhances the collateral's value. *See In re Salem Plaza Assocs*., 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a secured creditor was adequately protected when cash collateral was used to pay necessary operating expenses); *In re Constable Plaza Assocs., L.P*., 125 B.R. 98, 105-06 (Bankr. S.D.N.Y. 1991) (authorizing debtor to use cash collateral to operate and maintain office building, thereby protecting secured lender's collateral and existing equity cushion); *accord In re Atrium Dev. Co*., 159 B.R. 464, 471 (Bankr. E.D. Va. 1993) ("Adequate protection is typically established by the fact that cash is being used

to maintain and enhance the value of the underlying income producing real property in which the creditor also usually holds a security interest."); *McCombs Props. VI, Ltd. V. First Tex. Sav. Ass'n (In re McCombs Props. VI, Ltd.)*, 88 B.R. 261, 267 (Bankr. C.D. Cal. 1988) (holding that committing to use cash collateral for operating expenses substantially eliminated the risk of diminution in the secured creditor's interest in the collateral).

33.     The proposed adequate protection is typical and appropriate under the circumstances. Specifically, as adequate protection for the Pre-Petition Lender with respect to, and solely to the extent of, any diminution of value in the Pre-Petition Collateral from and after the Petition Date, the Lenders shall receive (i) replacement liens, junior and subordinate only to the Carve-Out, and (ii) monthly payments of interest at a non-default rate set forth in the Pre-Petition Loan Agreements, in each case equal to the sum of the aggregate diminution, if any, subsequent to the Petition Date, in the value of its Pre-Petition Collateral resulting from the sale, use, lease or disposition of such pre-petition collateral during the Chapter 11 Cases. These forms of adequate protection are customary in chapter 11 cases, and appropriate under the circumstances in this case.  Further, given that the Pre-Petition Adequate Protection Liens are senior in priority to the DIP Liens, and that the Pre-Petition Lender is overcollateralized due to the significant value of the Debtors' accounts receivable versus the relatively small amount of Pre-Petition Obligations outstanding as of the Petition Date, the Debtors should be authorized to use Cash Collateral as set forth herein.

**Bankruptcy Rule 6003 Has Been Satisfied**

34.     Bankruptcy Rule 6003 provides that, to the extent that relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the

Petition Date.  Fed. R. Bankr. P. 6003.  As described in the Wyse Declaration, the Debtors would suffer immediate and irreparable harm if the relief sought herein is not promptly granted. Accordingly, the Debtors have satisfied the requirements of Bankruptcy Rule 6003.

**Request for Bankruptcy Rule 6004 Waivers**

35.    The Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property pursuant to Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(a), certain interested parties must receive 21 days' notice by mail of the "proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice."  Fed. R. Bankr. P. 2002(a)(2).  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  As explained above and in the Wyse Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

**No Previous Request**

36.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

**Notice**

37.    Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Debtors' secured creditors; (iii) any party whose interests are directly affected by this specific pleading; (iv) those persons who have formally appeared and requested notice and

service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for the proposed Lender; (vi) counsel to the Pre-Petition Lender, (vii) the consolidated 30 largest unsecured creditors of the Debtors; and (viii) all governmental agencies having a regulatory or statutory interest in these cases. No other or further notice need be provided.

## Conclusion

WHEREFORE, the Debtors respectfully request that the Court grant this Motion and grant such other and further relief as is just and proper.

Dated: September 10, 2019
New York, New York

LOEB & LOEB LLP

*/s/ Schuyler G. Carroll*

Schuyler G. Carroll
Daniel B. Besikof
Noah Weingarten
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Fax: (212) 407-4990
scarroll@loeb.com
dbesikof@loeb.com
nweingarten@loeb.com

*Proposed Counsel to the Debtors
and Debtors-in-Possession*

**EXHIBIT A**

**Form of DIP Loan Agreement**

**TERMS FOR DEBTOR IN POSSESSION FINANCING FOR
ABSOLUT FACILITIES MANAGEMENT, LLC, et al.**

| | |
|---|---|
| **Borrowers:** | Absolut Facilities Management, LLC; Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC; Absolut at Orchard Brooke, LLC; Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC; Absolut Center for Nursing and Rehabilitation at Allegany, LLC; Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC; Absolut Center for Nursing and Rehabilitation at Gasport, LLC; and Absolut Nursing and Rehabilitation Center of Westfield, LLC (individually and collectively, the **"Debtors"**). |
| **Amount and Type of Facility:** | Cash Collateral Usage: The Debtors anticipate continuing to use the cash collateral of Capital Finance, LLC, as successor-in-interest to Capital Funding Group, Inc. (the "**Pre-Petition Lender**"), provided that the Debtors are in compliance with all terms and conditions contained herein and in the Interim Order (as defined below) or the Final Order (as defined below), as applicable (the "**Pre-Petition Loan Facility**"). |
| | DIP Facility: Notwithstanding the foregoing, because the use of cash collateral alone is expected to be insufficient to meet the Debtors' immediate post-petition liquidity needs, the DIP Lender (as defined below) shall make available to the Debtors, after entry of the Interim Order or the Final Order, as applicable, a revolving credit facility in the aggregate principal amount of $2,000,000 (the "**DIP Facility**"). |
| | The Debtors will be jointly and severally liable for all loans, advances, debts, liabilities and obligations, for the performance of covenants, tasks or duties or for payment of monetary amounts (whether or not such performance is then required or contingent, or such amounts are liquidated or determinable), owing by Debtors to DIP Lender, and all covenants and duties regarding such amounts, of any kind or nature, present or future, whether or not evidenced by any note, agreement or other instrument, arising under the DIP Facility, including all principal, interest (including all interest that accrues after the Petition Date, whether or not allowed in such case or proceeding), fees, charges, expenses, attorneys' fees and any other sum chargeable to the Debtors under the DIP Facility (the "**Obligations**"). |
| **DIP Lender:** | ABS DIP, LLC (the "**DIP Lender**"). |
| **Borrowing Availability:** | All advances under the DIP Facility (collectively, the "**DIP Loans**") shall be available to the Debtors upon one (1) Business Day's prior written notice by the Debtors to the DIP Lender, unless the Termination Date shall have occurred before any such date. |

Advances shall be in an amount not less than $50,000, and all advances shall be made by wire transfer of immediately available funds. Amounts repaid hereunder shall be permitted to be reborrowed so long as there is no outstanding accrued interest on account of the Obligations immediately prior to or after giving effect to such reborrowing.

**Fees:**

No origination or prepayment fees.

Debtors agree to pay the costs and expenses of the DIP Lender as set forth in the Section titled "Fees and Expenses" below.

**Termination Date:**

The earliest to occur of: (a) fifteen (15) days after the Petition Date if the Interim Order has not been entered, (b) forty (40) days after the Petition Date if the Final Order has not been entered; (c) the occurrence and continuance of any Event of Default (as defined below) beyond the expiration of any applicable cure or grace period; (d) the effective date of a confirmed plan of reorganization or liquidation that provides for indefeasible payment in full of all Obligations or is otherwise acceptable to DIP Lender in its reasonable discretion; and (e) the date which is the closing date of any 363 Sale. The date on which the earliest of clauses (a) through (e) above occurs is referred to hereinafter as the "**Termination Date**." Upon the occurrence of the Termination Date, the DIP Facility shall be deemed terminated, and the DIP Lender shall have no further obligation to provide financing, provided, however that nothing in this term sheet shall limit the Debtors' ability to seek to use cash collateral on a non-consensual basis and/or challenge whether a Termination Date has occurred.

**Non-Default Interest Rate and Payment Terms:**

Interest on the Pre-Petition Loan Facility and on any outstanding obligations under the Pre-Petition Credit Agreement will accrue at the rate set forth in the Pre-Petition Credit Agreement without giving effect to any default interest rate contained therein (except as provided herein), provided that in the event of a final determination that the Pre-Petition Lender is undersecured as of the Petition Date, payments made pursuant to this provision may be recharacterized and applied as payments of principal. Interest on the DIP Facility shall accrue from and after the Petition Date at a per annum rate of fourteen percent (14%) (the "**Non-Default Interest Rate**"). All accrued and unpaid interest shall be payable to the DIP Lender on the last Business Day of each month until all Obligations owed to the DIP Lender are paid in full, provided that the Debtors shall pay all accrued and unpaid interest prior to or in connection with a notice of borrowing. All accrued and unpaid interest shall be payable to the Pre-Petition Lender on the last Business Day of each month until all Obligations owed to the Pre-Petition Lender are paid in full. All

2

computations of interest payable hereunder shall be calculated on the basis of a year of 365 days (or 366 days in a leap year), and in each case shall be payable for the actual number of days elapsed (including the first day but excluding the last day.

**Default Interest Rate:** Effective immediately upon the occurrence of the Termination Date and the failure by the Debtors to pay in full to the DIP Lender all amounts owing under the DIP Facility within ten (10) Business Days of the occurrence thereof unless waived in writing by the DIP Lender, interest on outstanding loans under the Pre-Petition Credit Facility shall accrue at the default rate set forth in the Pre-Petition Credit Agreement, and interest on outstanding loans under the DIP Facility shall accrue at a rate that is 2% per annum in excess of the Non-Default Interest Rate (the "**Default Interest Rate**").

**Loan Payments:** All unpaid principal, interest, fees, costs and expenses on the DIP Facility shall be due and payable in full by the Debtors on the Termination Date, whether at maturity, upon acceleration or otherwise.

**Use of Proceeds:** Proceeds of the DIP Facility shall be used solely for the following purposes: (a) to fund, after application of all other available cash, post-petition operating expenses and working capital needs of the Debtors, including, but not limited to, those activities required to remain in, or return to, compliance with laws in accordance with 28 U.S.C. § 1930; (b) to pay interest, fees and expenses to the DIP Lender in accordance with this term sheet; (c) to fund fees and expenses incurred in connection with any proposed sale of the Debtors' assets (as approved by the Bankruptcy Court); (d) to pay permitted pre-petition claim payments in the ordinary course of business (or outside the ordinary course of business, provided that the DIP Lender consents thereto in writing (with such consent not to be unreasonably withheld or delayed)); (e) to pay fees and expenses of third party professionals engaged by or for the benefit of the Debtors or the DIP Lender (collectively, "**Professional Fees**"; it being acknowledged and agreed by the DIP Lender that all such Professional Fees are being paid from its collateral, and thus, such payments shall still be made notwithstanding the conversion or dismissal of such bankruptcy cases); and (f) to pay certain other costs and expenses of administration of the Chapter 11 Cases in the ordinary course of business (or outside the ordinary course of business, provided that the DIP Lender consents thereto in writing (with such consent not to be unreasonably withheld or delayed)).

Proceeds of the DIP Facility or cash collateral shall not be used (a) to permit the Debtors, or any other party-in-interest or their representatives to challenge or otherwise contest or institute any

3

proceeding to determine the validity, perfection or priority of security interests in favor of the DIP Lender, (b) to commence, prosecute or defend any claim, motion, proceeding or cause of action against the DIP Lender and its agents, attorneys, advisors or representatives including, without limitation, any lender liability claims or subordination claims, (c) to commence, prosecute or defend any claim or proceeding or cause of action to disallow or challenge the obligations of the Debtors under the DIP Facility Documents, or (d) to fund acquisitions, capital expenditures, capital leases, or any other similar expenditure.

**Cash Management Collections and Remittances:**

Debtors shall use a cash management system that is the same as or substantially similar to its pre-petition cash management system. Any material changes from such pre-petition cash management system must be acceptable to the DIP Lender in its commercially reasonable discretion. The Interim Order and Final Order shall provide the DIP Lender with a valid and enforceable lien and security interest on the cash held in the Debtors' bank accounts.

**Pre-Petition Obligations:**

As of the date of this term sheet, the Debtors owe certain obligations under that certain Credit Agreement, dated as of May 22, 2009 (as amended, restated, supplemented, or otherwise modified from time to time (the **"Pre-Petition Credit Agreement"**) and the other Loan Documents (as defined in the Pre-Petition Credit Agreement). Capital Finance, LLC, as successor-in-interest to Capital Funding Group, Inc., in its capacity as lender under the Pre-Petition Credit Agreement is herein referred to as the **"Pre-Petition Lender"**).

**Super-Priority Administrative Claim:**

Amounts owed by the Debtors to the DIP Lender pursuant to the DIP Facility (including all accrued interest, fees, costs and expenses) shall constitute, in accordance with Section 364(c)(1) of the Bankruptcy Code (as defined below), a claim having priority over any or all administrative expenses of the kind specified in, among other sections, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726 of the Bankruptcy Code other than the liens of the Pre-Petition Lender and the Pre-Petition Lender Adequate Protection Liens, which shall be senior in priority to the Lien of the DIP Lender, and in all cases subject to payment of the Carve Out. The foregoing super-priority claim in favor of the DIP Lender shall not be payable from any claims or causes of action arising under chapter 5 of the Bankruptcy Code or any applicable state fraudulent transfer statutes (together, **"Avoidance Actions"**) or any proceeds thereof.

Subject to payment of the Carve Out, all obligations subject to the Pre-Petition Lender Adequate Protection Liens (as defined below) shall have priority in payment over all other administrative expenses of the estate, to the extent that the Pre-Petition Lender Adequate

Protection Liens are insufficient to compensate the Pre-Petition Lender for any diminution in the value of its interests as a result of the Debtors' use of cash collateral during the Chapter 11 Cases.

**Collateral Security:**      On the Petition Date, in order to secure the DIP Facility (including accrued interest, fees, costs and expenses), the Debtors hereby grant, and the Interim Order and Final Order shall approve the Debtors' grant to the DIP Lender a lien and security interest (the **"DIP Liens"**) in all of the Debtors' property, including, without limitation, all of Debtors' existing and future acquired property and interests of any nature whatsoever, real and personal, tangible and intangible, accounts receivable, general intangibles, payment intangibles, supporting obligations, investment property, commercial tort claims, inventory, rolling stock, machinery, equipment, subsidiary capital stock, chattel paper, documents, instruments, deposit accounts, contract rights, and tax refunds of the Debtors, excluding only Avoidance Actions and the proceeds thereof (collectively, the **"DIP Collateral"**), which shall be secured and senior in priority to all other security interests existing as of the Petition Date other than perfected liens of record as of the Petition Date that are not subsequently challenged or avoided by the Debtors, and the Pre-Petition Lender Adequate Protection Liens, and subject in all events to payment of the Carve Out.

**Lien Validation and Perfection:**      All liens authorized and granted pursuant to the Interim Order or the Final Order entered by the Bankruptcy Court approving the DIP Facility or with respect to adequate protection shall be deemed effective and perfected as of the Petition Date, and no further filing, notice or act will be required to effect such perfection.

The Debtors shall stipulate in the Interim Order and Final Order that (i) the Pre-Petition Lender's liens securing the Pre-Petition Credit Facility are valid, perfected, encumber all assets of the Debtors, and have first priority, and (ii) the Debtors possess no claims, offsets or any other type of cause of action against the Pre-Petition Lender which would impair, in any manner, the Pre-Petition Lender's liens against the Debtors' assets, or the obligations of the Debtors to the Pre-Petition Lender under the Pre-Petition Credit Facility. The Debtors' stipulations shall be binding upon all parties in interest in the Chapter 11 Cases, including any committee that is appointed, unless (i) an adversary proceeding is filed (x) by any party-in-interest prior to the expiration of seventy-five (75) days after the Petition Date or (y) by the creditors' committee, if formed, sixty (60) days after its formation (the **"Review Period"**) against the Pre-Petition Lender challenging the Pre-Petition Lender's liens or otherwise asserting estate claims against the Pre-Petition Lender, and (ii) a final, non-appealable judgment is entered against the Pre-Petition

Lender in such adversary proceeding; provided, however, any party-in-interest that fails to file an adversary proceeding within the Review Period shall be forever barred from asserting any claims against the Pre-Petition Lender on behalf of the Debtors' estates, or challenging in any manner the Pre-Petition Lender's liens and claims (as applicable) against the Debtors.

**Release of Claims:** In consideration of the furnishing of the DIP Facility, the Debtors, subject to the entry of the Final Order, hereby absolutely release and forever discharge each of the DIP Lender and its affiliates, officers, directors, employees, attorneys, and other representatives from any and all claims and causes of action of every kind and nature that the Debtors may hold against such released parties.

**506(c) Surcharge:** Upon entry of the Final Order, subject to the Carve Out, the Debtors hereby waive any right to surcharge the prepetition collateral or DIP Collateral, whether pursuant to Bankruptcy Code sections 506(c) or 105(a) or under any other applicable law.

**Adequate Protection:** As adequate protection for the use of its cash collateral and in consideration for being primed in part by the DIP Lender's claims and liens, the Pre-Petition Lender (a) shall receive a claim having priority over any and all expenses of the kind specified in, among other sections of the Bankruptcy Code, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, and 1114, subject to payment of the Carve Out and subject to the super-priority administrative claims of the DIP Lender under the DIP Facility and existing claims of the Pre-Petition Lender on its pre-petition collateral; and (b) shall have valid, binding, enforceable and perfected replacement liens in all DIP Collateral, subject to payment of the Carve Out and any prepetition liens, in each case equal to the sum of the aggregate diminution, if any, subsequent to the Petition Date, in the value of its pre-petition collateral resulting from the sale, use, lease or disposition of such pre-petition collateral during the Chapter 11 Cases (the **"Pre-Petition Lender Adequate Protection Liens"**).

**Fees and Expenses:** Subject to payment of the Carve Out, Debtors shall pay or reimburse the DIP Lender within thirty (30) days of when invoiced for all reasonable costs and expenses of counsel (including, without limitation, local counsel) for the DIP Lender relating to the DIP Facility and the administration and interpretation of and the enforcement of remedies under, the DIP Facility and including all due-diligence, including travel, and attendance at court hearings, regardless of whether the DIP Facility is consummated. Subject to payment of the Carve Out, the DIP Lender shall have the right to charge the DIP Facility for any such fees and costs. Failure to pay

6

such fees and expenses within thirty (30) days of delivery of the applicable invoice shall be a default under the DIP Facility.

**Conditions Precedent:**    The closing of the DIP Facility shall be subject to (a) entry of an Interim Order and the Final Order approving the DIP Facility, the DIP Liens and super-priority administrative claims (subject only to the Carve Out) and other liens securing the DIP Facility, and containing such other orders and findings as the DIP Lender may require, including automatic modification of the automatic stay upon the occurrence of an Event of Default hereunder that, upon at least twenty (20) days' notice to the Debtors, the United States Trustee, and any Committee, results in the DIP Lender exercising certain rights and remedies against the DIP Collateral, which Interim Order or Final Order, as applicable, shall not have been modified or amended without the approval of the DIP Lender, and shall not have been reversed, vacated or stayed pending appeal, in form and substance satisfactory to the DIP Lender in its commercially reasonable discretion, and (b) continuation of Debtors' present cash management system.

**Affirmative and Negative Covenants:**    The covenants are set forth on Exhibit B attached hereto.

**Representations and Warranties:**    The representations and warranties of Debtors are set forth on Exhibit A attached hereto.

**Additional Conditions to Each Borrowing Under the Facility:**    There shall exist no default (or event that would constitute a default with the giving of notice or lapse of time) hereunder, and the representations and warranties herein shall be true and correct in all material respects.

There shall have occurred no material adverse change in the Debtors' (financial, environmental, or otherwise) operations, performance, or properties (other than, in each case, the commencement and continuation of the Chapter 11 Cases), since the date of this term sheet, that in the reasonable judgment of the DIP Lender, has or can reasonably be expected to have a material adverse effect on the rights and remedies of the DIP Lender or on the ability of the Debtors to perform its obligations to them under the DIP Facility.

**Remedies:**    Following the Termination Date and provided that the Bankruptcy Court does not enter any order to the contrary within the notice periods provided herein and in the Interim DIP Order and the Final DIP Order, as applicable, the DIP Lender shall have customary remedies, including, without limitation, the right to realize on all DIP Collateral, the right to exercise any remedy available under

7

applicable law, without the necessity of obtaining any further relief or order from the Bankruptcy Court. Consistent with the foregoing sentence, section 362 relief from the stay in favor of the DIP Lender shall be embodied in any order approving the DIP Facility and the use of cash collateral.

**Additional Conditions To Financing:**

Compliance with Bankruptcy Rule 4001 and any applicable Local Bankruptcy Rules, the entry of the Interim Order and the Final Order, together with any other order requested by the DIP Lender authorizing and approving the DIP Facility in form, substance and amount and providing for the DIP Collateral, all acceptable to the DIP Lender in its commercially reasonable discretion.

Payment of all fees and expenses owing to the DIP Lender in connection with the DIP Facility.

The Interim and Final Orders shall include such waivers, indemnities, and other provisions as are acceptable to the DIP Lender in its commercially reasonable discretion.

**Events of Default:**

Defaults and Events of Default shall mean the occurrence of any of the following:

- The Chapter 11 Cases shall be converted to a case under Chapter 7 of the Bankruptcy Code or be dismissed or a motion requesting such relief shall have been filed.

- Filing or support of a proposed plan of reorganization by Debtors that does not provide for the indefeasible payment in full of the Obligations, unless otherwise agreed in writing by DIP Lender in its commercially reasonable discretion.

- Entry of an order confirming (or the filing of any motion or pleading requesting confirmation of) a plan of reorganization that does not require the indefeasible repayment in full of the DIP Facility as of the effective date of the plan, unless otherwise agreed in writing by the DIP Lender in its commercially reasonable discretion.

- Appointment of a trustee under Section 1104 of the Bankruptcy Code without the express written consent of the DIP Lender, or the filing of any motion or other pleading requesting such relief which the Debtors fail to timely oppose.

- Entry of an order by the Bankruptcy Court staying or vacating the DIP Facility, the Interim Order or Final Order approving the DIP Facility, without the prior written consent of the DIP

8

Lender or the filing of a motion or other pleading requesting such relief which the Debtors fail to timely oppose.

- Any attempt by Debtors to obtain, or if any other party in interest obtains, an order of the Bankruptcy Court or other judgment, and the effect of such order or judgment is to, invalidate, reduce or otherwise impair the DIP Lender's claims, or to subject any of the DIP Lender's collateral to a surcharge pursuant to Section 506(c) of the Bankruptcy Code.

- A final order is entered granting any creditor with a claim in excess of $250,000 relief from the automatic stay.

- Failure to make all payments under the DIP Facility when due.

- Any breach in any material respect of any covenant or obligation set forth herein.

- Any material representation or warranty by the Debtors is incorrect or misleading in any material respect when made.

- The Debtors shall take (or support any other Person in taking) any action in order to restrict or prohibit the DIP Lender or Pre-Petition Lender from submitting a "credit bid" for any assets of the Debtors.

- The Debtors fail to disburse the sale proceeds to the DIP Lender, in accordance with the priority of proceeds set forth herein, contemporaneously with the closing of a sale of substantially all of their assets, subject to payment of the Carve Out.

- (a) The material impairment of any of the Debtors' ability to perform its obligations under the DIP Facility and as set forth herein or of the DIP Lender to enforce the Obligations, (b) a material adverse effect on the value of the Debtors' assets or the amount that the DIP Lender would be likely to receive (after giving consideration to delays in payment and costs of enforcement) in the liquidation of such assets, or (c) a material impairment of the priority of the DIP Lender's rights and liens with respect to the Collateral pledged to it hereunder.

- The commencement of any suit by any Person that is not subject to the automatic stay against the DIP Lender that would, or seek to, in any way reduce, set off, or subordinate the Obligations or DIP Liens.

9

- The Debtors shall be denied, or otherwise not obtain or lose authorization to, use cash collateral as that term is used in section 363 of the Bankruptcy Code.

- Any Person is granted (or awarded) an administrative expense claim that is not subordinated to the super-priority administrative claims granted to the DIP Lender.

- The Debtors' seek to grant a security interest or lien on or to any of their assets other than the DIP Liens.

- The Court enters an order requiring the Debtors to pay rent to any landlords within the first 60 days of the Chapter 11 Cases.

- Medicare or Medicaid, or any other governmental entity, sets off or otherwise withholds payment against any accounts receivable owing to Debtors.

| | |
|---|---|
| **Indemnification:** | The Debtors shall indemnify and hold the DIP Lender and its officers, directors, employees and agents (including all of their professionals) (each an **"Indemnified Party"**) harmless from and against any and all claims, damages, losses, liabilities and expenses (including, without limitation, all fees and disbursements of attorneys and other professionals) to which any Indemnified Party may become liable or which may be incurred by or asserted against any Indemnified Party, in each case in connection with or arising out of or by reason of any investigation, litigation or proceeding arising out of or relating to or in connection with the DIP Facility, any obligation, or any act, event or transaction related or attendant thereto or any use or intended use of the proceeds of the DIP Facility, except to the extent the same is found in a final, nonappealable judgment by a court of competent jurisdiction to have resulted from such Indemnified Party's fraud, bad faith, negligence or willful misconduct. The Debtors' obligations under this section include the obligation to pay all out-of-pocket expenses of the DIP Lender (including reasonable attorneys' fees) upon the lawful enforcement of any provision of this agreement or under the DIP Facility in response to the occurrence of any Event(s) of Default. The Debtors' obligations under this section shall be capitalized and added to the outstanding principal balance of the DIP Facility and thereafter bear interest in accordance with this agreement. The Debtors' obligations under this section shall survive termination of this agreement. |
| **Governing Law:** | All documentation in connection with the DIP Facility shall be governed by the laws of the state of New York, subject to applicable federal bankruptcy laws. |

10

| | |
|---|---|
| **Credit Bid:** | Subject to Section 363(k) of the Bankruptcy Code, the Pre-Petition Lender and the DIP Lender shall have the unqualified right to credit bid up to the full amount of their respective obligations in any sale of the prepetition collateral or the DIP Collateral, as applicable, without the need for further Court order authorizing the same, and whether such sale is effectuated through Section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise, provided that any credit bid by the DIP Lender shall be in an amount not less than an amount that will result in net cash proceeds sufficient to cause the discharge of the obligations owing under the Pre-Petition Loan Facility. |
| **Carve Out:** | The liens and claims granted to the DIP Lender and the Pre-Petition Lender in the Interim Order, the Final Order, this term sheet, and/or the Pre-Petition Credit Agreement and related documents are all subject to the Carve Out. |
| **Other Definitions:** | **"363 Asset Purchase Agreement"** means a Third-Party Asset Purchase Agreement reasonably satisfactory to the DIP Lender.

**"363 Sale"** means the sale of all or substantially all of the assets of the Debtors under Section 363 of the Bankruptcy Code.

**"Auction"** means an auction held in connection with the 363 Sale and in accordance with the provisions set forth in the Sale Procedure Order.

**"Bankruptcy Code"** means Title 11 of the United States Code (11 U.S.C. § 101 et seq.), as amended.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of New York presiding over the Chapter 11 Cases.

**"Carve Out"** means:

(a)      unpaid, postpetition fees and expenses of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) in such amount, with respect to the U.S. Trustee as agreed to by the U.S. Trustee or as determined by the Court (collectively, the "**Statutory Fees**");

(b)      the unpaid postpetition fees and expenses of the professionals retained by the Debtors and by any Committee (up to a maximum of $50,000 in the case of any professionals retained by the Committee), whose retentions are approved pursuant to final orders of the Court under sections 327, 328, 363 or 1103(a) of the Bankruptcy Code (the **"Chapter 11 Professionals"**), but only to the extent that such fees |

11

and expenses are (i) incurred prior to the giving of a notice of the occurrence of the Termination Date by the DIP Lender to the Debtors and any Committee, (ii) subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code, and (iii) not otherwise paid from retainers;

(c)  postpetition fees and expenses of the Chapter 11 Professionals retained by the Debtors incurred after a DIP Lender's transmission of notice of the Termination Date, to the extent such fees and expenses are (i) subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code, and (ii) not otherwise paid from any retainers; provided that such notice of Termination Date is not rescinded or withdrawn; and

(d)  all reasonable fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code in an aggregate amount not exceeding $10,000.

**"Chapter 11 Cases"** means the voluntary Chapter 11 cases to be commenced by the Debtors in the Bankruptcy Court.

**"Committee"** means any statutory committee appointed in the Chapter 11 Cases.

"**Contractual Obligations**" means, as applied to any Person, any indenture, mortgage, deed of trust, contract, undertaking, agreement or other instrument to which that Person is a party or by which it or any of its properties is bound or to which it or any of its properties is subject.

**"DIP Facility Documents"** means collectively this term sheet and all documents by and among any of Debtors and DIP Lender relating to the DIP Facility.

**"Final Order"** means a final, non-appealable order of the Bankruptcy Court, that, without limitation, approves the DIP Facility and grants the liens and security interests contained therein, on terms satisfactory to the DIP Lender in its commercially reasonable discretion.

"**Governmental Authority**" means any nation or government, any state or other political subdivision thereof, and any agency, department or other entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

**"Interim Order"** means an interim order of the Bankruptcy Court authorizing the Debtors, among other things, to obtain interim

17914917.5
233620-10001

financing and incur post-petition indebtedness on terms satisfactory to the DIP Lender in its commercially reasonable discretion.

"**Person**" means any individual, sole proprietorship, partnership, joint venture, trust, unincorporated organization, association, corporation, limited liability company, institution, public benefit corporation, other entity or government (whether federal, state, county, city, municipal, local, foreign, or otherwise, including any instrumentality, division, agency, body or department thereof).

"**Petition Date**" means the date on which the Chapter 11 Cases for such Debtors were filed with the Bankruptcy Court.

"**Requirement of Law**" means as to any Person shall mean the certificate of incorporation and bylaws or other organizational or governing documents of such Person, and any law, treaty, rule or regulation or determination of an arbitrator or a court or other governmental authority, in each case, applicable to or binding upon such Person or any of its property or to which such Person or any of its property is subject.

"**Sale**" means a sale of all or substantially all of the Debtors' assets.

"**Sale Order**" means an order entered by the Bankruptcy Court in form and substance reasonably satisfactory to the DIP Lender that, among other things, approves the 363 Sale, the results of the Auction (if applicable) and the Winning Bidder's bid.

"**Sale Procedure Order**" means an order in form and substance reasonably satisfactory to the DIP Lender approving (a) the bidding procedures to be applicable to the 363 Sale and (b) subject to higher and better bid, the 363 Asset Purchase Agreement.

"**Third-Party Asset Purchase Agreement**" means an asset purchase agreement by and among the Debtors and a third party purchaser that provides for the purchase and sale of substantially all of the assets of the Debtors, which third party purchaser and asset purchase agreement are reasonably satisfactory to the DIP Lender.

"**Winning Bidder**" means the bidder that agrees, in accordance with the Sale Procedure Order, to purchase all or substantially all of the assets of the Debtors pursuant to a Third-Party Asset Purchase Agreement.

The Debtors consent to the nonexclusive jurisdiction and venue of the state or federal courts located in the Eastern District of New York. Each party hereto irrevocably waives, to the fullest

extent permitted by applicable law, (a) any right it may have to a trial by jury in any suit, action, claim, counterclaim or other proceeding arising out of or relating to this letter agreement or the transactions contemplated hereby (whether based on contract, tort or any other theory) or the performance of services hereunder and (b) any objection that it may now or hereafter have to the laying of venue of any such legal proceeding in the state or federal courts located in the Eastern District of New York.

This term sheet embodies the entire agreement among the parties hereto and supersedes all prior commitments, agreements, representations, and understandings, whether oral or written, relating to the subject matter hereof, and may not be contradicted or varied by evidence of prior, contemporaneous, or subsequent oral agreements or discussions of the parties hereto. All Exhibits, Schedules and Annexes referred to herein are incorporated in this term sheet by reference and constitute a part of this term sheet. This term sheet and any amendments, waivers, consents or supplements may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed an original, but all of which counterparts together shall constitute but one in the same instrument. This term sheet shall become effective upon the execution of a counterpart hereof by each of the parties hereto.

[Signature Page Follows]

If the Debtors are in agreement with the foregoing, please sign this term sheet and return it to DIP Lender by no later than close of business on September 13, 2019. This letter shall terminate if not so accepted by you prior to that time.

Very truly yours,

ABS DIP, LLC,
as DIP Lender

By: _____
Name:
Title:

ACCEPTED AND AGREED TO:
ABSOLUT FACILITIES MANAGEMENT,
LLC, on behalf of each of the Debtors.

By: _____
Name:
Title:

15

17914917.5
233620-10001

**Exhibit A**

Representations and Warranties

To induce the DIP Lender to enter into the term sheet and to make advances under the DIP Facility, the Debtors represent, warrant and covenant to the DIP Lender that the following statements are true, correct and complete as of the Petition Date.  References to the knowledge or awareness of Debtors are deemed to include the actual knowledge of any officer or director of such Debtor after reasonable inquiry.

**1.1    Disclosure**.  No representation or warranty of a Debtor contained in this term sheet or any other document, certificate or written statement furnished to the DIP Lender by or on behalf of any such Person for use in connection with the DIP Facility contains any untrue statement of a material fact or omitted, omits or will omit to state a material fact necessary in order to make the statements contained herein or therein not misleading in light of the circumstances in which the same were made.

**1.2    No Conflict; Compliance**.  The consummation of the transactions contemplated by this term sheet does not and will not violate or conflict with any laws, rules, regulations or orders of any Governmental Authority or violate, conflict with, result in a breach of, or constitute a default (with due notice or lapse of time or both) under any Contractual Obligation or organizational documents of each Debtor.  Each Debtor is in compliance with the requirements of all applicable laws, rules, regulations and orders of any Governmental Authority and the obligations, conditions and covenants contained in all Contractual Obligations other than those laws, rules, regulations, orders and provisions of such Contractual Obligations the noncompliance with which could not be reasonably expected to have, either individually or in the aggregate, a material adverse effect, and (ii) maintain all licenses, qualifications and permits necessary for the conduct of their respective businesses as presently conducted and expected to be conducted.

**1.3    Organization, Powers, Capitalization, Subsidiaries and Good Standing**.

       **(a)    Organization and Powers**.  Each Debtor is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization and qualified to do business in all states where such qualification is required except where failure to be so qualified could not reasonably be expected to have a material adverse effect.  Each Debtor has all requisite organizational power and authority to own and operate its respective properties, to carry on its respective business as now conducted and proposed to be conducted, to enter into this term sheet and to incur the obligations under the DIP Facility, grant liens and security interests in the DIP Collateral and all property subject to Pre-Petition Lender Adequate Protection Liens, and carry out the transactions contemplated by this term sheet and the other DIP Facility Documents.

       **(b)    Binding Obligation**.  This term sheet is, and the other DIP Facility Documents when executed and delivered will be, the legally valid and binding obligations of the applicable parties thereto, each enforceable against each of such parties, as applicable, in accordance with their respective terms.

**1.4    Chapter 11 Cases.**  The Chapter 11 Cases were commenced on the Petition Date in accordance with applicable law and proper notice thereof and of the hearing for the approval of

the Final Order has been given as identified in the Certificate of Service filed with the Bankruptcy Court.

      **1.5**     All information, reports and other papers and data with respect to the Debtors (other than projections), if any, furnished to the DIP Lenders were, at the time furnished, complete and correct in all material respects, or have been subsequently supplemented by other information, reports or other papers or data, to the extent necessary to give the DIP Lenders a true and accurate knowledge of the subject matter in all material respects other then as set forth in this agreement.

      **1.6**     All insurance required to be obtained and maintained by the Debtors has been obtained and all premiums then and payable on all such insurance have been paid.

17914917.5
233620-1000136870308v8

**Exhibit B**

Affirmative and Negative Covenants

## SECTION 1
## AFFIRMATIVE COVENANTS

Each Debtor covenants and agrees that from and after the date hereof and until the Termination Date:

**1.1    Compliance With Laws and Contractual Obligations**.  The Debtors will (a) comply with (i) the requirements of all applicable laws, rules, regulations and orders of any Governmental Authority (including, without limitation, laws, rules, regulations and orders relating to taxes, employer and employee contributions, securities, employee retirement and welfare benefits, environmental protection matters and employee health and safety) as now in effect and which may be imposed in the future in all jurisdictions in which the Debtors are now doing business or may hereafter be doing business and (ii) the obligations, covenants and conditions contained in all Contractual Obligations of the Debtors other than those laws, rules, regulations, orders and provisions of such Contractual Obligations the noncompliance with which could not be reasonably expected to have, either individually or in the aggregate, a material adverse effect, and (b) maintain or obtain all licenses, qualifications and permits now held or hereafter required to be held by Debtors, for which the loss, suspension, revocation or failure to obtain or renew, could reasonably be expected to have, either individually or in the aggregate, a material adverse effect.

**1.2    Maintenance of Properties; Insurance**.  Debtors will maintain or cause to be maintained in good repair, working order and condition all material properties used in the business of Debtors and will make or cause to be made all appropriate repairs, renewals and replacements thereof, ordinary wear and tear excepted.  Debtors will maintain or cause to be maintained, with financially sound and reputable insurers, public liability and property damage insurance with respect to its business and properties against loss or damage of the kinds customarily carried or maintained by corporations of established reputation engaged in similar businesses and in amounts reasonably acceptable to the DIP Lender and will deliver evidence thereof to the DIP Lender.  Each Debtor represents and warrants that it and each of its subsidiaries currently maintains all material properties as set forth above and maintains all insurance described above.  In the event Debtors fail to provide the DIP Lender with evidence of the insurance coverage required by this Agreement, either DIP Lender may purchase insurance at the Debtors' expense to protect the DIP Lender's interests in the DIP Collateral.  The Debtors may, and DIP Lender shall at the written request of any Debtor, later cancel any insurance purchased by DIP Lender, but only after providing the DIP Lender with evidence that such Debtor has obtained insurance as required by this term sheet.  If the DIP Lender purchases insurance for the DIP Collateral, the Debtors will be responsible for the costs of that insurance, including interest and other charges imposed by DIP Lender in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance.  The costs of the insurance may be added to the Obligations.

**1.3    Inspection; Lender Meeting**.   Each Debtor shall permit any authorized representatives of DIP Lender to visit, audit and inspect any of Debtors' properties, including its and their financial and accounting records, and to make copies and take extracts therefrom, and to

discuss its and their affairs, finances and business with its and their officers and certified public accountants, at such reasonable times during normal business hours and as often as may be reasonably requested. Representatives of the DIP Lender will be permitted to accompany representatives of the DIP Lender during each visit, inspection and discussion referred to in the immediately preceding sentence.

**1.4   Organizational Existence**. Each Debtor will at all times preserve and keep in full force and effect its organizational existence and all rights and franchises material to its respective business.

**1.5**    The Debtors shall timely comply with all obligations of a debtor in possession under Chapter 11 of the Bankruptcy Code, including, but not limited to, its obligation to file monthly operating reports.

**1.6**    The Debtors shall provide to the DIP Lender with a copy of all financial reports prepared by the Debtors and shall provide to the DIP Lender all reports provided to the Pre-Petition Lender under any cash collateral orders.

**1.7**    The Debtors shall (i) maintain insurance with financially sound and reputable insurers reasonably acceptable to the DIP Lender on such of its assets and in at least such amounts and against at least such risks as is customary with companies in the same or similar businesses operating in the same or similar locations, including public liability insurance against claims for personal injury or death occurring upon, in or about or in connection with the use of any properties owned, occupied or controlled by it; (ii) maintain such other insurance as may be required by law; and (iii) furnish to the DIP Lender, upon written request, full information as to the insurance carried and endorsements to all insurance policies maintained naming the Lender as additional insured and loss payee, as applicable.

**1.8**    The Debtors shall properly exercise any trust responsibilities imposed on them by reason of withholding from employees' pay, and timely file all tax and other returns and other reports with each governmental authority to whom any of the Debtors is obligated to so file.

**1.9**    The Debtors will comply with and use its assets in compliance with all Requirements of Law.

**1.10**    The Debtors shall keep their assets in good order and repair (ordinary wear and tear and insured casualty excepted).

**1.11**    The DIP Lender and its representatives shall have the right, and the Debtors shall permit the DIP Lender and such representatives from time to time as such representatives may request, to examine, inspect, copy, and make extracts from any and all of the Debtors' books, records, electronically stored data, papers, and files.

## ARTICLE 2
## NEGATIVE COVENANTS

Debtors covenant and agree that from and after the date hereof until the Termination Date:

**2.1    Liens.**  Debtors shall not directly or indirectly create, incur, assume or permit to exist any lien on or with respect to any of Debtors' property or assets, whether now owned or hereafter acquired, or any income or profits therefrom, except in favor of the DIP Lender and Pre-Petition Lender.

**2.2    Investments**.  Debtors shall not directly or indirectly make or own any investments except as permitted by the Bankruptcy Court.

**2.3    Disposal of Assets or Subsidiary Stock**.  Debtors shall not directly or indirectly convey, sell, lease, sublease, transfer or otherwise dispose of, or grant any Person an option to acquire, in one transaction or a series of related transactions, any of its property, business or assets, whether now owned or hereafter acquired, except as set forth in the Sale Order.

**2.4    Bank Accounts**.  Debtors shall not establish any new bank accounts, without prior written notice to DIP Lender and unless the DIP Lender and the bank at which the account is to be opened enter into a control agreement pursuant to which such bank (a) acknowledges the security interest of the DIP Lender in such bank account, (b) agrees to comply with instructions originated by either DIP Lender directing disposition of the funds in the bank account without further consent from Debtors, and (c) agrees to subordinate and limit any security interest the bank may have in the bank account on terms reasonably satisfactory to DIP Lender.

**2.5**    The Debtors shall not use the proceeds of the DIP Facility other than in accordance with this agreement.

**2.6**    From the date hereof and for so long as the any Obligation is owing to the DIP Lender hereunder, the Debtors agree that they will not, and will not seek authority to (unless in connection with an amendment to this agreement that is reasonably likely to be approved by the DIP Lender or that proposed to repay the DIP Lender in full), incur, create, assume, suffer to exist or permit any superpriority claim or Lien other than the DIP Liens and liens in favor of the Pre-Petition Lender in existence as of the date hereof or as granted in an Interim Order or Final Order.

**2.7**    From the date hereof and for so long as any Obligation is owing to the DIP Lender hereunder, the Debtors agree that they will not, and will not seek authority to (unless in connection with an amendment to the agreement that is reasonably likely to be approved by the DIP Lender), convey, sell, lease, assign, transfer or otherwise dispose of any of its property, business or assets (including, without limitation, any capital stock of any of the Debtors, receivables and fee or leasehold interests) outside of the ordinary course of the Debtors' business operations in to any Person prior to obtaining an appropriate order of the Bankruptcy Court with such application for such order to be provided on notice to the DIP Lender.

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 19-45422 |
| | ) | Case No. 19-45423 |
| In re: | ) | Case No. 19-45424 |
| | ) | Case No. 19-45425 |
| Absolut Facilities Management, LLC, *et al.* | ) | Case No. 19-45426 |
| | ) | Case No. 19-45427 |
| Debtors.[1] | ) | Case No. 19-45428 |
| | ) | Case No. 19-45429 |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN
POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1),
364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND (B) USE CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363, (C) GRANTING ADEQUATE PROTECTION
PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (D) SCHEDULING FINAL
HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)**

On September __, 2019, the Court conducted a hearing to consider the Debtors' Emergency

Motion for Interim and Final Orders (I) Authorizing Postpetition Financing; (II) Using Cash

Collateral, (III) Granting Adequate Protection; and (IV) Scheduling Final Hearing (the "**DIP/Cash

Collateral Motion**")[2] filed by the above-captioned debtors (the "**Debtors**").  The Court finds that:

(i) it has jurisdiction over the matters raised in the DIP/Cash Collateral Motion pursuant to 28

U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2]  Capitalized terms used but not defined shall have the meaning ascribed to them in the DIP/Cash Collateral Motion.

relief requested in the DIP/Cash Collateral Motion is in the best interests of the Debtors, their

estates, and their creditors; (iv) proper and adequate notice of the DIP/Cash Collateral Motion has

been given and no other or further notice is necessary; and (v) upon the record herein after due

deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth

herein.

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.  **Petition Date**.  On September 10, 2019 (the "**Petition Date**") the Debtors each

filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States

Bankruptcy Court for the Eastern District of New York (the "**Court**").  The Debtors have

continued in the management and operation of their business and properties as debtors in

possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has

been appointed in these Chapter 11 Cases.

B.  **Jurisdiction and Venue**.  The Court has jurisdiction over these proceedings,

pursuant to 28 U.S.C. § 1334.  Consideration of the DIP/Cash Collateral Motion constitutes a core

proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Case and the proceedings on the DIP/Cash

Collateral Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  **Committee Formation**.  As of the date hereof, no official committee of unsecured

creditors has been appointed in these Chapter 11 Cases.

D.  **Notice**.  The Debtors have represented that notice of the interim hearing and the

relief requested in the DIP/Cash Collateral Motion has been provided by the Debtors, by telecopy,

e-mail, overnight courier and/or hand delivery to (i) the Office of the United States Trustee; (ii)

the Debtors' secured creditors; (iii) any party whose interests are directly affected by this specific

pleading; (iv) those persons who have formally appeared and requested notice and service in these

18060377.3                                    2

proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for the Lender; (vi) counsel

to the Pre-Petition Lender, (vii) the consolidated 20 largest unsecured creditors of the Debtors; and

(viii) all governmental agencies having a regulatory or statutory interest in these cases.  Under the

circumstances, such notice constitutes due, sufficient, and appropriate notice and complies with

section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c) and the Local

Rules.

       E.     **Need for Postpetition Financing**.  Good cause has been shown for entry of this

Interim Order.  An immediate need exists for the Debtors to obtain funds and liquidity in order to

continue operations, to satisfy in full the costs and expenses of administering these Chapter 11

Cases, and to preserve the value of their estates until emergence under a chapter 11 plan of

reorganization.  The ability of the Debtors to finance its operations, preserve and maintain the

value of its assets, and maximize returns for creditors and the best interest of all the estates'

stakeholders requires the availability of the DIP Facility.  In the absence of the availability of such

funds and liquidity in accordance with the terms hereof, the continued operation of the Debtors'

business would not be possible, and serious and irreparable harm to the Debtors and their estates

and creditors and other stakeholders of the estates would occur.

       F.     **No Credit Available on More Favorable Terms**.  The Debtors have been unable

to obtain financing on more favorable terms and conditions from sources other than the Lender

pursuant to, and for the purposes set forth in, the DIP/Cash Collateral Motion and this Interim

Order, and are unable to obtain adequate unsecured credit allowable under Section 503(b)(1) of

the Bankruptcy Code as an administrative expense.  The Debtors are also not able to obtain credit

without providing the superpriority claims and granting a lien to the Lender on the terms and

conditions set forth in this Interim Order.

G.    **Use of Proceeds of DIP Facility**.  All proceeds of the DIP Facility shall be used and applied in accordance with the terms and conditions of this Interim Order and the DIP Loan Agreement.

H.    **Extension of Financing; Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the DIP Facility are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and consideration.  All of the Debtors' obligations under the DIP Facility shall be deemed to have been extended by the Lender in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, in the event that this Interim Order, the Final Order or any provision hereof or thereof is vacated, reversed, or modified on appeal or otherwise.

I.    **Relief Essential; Best Interest**.  The relief requested in the DIP/Cash Collateral Motion (and provided in this Interim Order) is necessary, essential, and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property.  It is in the best interest of the Debtors' estates that the Debtors be allowed to enter into the DIP Facility as contemplated herein.

**NOW THEREFORE**, on the DIP/Cash Collateral Motion of the Debtors and the record before this Court, and good and sufficient cause appearing therefore,

**IT IS ORDERED** that:

1.    **Motion Granted**.  The DIP/Cash Collateral Motion is GRANTED in accordance with the terms and conditions set forth in this Interim Order and in accordance with the DIP Loan Agreement.  The Debtors are authorized to enter into the DIP Loan Agreement on the terms and

conditions set forth therein and the DIP Loan Agreement is approved in its entirety on an interim basis as set forth herein.  Any objections to the DIP/Cash Collateral Motion with respect to the entry of this Interim Order, to the extent not withdrawn, waived, or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2.    **DIP Facility**.

(a)    <u>Obligations</u>.  The Debtors are expressly and immediately authorized and empowered to enter into the DIP Facility and to incur all obligations thereunder in accordance with and subject to this Interim Order and the Final Order, and to take all actions, which may be reasonably required and/or otherwise necessary for the performance by the Debtors under the DIP Facility, including, but not limited to, the creation and perfection of the DIP Liens described and provided for herein.  The Debtors are hereby authorized and directed to pay all principal, interest, fees, and expenses and other amounts described in the DIP Loan Agreement as such shall accrue and become due thereunder.  The DIP Facility shall represent, constitute and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates, and/or any successors thereto.  No obligation, payment, transfer or grant of security under the DIP Facility as approved under this Interim Order and/or the Final Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code and/or under any applicable non-bankruptcy law, and/or subject to any defense, reduction, setoff, recoupment or counterclaim.

(b)    <u>Authorization to Borrow</u>.  To continue operations, subject to the terms and conditions of this Interim Order and the DIP Loan Agreement, the Debtors are hereby authorized to borrow under the DIP Facility up to an aggregate principal amount of $2,000,000.

(c)    <u>Collateral</u>.  As used herein, "Collateral" shall have the same meaning as the term "DIP Collateral" in the DIP Loan Agreement.

(d)     Lien.  Effective immediately upon the entry of this Interim Order and, as applicable, the Final Order, and subject and subordinate only to the Carve-Out, the Lender is hereby granted a secured, superpriority lien on the Collateral pursuant to section 364 of the Bankruptcy Code and in accordance with the DIP Loan Agreement.

(e)     Superpriority Administrative Claim Status.  The Lender is granted pursuant to Section 364(c)(1) of the Bankruptcy Code, at all times constitute an allowed superpriority administrative expense claim as set forth in the DIP Loan Agreement.

3.      **Authorization and Approval to Use Proceeds of DIP Facility**.  Subject to the terms and conditions of this Interim Order and the DIP Loan Agreement, the Debtors are authorized to request and use proceeds of DIP Facility.

4.      **Limitation on Use of DIP Facility Proceeds**.  No portion of the Carve-Out and no proceeds of the DIP Facility, may be used in contravention of the DIP Loan Agreement.

5.      **Carve-Out**.  As used herein, "Carve-Out" has the meaning set forth in the DIP Loan Agreement.

6.      **Cash Management**.  The Lender shall be deemed to have "control" over all cash management accounts for all purposes of perfection under the Uniform Commercial Code and/or applicable law.  Until the occurrence of an event of default, all amounts collected in the cash collection accounts may be used in accordance with this Interim Order; after the occurrence and during the continuance of an event of default, subject only to the funding of the Carve-Out and all such amounts shall be applied in accordance with the terms of this Interim Order and the DIP Loan Agreement.  The Deposit Banks shall hereby be directed to turn over to the Debtors all monies on deposit at any time in the Lockbox Accounts or any other operating accounts upon the request of the Debtors.

7.    **<u>Use of Cash Collateral; Adequate Protection</u>**.

(a)    <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Interim Order, and any the DIP Loan Agreement, Debtors shall be and are hereby authorized to use the Cash Collateral (as defined in section 363 of the Bankruptcy Code) for the period commencing on the date of this Interim Order and terminating upon the Termination Date of the DIP Loan Agreement.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Interim Order, and in the DIP Loan Agreement.

(b)    <u>Replacement Liens</u>. As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve-Out (collectively, the "**Diminution in Value**"), the Pre-Petition Lender is hereby granted pursuant to §§361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "**Pre-Petition Lender Adequate Protection Liens**"), and the right to receive monthly payments of interest at the non-default rate set forth in the Pre-Petition Loan Agreements. The Pre-Petition Lender Adequate Protection Liens shall be junior and subordinate only to the Carve-Out, and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

(c)    <u>Section 507(b) Priority Claims</u>. As adequate protection for the Diminution in Value, the Pre-Petition Lender is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the

Chapter 11 Cases and any successor bankruptcy cases (the "**Pre-Petition Lender Adequate Protection Superpriority Claim**"). The Pre-Petition Lender Adequate Protection Superpriority Claim shall be junior only to the Carve-Out and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtors and their estates now existing or hereafter arising, of any kind or nature whatsoever.

8.    <u>**Events of Default; Rights and Remedies Upon Event of Default**</u>.

(a)    Any automatic stay otherwise applicable to the Lender is hereby modified so that, upon and after an event of default as set forth in the DIP Loan Agreement, the Lender shall, subject to subparagraph (b) hereof, be immediately entitled to exercise all of its rights and remedies with respect to the Collateral, in accordance with this Interim Order.

(b)    Notwithstanding the foregoing subparagraph (a), immediately following the giving of notice by the Lender to the Debtors, counsel to the Debtors, counsel for any committee appointed in these Chapter 11 Cases, the U.S. Trustee, and any other affected party of the occurrence of an event of default: (i) all commitments of the Lender to provide access to the DIP Facility shall immediately be suspended; (ii) the Debtors shall have no right to request or use any proceeds of the DIP Facility or the Collateral, other than towards the satisfaction of the DIP Facility and the Carve-Out; (iii) the Debtors shall deliver and cause the delivery of the proceeds of the DIP Facility and the Collateral to the Lender as provided herein; and (iv) the Lender shall be permitted to apply such proceeds in accordance with the terms of this Interim Order.  The Debtors and any committee shall be entitled to an emergency hearing before this Court within five (5) days after the giving of written notice by the Lender of the occurrence of an event of default.  If the Debtors or any committee does not contest the occurrence of the event of default within such five (5) day period, or if there is a timely contest of the occurrence of an event of default and the Court after

notice and a hearing declines to stay the enforcement thereof, the automatic stay shall terminate as

to the Lender in all respects.  Nothing herein shall preclude the Lender from seeking an order from

the Court upon written notice (electronically (including via facsimile) in a manner that generates

a receipt for delivery, or via overnight mail) to the U.S. Trustee, counsel to the Debtors, and

counsel to any committee authorizing the Lender to exercise any enforcement rights or remedies

with respect to the Collateral on less than five (5) days' notice, or the Debtors' right to contest

such relief.

      (c)    The automatic stay imposed under section 362 of the Bankruptcy Code is

hereby modified pursuant to the terms of the DIP Facility as necessary to (i) permit the Debtors to

grant the liens contemplated by the DIP Facility to the Lender, and (ii) authorize the Lender to

retain and apply payments, and/or otherwise enforce its rights and remedies hereunder.

      (d)    Nothing included herein shall prejudice, impair or otherwise affect the

Lenders' rights to seek any other and/or supplemental relief with respect to the Debtors (including,

as the case may be, other and/or additional adequate protection).

      9.    **Proofs of Claim**.  The Lender is hereby authorized and entitled, in its sole and

absolute discretion, but not required, to file (and amend and/or supplement, as its sees fit) a proof

of claim and/or aggregate proofs of claim in these Chapter 11 Cases for any claim allowed herein.

Any order entered by the Court in relation to the establishment of a bar date for any claim

(including without limitation administrative claims) in these Chapter 11 Cases shall not apply to

the Lender.

      10.    **Other Rights and Obligations**.

      (a)    <u>Good Faith Under Section 364(e) of the Bankruptcy Code</u>.  Based on the

findings set forth in this Interim Order and in accordance with section 364(e) of the Bankruptcy

Code, which is applicable to the DIP Facility as approved by this Interim Order, in the event any or all of the provisions of this Interim Order are hereafter modified, amended and/or vacated by a subsequent order of this Court and/or any other court, the Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment and/or vacation shall affect the validity and/or enforceability of any advances made hereunder and/or the liens and/or priority authorized and/or created hereby or thereby. Notwithstanding any such modification, amendment and/or vacation, any claim granted to the Lender hereunder arising prior to the effective date of such modification, amendment and/or vacation of any lien granted to the Lender shall be governed in all respects by the original provisions of this Interim Order, and the Lender shall be entitled to all of the rights, remedies, privileges and/or benefits, including the liens granted herein, with respect to any such claim. Because the DIP Facility is made in reliance on this Interim Order, the obligations incurred by the Debtors and/or owed to the Lender prior to the effective date of any stay, modification or vacation of this Interim Order shall not, as a result of any subsequent order in the Case or in any successor case, be disallowed and/or subordinated, lose its lien priority or administrative expense claim status, and/or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this the Interim Order.

(b)     <u>Binding Effect</u>.  The provisions of this Interim Order shall be binding upon and inure to the benefit of the Lender, the Debtors, and their respective successors and assigns (including, without limitation, any trustee and/or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors).

(c)     <u>No Waiver</u>.  The failure of the Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order shall not constitute a waiver of any of the Lender's rights hereunder.

(d)    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(e)    <u>No Marshalling</u>.  The Lender shall not be subject to the equitable doctrine of "marshaling" and/or any other similar doctrine with respect to any of the Collateral.

(f)    <u>Amendment</u>.  The Debtors and the Lender may amend, modify, supplement and/or waive any provision of the DIP Facility without further notice to or approval of the Court, unless such amendment, modification, supplement or waiver (i) increases the interest rate charged in connection with the DIP Facility, (ii) increases the commitment of the Lender to make advances under the DIP Facility, or (iii) otherwise is materially adverse to the interests of the Debtors or their estates.  Except as otherwise provided herein, no waiver, modification and/or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, the Debtors and the Lender and approved by the Court after notice to parties in interest.

(g)    <u>Priority of Terms</u>.  To the extent of any conflict between or among (i) the DIP/Cash Collateral Motion, any other order of this Court, or any other agreements, on the one hand, and (ii) the terms and provisions of this Interim Order, on the other hand, the terms and provisions of this Interim Order shall govern.

(h)    <u>Enforceability</u>.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(i)    <u>Waiver of Any Applicable Stay</u>.  Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order.

(j)    <u>Retention of Jurisdiction</u>.    The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

11.    **Final Hearing**.    A final hearing to consider the relief requested in the DIP/Cash Collateral Motion shall be held on _____, 2019 at _____ (Eastern Time) and any objections or responses to the Motion shall be filed and served so as to be actually received on or prior to _____ __, 2019 at 4:00 p.m. (Eastern Time), and served on the following parties: (a) proposed counsel to the Debtors, Loeb & Loeb LLP, 345 Park Avenue, New York, NY 10154 (Attn: Schuyler G. Carroll, Esq.), scarroll@loeb.com; (b) the U.S. Trustee for the Eastern District of New York; and, if applicable, (c) counsel to any statutory committees appointed in these Chapter 11 Cases.

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| | ) Chapter 11 |
| | ) |
| | ) Case No. 19-45422 |
| | ) Case No. 19-45423 |
| In re: | ) Case No. 19-45424 |
| | ) Case No. 19-45425 |
| Absolut Facilities Management, LLC, *et al.* | ) Case No. 19-45426 |
| | ) Case No. 19-45427 |
| Debtors.[1] | ) Case No. 19-45428 |
| | ) Case No. 19-45429 |
| | ) |
| | ) (Jointly Administered) |
| | ) |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN
POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1),
364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND (B) USE CASH COLLATERAL
PURSUANT TO 11 U.S.C. § 363, (C) GRANTING ADEQUATE PROTECTION
PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND (D) SCHEDULING FINAL
HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)**

On _____, 2019, the Court conducted a final hearing to consider the Debtors'

Emergency Motion for Interim and Final Orders (I) Authorizing Postpetition Financing; (II) Using

Cash Collateral; (III) Granting Adequate Protection, and (IV) Scheduling Final Hearing

(the "**DIP/Cash Collateral Motion**")[2] filed by the above-captioned debtors (the "**Debtors**").  The

Court finds that: (i) it has jurisdiction over the matters raised in the DIP/Cash Collateral Motion

pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. §

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2]  Capitalized terms used but not defined shall have the meaning ascribed to them in the Cash Management Motion.

157(b)(2); (iii) the relief requested is in the best interests of the Debtors, their estates, and their

creditors; (iv) proper and adequate notice of the DIP/Cash Collateral Motion has been given and

no other or further notice is necessary; and (v) upon the record herein, including the interim

hearing, and after due deliberation thereon, good and sufficient cause exists for the granting of the

relief.

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      **Petition Date**.  On September 10, 2019 (the "**Petition Date**") the Debtors each

filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States

Bankruptcy Court for the Eastern District of New York (the "**Court**").   The Debtors have

continued in the management and operation of their business and properties as debtors in

possession under sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has

been appointed in these Chapter 11 Cases.

B.      **Jurisdiction and Venue**.   The Court has jurisdiction over these proceedings,

pursuant to 28 U.S.C. § 1334.  Consideration of the DIP/Cash Collateral Motion constitutes a core

proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Case and the proceedings on the DIP/Cash

Collateral Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      **Committee Formation**.  As of the date hereof, no official committee of unsecured

creditors has been appointed in these Chapter 11 Cases.

D.      **Notice**.  The Debtors have represented that notice of the final hearing and the relief

requested in the DIP/Cash Collateral Motion has been provided by the Debtors, by telecopy, e-

mail, overnight courier and/or hand delivery to (i) the Office of the United States Trustee; (ii) the

Debtors' secured creditors; (iii) any party whose interests are directly affected by this specific

pleading; (iv) those persons who have formally appeared and requested notice and service in these

proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for the Lender; (vi) counsel to the Pre-Petition Lender, (vii) the consolidated 20 largest unsecured creditors of the Debtors; and (viii) all governmental agencies having a regulatory or statutory interest in these cases. Under the circumstances, such notice constitutes due, sufficient, and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b) and (c) and the Local Rules.

E.    **Need for Postpetition Financing**.   Good cause has been shown for entry of this Final Order.  An immediate need exists for the Debtors to obtain funds and liquidity in order to continue operations, to satisfy in full the costs and expenses of administering these Chapter 11 Cases, and to preserve the value of their estates until emergence under a chapter 11 plan of reorganization.   The ability of the Debtors to finance its operations, preserve and maintain the value of its assets, and maximize returns for creditors and the best interest of all the estates' stakeholders requires the availability of the DIP Facility.  In the absence of the availability of such funds and liquidity in accordance with the terms hereof, the continued operation of the Debtors' business would not be possible, and serious and irreparable harm to the Debtors and their estates and creditors and other stakeholders of the estates would occur.

F.    **No Credit Available on More Favorable Terms**.  The Debtors have been unable to obtain financing on more favorable terms and conditions from sources other than the Lender pursuant to, and for the purposes set forth in, the DIP/Cash Collateral Motion and this Final Order, and are unable to obtain adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.   The Debtors are also not able to obtain credit without providing the superpriority claims and granting a lien to the Lender on the terms and conditions set forth in this Final Order.

G.    **Use of Proceeds of DIP Facility**.  All proceeds of the DIP Facility shall be used and applied in accordance with the terms and conditions of this Final Order.

H.    **Extension of Financing; Good Faith Pursuant to Section 364(e)**.  The terms and conditions of the DIP Facility are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and consideration.  All of the Debtors' obligations under the DIP Facility shall be deemed to have been extended by the Lender in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code, in the event that the Interim Order, this Final Order or any provision hereof or thereof is vacated, reversed, or modified on appeal or otherwise.

J.    **Relief Essential; Best Interest**.  The relief requested in the DIP/Cash Collateral Motion (and provided in this Final Order) is necessary, essential, and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property.  It is in the best interest of the Debtors' estates that the Debtors be allowed to enter into the DIP Facility as contemplated herein.

**NOW THEREFORE**, on the DIP/Cash Collateral Motion of the Debtors and the record before this Court, and good and sufficient cause appearing therefore,

**IT IS ORDERED** that:

1.    **Motion Granted**.  The DIP/Cash Collateral Motion is GRANTED in accordance with the terms and conditions set forth in this Final Order.  Any objections to the DIP/Cash Collateral Motion with respect to the entry of this Final Order, to the extent not withdrawn, waived,

or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

    2.    **DIP Facility.**

    (a)    <u>Obligations</u>.  The Debtors are expressly and immediately authorized and empowered to enter into the DIP Facility and to incur all obligations thereunder in accordance with and subject to the Interim Order and this Final Order, and to take all actions, which may be reasonably required and/or otherwise necessary for the performance by the Debtors under the DIP Facility, including, but not limited to, the creation and perfection of the DIP Liens described and provided for herein.  The Debtors are hereby authorized and directed to pay all principal, interest, fees, and expenses and other amounts described herein as such shall accrue and become due hereunder, including, without limitation, the reasonable fees and expenses of the attorneys of the Lender as, and to the extent, provided for herein.  The DIP Facility shall represent, constitute and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates, and/or any successors thereto.  No obligation, payment, transfer or grant of security under the DIP Facility as approved under the Interim Order and/or this Final Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code and/or under any applicable non-bankruptcy law, and/or subject to any defense, reduction, setoff, recoupment or counterclaim.

    (b)    <u>Authorization to Borrow</u>.  To continue operations, subject to the terms and conditions of this Final Order, the Debtors are hereby authorized to borrow under the DIP Facility up to an aggregate principal amount of $2,000,000.

    (c)    <u>Collateral</u>.  As used herein, "Collateral" shall mean any and all assets of the Debtors, whether now owned or hereafter acquired, and/or all proceeds thereof, including, without

limitation, all real property and personal property, all equipment, inventory, deposit accounts, securities accounts, cash, and cash equivalents of the Debtors, any claims and/or causes of action of the Debtors including, without limitation, all commercial tort claims and all claims asserted, but excluding any claims for preferences, fraudulent conveyances, and/or other avoidance power claims, including, but not limited to, any and all claims under sections 541, 542, 544, 545, 546, 547, 548, 549, 550, and 553 of the Bankruptcy Code.

(d)     Lien.  Effective immediately upon the entry of this Final Order and subject and subordinate only to the Carve-Out, the Lender is hereby granted a secured, superpriority lien on the Collateral pursuant to section 364 of the Bankruptcy Code.

(e)     Other Provisions.  The DIP Facility shall not, without the consent of the Lender, be made subject to, or *pari passu* with, any other lien and/or security interest, other than to the extent expressly provided herein and to the Carve-Out, by any Court order heretofore or hereafter entered in these Chapter 11 Cases, and shall be valid and enforceable against any trustee appointed in these Chapter 11 Cases, and/or upon the conversion of these cases to a case under chapter 7 of the Bankruptcy Code and/or in any other proceedings related to any of the foregoing, and/or upon the dismissal of the Case and/or these proceedings.  The DIP Facility shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code.  The express intent is for the secured interest and superpriority lien of the Lender provided herein to survive if any of the Debtors cases are converted to a case under chapter 7 of the Bankruptcy Code.

(f)     Superpriority Administrative Claim Status.  The DIP Facility shall, pursuant to Section 364(c)(1) of the Bankruptcy Code, at all times constitute an allowed superpriority administrative expense claim of the Lender and be payable from and have recourse to all Collateral. The DIP Facility shall be subject and subordinate only to the Carve-Out.  Other than as expressly

provided herein, no costs and/or expenses of administration, including, without limitation, professional fees allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, and no priority claims are, or will be, senior to, prior to or *pari passu* with the DIP Facility.

3.    **Authorization and Approval to Use Proceeds of DIP Facility**.  Subject to the terms and conditions of this Final Order, the Debtors are authorized to request and use proceeds of the DIP Facility.

4.    **Limitation on Use of DIP Facility Proceeds**.  No portion of the Carve-Out and no proceeds of the DIP Facility, may be used for the payment of the fees and/or expenses of any person incurred (i) in investigating, challenging, or in relation to the challenge of (including as to the validity, priority, extent or enforceability of), the DIP Facility, or the initiation or prosecution of any claim or action against the Lender, including without limitation, any claim under chapter 5 of the Bankruptcy Code, and/or any state, local, and/or foreign law, with respect to the DIP Facility, and/or any formal and/or informal discovery proceedings in anticipation thereof, and/or in preventing, hindering and/or delaying the realization by the Lender upon the Collateral, and/or the enforcement of the Lender's rights under this Final Order (ii) in seeking to modify (whether directly or indirectly) by any motion, pleading and/or otherwise, any of the rights granted to the Lender under this Final Order, and/or (iii) in paying any amount on account of any claims arising prior to the Petition Date unless such payments are approved by an order of this Court.

5.    **Carve-Out**.  As used herein, "Carve-Out" means the sum of: (a) unpaid, postpetition fees and expenses of the Clerk of the Court and the U.S. Trustee pursuant to 28 U.S.C. § 1930(a) in such amount, with respect to the U.S. Trustee as agreed to by the U.S. Trustee or as determined by the Court (collectively, the "**Statutory Fees**"); (b) the unpaid postpetition fees and

expenses of the professionals retained by the Debtors and by any Committee (up to a maximum of $50,000 in the case of any professionals retained by the Committee), whose retentions are approved pursuant to final orders of the Court under sections 327, 328, 363 or 1103(a) of the Bankruptcy Code (the "**Chapter 11 Professionals**"), but only to the extent that such fees and expenses are (i) incurred prior to the giving of a notice of the occurrence of the Termination Date by the DIP Lender to the Debtors and any Committee, (ii) subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code, and (iii) not otherwise paid from retainers; (c) postpetition fees and expenses of the Chapter 11 Professionals retained by the Debtors incurred after a DIP Lender's transmission of notice of the Termination Date, to the extent such fees and expenses are (i) subsequently allowed by the Bankruptcy Court under sections 330, 331, or 363 of the Bankruptcy Code, and (ii) not otherwise paid from any retainers; provided that such notice of Termination Date is not rescinded or withdrawn; and (d) all reasonable fees and expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code in an aggregate amount not exceeding $10,000.  Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any of the Debtors and/or any committee and/or shall limit and/or otherwise affect the right of the Lender and/or any party in interest to object to the allowance and payment of any such fees and expenses.

6.      **Limitations in Respect of Subsequent Court Orders**.  Without limiting any other provisions of this Final Order, it shall constitute an Event of Default under the DIP Facility if Defaults and Events of Default shall mean the occurrence of any of the following: (a) the Chapter 11 Cases shall be converted to a case under Chapter 7 of the Bankruptcy Code or be dismissed or a motion requesting such relief shall have been filed; (b) a proposed plan of reorganization is filed or supported by Debtors that does not provide for the indefeasible payment in full of the DIP

Obligations, unless otherwise agreed in writing by Lender in its commercially reasonable discretion; (c) an order is entered confirming (or the filing of any motion or pleading requesting confirmation of) a plan of reorganization that does not require the indefeasible repayment in full of the DIP Facility as of the effective date of the plan, unless otherwise agreed in writing by the Lender in its commercially reasonable discretion; (d) the appointment of a trustee under Section 1104 of the Bankruptcy Code without the express written consent of the Lender, or the filing of any motion or other pleading requesting such relief which the Debtors fail to timely oppose; (e) the entry of an order by the Bankruptcy Court staying or vacating the DIP Facility, the Interim Order or Final Order approving the DIP Facility, without the prior written consent of the Lender or the filing of a motion or other pleading requesting such relief which the Debtors fail to timely oppose; (f) any attempt by Debtors to obtain, or if any other party in interest obtains, an order of the Bankruptcy Court or other judgment, and the effect of such order or judgment is to, invalidate, reduce or otherwise impair the Lender's claims, or to subject any of the Lender's collateral to a surcharge pursuant to Section 506(c) of the Bankruptcy Code; (g) a final order is entered granting any creditor with a claim in excess of $250,000 relief from the automatic stay; (h) the failure to make all payments under the DIP Facility when due; (i) any breach in any material respect of any covenant or obligation set forth in the DIP Loan Agreement; (j) any material representation or warranty by the Debtors contained in the DIP Loan Agreement is incorrect or misleading in any material respect when made; (k) the Debtors shall take (or support any other Person in taking) any action in order to restrict or prohibit the Lender or Pre-Petition Lender from submitting a "credit bid" for any assets of the Debtors; (l) the Debtors fail to disburse any sale proceeds to the Lender, in accordance with the priority of proceeds set forth herein, contemporaneously with the closing of a sale of substantially all of their assets, subject to payment of the Carve Out; (m) (i) The

material impairment of any of the Debtors' ability to perform its respective obligations under the

DIP Facility and as set forth in the DIP Loan Agreement, or of the Lender to enforce the DIP

Obligations, (ii) a material adverse effect on the value of the Debtors' assets or the amount that the

Lender would be likely to receive (after giving consideration to delays in payment and costs of

enforcement) in the liquidation of such assets, or (iii) a material impairment of the priority of the

Lender's rights and liens   with respect to the Collateral pledged to it under the DIP Loan

Agreement; (n) the commencement of any suit by any Person that is not subject to the automatic

stay against the Lender that would, or seek to, in any way reduce, set off, or subordinate the DIP

Obligations or DIP Liens; (o) the Debtors shall be denied, or otherwise not obtain or lose

authorization to, use cash collateral as that term is used in section 363 of the Bankruptcy Code; (p)

any Person is granted (or awarded) an administrative expense claim that is not subordinated to the

super-priority administrative claims granted to the Lender (q) the Debtors' seek to grant a security

interest or lien on or to any of their assets other than the DIP Liens; (r) the Court enters an order

requiring the Debtors to pay rent to any landlords within the first 60 days of the Chapter 11 Cases;

or (s) Medicare or Medicaid, or any other governmental entity, sets off or otherwise withholds

payment against any accounts receivable owing to Debtors.

      7.    **<u>Cash Management</u>**.  The Debtors' cash management system shall at all times be

maintained accordance with the terms of the orders of this Court approving the maintenance of the

Debtor's cash management system.  The Lender shall be deemed to have "control" over all cash

management accounts for all purposes of perfection under the Uniform Commercial Code and/or

applicable law.  Until the occurrence of an event of default, all amounts collected in the cash

collection accounts may be used in accordance with this Final Order; after the occurrence and

during the continuance of an event of default, subject only to the funding of the Carve-Out and all

such amounts shall be applied in accordance with the terms of this Final Order.  The Deposit Banks shall hereby be directed to turn over to the Debtors all monies on deposit at any time in the Lockbox Accounts or any other operating accounts upon the request of the Debtors.

8.      **Disposition of Collateral**.  The Debtor shall not sell, transfer, lease, encumber and/or otherwise dispose of any portion of the Collateral, except to the extent the proceeds thereof are paid to the Lender.

9.      **Use of Cash Collateral; Adequate Protection**.

(a)      <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Final Order, and any the DIP Loan Agreement, Debtors shall be and are hereby authorized to use the Cash Collateral (as defined in section 363 of the Bankruptcy Code) for the period commencing on the date of this Final Order and terminating upon the Termination Date of the DIP Loan Agreement.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of Cash Collateral or other proceeds resulting therefrom, except as expressly permitted in this Final Order, and in the DIP Loan Agreement.

(b)      <u>Replacement Liens</u>. As adequate protection for the diminution in value of their interests in the Pre-Petition Collateral (including Cash Collateral) on account of the Debtors' use of such Pre-Petition Collateral (including Cash Collateral), the imposition of the automatic stay and the subordination to the Carve-Out (collectively, the "**Diminution in Value**"), the Pre-Petition Lender is hereby granted pursuant to §§361 and 363 of the Bankruptcy Code, and solely to the extent of the Diminution in Value, valid, binding, enforceable and perfected replacement liens upon and security interests in all Collateral (the "**Pre-Petition Lender Adequate Protection Liens**"), and the right to receive monthly payments of interest at the non-default rate set forth in

the Pre-Petition Loan Agreements. The Pre-Petition Lender Adequate Protection Liens shall be junior and subordinate only to the Carve-Out, and shall otherwise be senior to all other security interests in, liens on, or claims against any of the Collateral.

(c)    Section 507(b) Priority Claims. As adequate protection for the Diminution in Value, the Pre-Petition Lender is hereby granted as and to the extent provided by section 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Chapter 11 Cases and any successor bankruptcy cases (the "**Pre-Petition Lender Adequate Protection Superpriority Claim**"). The Pre-Petition Lender Adequate Protection Superpriority Claim shall be junior only to the Carve-Out and shall otherwise have priority over all administrative expense claims and unsecured claims against Debtors and their estates now existing or hereafter arising, of any kind or nature whatsoever.

10.    **Events of Default; Rights and Remedies Upon Event of Default**.

(a)    Any automatic stay otherwise applicable to the Lender is hereby modified so that, upon and after an event of default, the Lender shall, subject to subparagraph (b) hereof, be immediately entitled to exercise all of its rights and remedies with respect to the Collateral, in accordance with this Final Order.

(b)    Notwithstanding the foregoing subparagraph (a), immediately following the giving of notice by the Lender to the Debtors, counsel to the Debtors, counsel for any committee appointed in these Chapter 11 Cases, the U.S. Trustee, and any other affected party of the occurrence of an event of default: (i) all commitments of the Lender to provide advances under the DIP Facility shall immediately be suspended; (ii) the Debtors shall have no right to request or use any proceeds of the DIP Facility or the Collateral, other than towards the satisfaction of the DIP Facility and the Carve-Out; (iii) the Debtors shall deliver and cause the delivery of the proceeds of

the DIP Facility and the Collateral to the Lender as provided herein; and (iv) the Lender shall be permitted to apply such proceeds in accordance with the terms of this Final Order.  The Debtors and any committee shall be entitled to an emergency hearing before this Court within five (5) days after the giving of written notice by the Lender of the occurrence of an event of default.  If the Debtors or any committee does not contest the occurrence of the event of default within such five (5) day period, or if there is a timely contest of the occurrence of an event of default and the Court after notice and a hearing declines to stay the enforcement thereof, the automatic stay shall terminate as to the Lender in all respects.  Nothing herein shall preclude the Lender from seeking an order from the Court upon written notice (electronically (including via facsimile) in a manner that generates a receipt for delivery, or via overnight mail) to the U.S. Trustee, counsel to the Debtors, and counsel to any committee authorizing the Lender to exercise any enforcement rights or remedies with respect to the Collateral on less than five (5) days' notice, or the Debtors' right to contest such relief.

(c)    The automatic stay imposed under section 362 of the Bankruptcy Code is hereby modified pursuant to the terms of the DIP Facility as necessary to (i) permit the Debtors to grant the liens contemplated by the DIP Facility to the Lender, and (ii) authorize the Lender to retain and apply payments, and/or otherwise enforce its rights and remedies hereunder.

(d)    Nothing included herein shall prejudice, impair or otherwise affect the Lenders' rights to seek any other and/or supplemental relief with respect to the Debtors (including, as the case may be, other and/or additional adequate protection).

11.    **Proofs of Claim**.  The Lender is hereby authorized and entitled, in its sole and absolute discretion, but not required, to file (and amend and/or supplement, as its sees fit) a proof of claim and/or aggregate proofs of claim in these Chapter 11 Cases for any claim allowed herein.

Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in these Chapter 11 Cases shall not apply to the Lender.

      12.    **<u>Other Rights and Obligations</u>**.

      (a)    <u>Good Faith Under Section 364(e) of the Bankruptcy Code</u>.  Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility as approved by this Final Order, in the event any or all of the provisions of this Final Order are hereafter modified, amended and/or vacated by a subsequent order of this Court and/or any other court, the Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code, and no such appeal, modification, amendment and/or vacation shall affect the validity and/or enforceability of any advances made hereunder and/or the liens and/or priority authorized and/or created hereby or thereby.  Notwithstanding any such modification, amendment and/or vacation, any claim granted to the Lender hereunder arising prior to the effective date of such modification, amendment and/or vacation of any lien granted to the Lender shall be governed in all respects by the original provisions of this Final Order, and the Lender shall be entitled to all of the rights, remedies, privileges and/or benefits, including the liens granted herein, with respect to any such claim.  Because the DIP Facility is made in reliance on this Final Order, the obligations incurred by the Debtors and/or owed to the Lender prior to the effective date of any stay, modification or vacation of this Final Order shall not, as a result of any subsequent order in the Case or in any successor case, be disallowed and/or subordinated, lose its lien priority or administrative expense claim status, and/or be deprived of the benefit of the status of the liens and claims granted to the DIP Lender under this the Final Order.

(b)    _Binding Effect_.  The provisions of this Final Order shall be binding upon and inure to the benefit of the Lender, the Debtors, and their respective successors and assigns (including, without limitation, any trustee and/or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors).

(c)    _No Waiver_.  The failure of the Lender to seek relief or otherwise exercise its rights and remedies under this Final Order shall not constitute a waiver of any of the Lender's rights hereunder.

(d)    _No Third Party Rights_.  Except as explicitly provided for herein, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party or incidental beneficiary.

(e)    _No Marshalling_.  The Lender shall not be subject to the equitable doctrine of "marshaling" and/or any other similar doctrine with respect to any of the Collateral.

(f)    _Amendment_.  The Debtors and the Lender may amend, modify, supplement and/or waive any provision of the DIP Facility without further notice to or approval of the Court, unless such amendment, modification, supplement or waiver (i) increases the interest rate charged in connection with the DIP Facility, (ii) increases the commitment of the Lender to make advances under the DIP Facility, or (iii) otherwise is materially adverse to the interests of the Debtors or their estates.  Except as otherwise provided herein, no waiver, modification and/or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, the Debtors and the Lender and approved by the Court after notice to parties in interest.

(g)    _Priority of Terms_.  To the extent of any conflict between or among (i) the DIP/Cash Collateral Motion, any other order of this Court, or any other agreements, on the one

hand, and (ii) the terms and provisions of this Final Order, on the other hand, the terms and provisions of this Final Order shall govern.

(h)    <u>Enforceability</u>.    This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

(i)    <u>Waiver of Any Applicable Stay</u>.    Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

(j)    <u>Retention of Jurisdiction</u>.    The Court has and will retain jurisdiction to enforce this Final Order according to its terms.