**LOEB & LOEB LLP**
Schuyler G. Carroll
Daniel B. Besikof
Noah Weingarten
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Fax: (212) 407-4990
Email: scarroll@loeb.com
        dbesikof@loeb.com
        nweingarten@loeb.com

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) Chapter 11 |
| | ) |
| | ) Case No. 19-45422 |
| | ) Case No. 19-45423 |
| In re: | ) Case No. 19-45424 |
| | ) Case No. 19-45425 |
| Absolut Facilities Management, LLC, *et al*. | ) Case No. 19-45426 |
| | ) Case No. 19-45427 |
| Debtors.[1] | ) Case No. 19-45428 |
| | ) Case No. 19-45429 |
| | ) |
| | ) (Joint Administration Requested) |
| | ) |

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF**
**INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS**
**TO PAY CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS**

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

Absolut Facilities Management, LLC and its affiliated debtor entities (collectively, the "**Debtors**"), as debtors-in-possession in the above-referenced chapter 11 cases, by and through proposed counsel, Loeb & Loeb LLP, respectfully submit this motion (the "**Motion**") for entry of interim and final orders authorizing the Debtors to pay certain prepetition claims of critical vendors (the "**Critical Vendors**").

## JURISDICTION AND VENUE

1.       This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Referral of Matters to the Bankruptcy Judges* of the United States District Court for the Eastern District of New York, entered on December 5, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.       The statutory basis for the relief requested in the Motion is Section 105 & 366 of the Bankruptcy Code.

## BACKGROUND

A.       **General Background**

3.       On September 10, 2019 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") commencing the above captioned cases (the "**Chapter 11 Cases**").  The Debtors continue to manage and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.  Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of the Chapter 11 Cases.

4.       An official committee of unsecured creditors has yet to be appointed in these Chapter 11 Cases.  Further, no trustee or examiner has been requested or appointed in these Chapter 11 Cases.

5.    A detailed description of the Debtors and their business, the facts and circumstances leading up to the filing of the Debtors' Chapter 11 Cases, and the facts supporting this Motion are set forth in greater detail in the *Declaration of Michael Wyse in Support of Debtors' Chapter 11 Petitions and First-Day Motions* (the "**First Day Declaration**"), which is being filed concurrently herewith and is incorporated by reference in this Motion.

**B.    The Critical Vendors**

6.    In the ordinary course of business, the Debtors engage a limited number of providers for many of the critical products and services the Debtors depend upon to service their patients (collectively, the "**Critical Vendor Products and Services**").  Without the Critical Vendor Products and Services, the Debtors would not be able to operate their businesses effectively and efficiently, serve their patients or generate revenue.

7.    With the assistance of their advisors, the Debtors have spent time reviewing and analyzing their books and records, consulting operations managers and purchasing personnel, reviewing contracts and supply agreements and identified approximately $785,493.97 in Critical Vendors for purposes of the relief requested herein and are listed in **Exhibit C**, attached hereto. This number represents only approximately 7.7 percent of the amount due outstanding to the Debtors' creditors with outstanding accounts payable as of the Petition Date.

8.    To identify the Critical Vendors identified on **Exhibit C**, the Debtors considered a variety of factors, including:

- whether a vendor is a sole- or limited-source or high-volume supplier for goods or services critical to the Debtors' business operations;

- whether alternative vendors are available that can provide requisite volumes of similar goods or services on equal (or better) terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

- the degree to which replacement costs (including pricing, transition expenses, professional fees, and lost sales or future revenue) exceed the amount of a vendor's prepetition claim;

- whether an agreement exists by which the Debtors could compel a vendor to continue performing on prepetition terms;

- whether certain specifications or contract requirements prevent, directly or indirectly, the Debtors from obtaining goods or services from alternative sources;

- whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship inventory or to provide critical services on a postpetition basis;

- whether the Debtors' inability to pay all or part of the vendor's prepetition claim could trigger financial distress for the applicable vendor; and

- whether failure to pay a particular vendor could result in contraction of trade terms as a matter of applicable non-bankruptcy law or regulation.

9.     Most claims of the Critical Vendors would not be subject to priority pursuant to section 503(b)(9) of the Bankruptcy Code as a result of the tighter payment terms the Debtors have faced in the weeks leading up to the Petition Date.

10.     While the list of Critical Vendors on **Exhibit C** is, upon information and belief, a complete and accurate list of all Critical Vendors and the estimated amounts that may need to be paid to such Critical Vendors, the Debtors reserve the right to identify additional Critical Vendors or to amend **Exhibit C** in the ordinary course of business as circumstances may warrant.

### C.     Customary Trade Terms

11.     In return for paying the Critical Vendor Claims, the Debtors will use commercially reasonable efforts to require the applicable Critical Vendor to provide favorable trade terms in line with historical practice for the postpetition delivery of goods and services or otherwise continue supplying the Debtors with essential goods and services for the duration of these Chapter 11 Cases. The Debtors therefore request authority to condition payment upon such party's written agreement

to continue supplying goods or services to the Debtors for the duration of these Chapter 11 Cases in accordance with trade terms at least as favorable to the Debtors as those practices and programs in place prior to the Petition Date, as may be modified by any Trade Agreement (as defined herein) (collectively, the "**Customary Trade Terms**").

12.     More specifically, the Debtors may elect to condition the payment of Critical Vendor Claims upon such party's agreement to continue supplying goods or services on Customary Trade Terms for the duration of these Chapter 11 Cases by executing a trade agreement substantially in the form attached to **Exhibit D** (each a "**Trade Agreement**"). Such Trade Agreement, once agreed to and accepted by a Critical Vendor, shall be a legally binding contractual arrangement between the parties governing the commercial trade relationship as provided therein.

13.     Subject to entry of the Final Order, the Debtors also seek limited authority to pay Critical Vendor Claims in the event that no Trade Agreement has been executed if the Debtors determine, in their business judgment, that a formal Trade Agreement is unnecessary to ensure a vendor's continued performance on Customary Trade Terms.

14.     And, if any party accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms, then, subject to such party's right to object as set forth in the proposed Final Order attached hereto as **Exhibit B**, and subject to any Trade Agreement that may be executed between the Debtors and such party: (a) such payment may be deemed to be an improper postpetition transfer on account of a prepetition claim, and therefore, immediately recoverable by the Debtors in cash upon written request; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment

made pursuant to the relief requested by the Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.

15.     As noted above, to date, the Debtors have identified counterparties, set forth on **Exhibit C** attached hereto, that may hold more than $785,493.97 in claims that may qualify as Critical Vendors, constituting approximately 7.7 % of the amount of the Debtors' unsecured claims presently estimated to total $10.2 million.

## RELIEF REQUESTED

16.     The Debtors seek entry of an interim order (the "**Interim Order**"), substantially in the form attached hereto as **Exhibit A**, and a final order, substantially in the form attached hereto as **Exhibit B**, (the "**Final Order**"): authorizing, but not directing, the Debtors to pay, in the ordinary course of business, all undisputed, liquidated, prepetition amounts owing on account of claims held by Critical Vendors (the "**Critical Vendor Claims**") that are essential to the Debtors' ongoing business operations.  The Debtors also request that the Court schedule a final hearing to consider approval of this Motion on a final basis, thereby also permitting the Debtors to pay Critical Vendor Claims on a final basis.

## BASIS FOR RELIEF

17.     Courts have recognized that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authorizing debtor to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (authorizing the payment of prepetition claims to suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  In so doing, these courts

acknowledge that several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code support the payment of prepetition claims as provided herein.

18.     Pursuant to section 363(b) of the Bankruptcy Code, courts may authorize payment of prepetition obligations where a sound business purpose exists for doing so.  *See Ionosphere Clubs*, 98 B.R. at 175 (noting that section 363(b) provides "broad flexibility" to authorize a debtor to honor prepetition claims where supported by an appropriate business justification); *see also James A. Phillips*, 29 B.R. at 397 (relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of suppliers who were potential lien claimants).  Indeed, courts have recognized that there are instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *See, e.g.*, *In re CoServ*, 273 B.R. at 497.

19.     In addition, courts may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a) codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under section 105(a), courts may authorize the payment of prepetition obligations when essential to the continued operation of a debtor's business. *See, e.g.*, *In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Fin. News Network Inc.*, 134 B.R. 732, 735-36 (Bankr. S.D.N.Y. 1991) (holding that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow preplan payments of prepetition obligations where such payments are critical to the debtor's reorganization).  Specifically, the Court may use its power under section 105(a) of the Bankruptcy Code to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").  *See e.g.*, *Ionosphere Clubs*, 98 B.R. at 176.

20.     The relief requested herein is appropriate and warranted under the circumstances. The Debtors believe that their trade relationships with the Critical Vendors may materially deteriorate, causing disruption to the Debtors' operations if the Debtors are unable to pay Critical Vendor Claims as requested herein.   The Debtors rely on timely and frequent delivery of these Critical Vendor Products and Services and any interruption in this supply-however brief-would disrupt the Debtors' operations and could potentially cause irreparable harm to their businesses, goodwill, employees, patients, and market share.   Such harm would likely far outweigh the cost of payment of the critical vendor claims.

21.     In many cases, the Critical Vendor Products and Services are available from only a limited number of vendors, and in some cases, only one vendor.   Even where alternative vendors exist, the costs associated with switching from one vendor to another are often significant and would be detrimental to the Debtors' estates.   The Debtors believe that jeopardizing their relationships with the Critical Vendors and attempting to procure the Critical Vendor Products and Services from replacement vendors would impose a severe strain on the Debtors' business operations, and would likely result in significant revenue loss.   Even a temporary halt of the provision of Critical Vendor Products and Services would impose a severe strain on the Debtors' operations, and the cumulative impact of such events could have a significant adverse effect on the Debtors' operations and, particularly, on the ability of the Debtors to maintain business-as-usual and serve their patients.

22.     Accordingly, in light of the potential for immediate irreparable consequences if the Critical Vendors do not continue to provide uninterrupted and timely deliveries of goods and services, the Debtors have determined, in the exercise of their business judgment, that payment of the Critical Vendor Claims is essential to avoid costly disruptions to their operations.

23.     Where, as here, debtors have shown that the payment of prepetition claims is critical to maximizing the value of their estates, courts in this district and other jurisdictions have routinely authorized payments to international vendors and lien claimants on account of prepetition claims. *See, e.g.*, *In re Aegean Marine Petrol. Network Inc.*, Case No. 18-13374 (MEW) (Bankr. S.D.N.Y. Dec. 6, 2018) (approving the payment of prepetition claims of shippers, warehousemen, and other critical claimants on the basis that shippers and warehousemen could refuse to deliver or return the debtors' goods if prepetition claims were not satisfied); *In re Nine West Holdings, Inc.*, Case No. 18-10497 (SCC) (Bankr. S.D.N.Y. May 7, 2018) (same); *In re Avaya Inc.*, Case No. 17-10089 (SMB) (Bankr. S.D.N.Y. Feb. 10, 2017) (same); *In re BCBG Max Azria Glob. Holdings, LLC*, Case No. 17-10466 (SCC) (Bankr. S.D.N.Y. Mar. 29, 2017) (authorizing the payment of prepetition claims of various lien claimants and foreign vendors to avoid disruption to the debtors' business operations); *In re Sabine Oil & Gas Corp.*, Case No. 15-11835 (SCC) (Bankr. S.D.N.Y. Oct. 15, 2015) (approving the payment of prepetition claims of shipper and warehousemen claimants on the basis that shippers and warehousemen could refuse to deliver or return the debtors' goods if prepetition claims were not satisfied).

24.     The authority to satisfy the Critical Vendor Claims in the initial days of these cases without disrupting the Debtors' operations will maintain the integrity of the Debtors' employee base, supply chain, facilitate the Debtors' accounts receivable collection, and allow the Debtors to smoothly transition into and efficiently administer these chapter 11 cases.  The Debtors request only limited relief sufficient to bridge their businesses through a brief interim period. Failure to pay the Critical Vendor Claims could potentially destroy value that would otherwise inure to the benefit of the Debtors' estates.

25.     As of the Petition Date, the Debtors believe they owed the Critical Vendors approximately $785,493.  Accordingly, by this Motion, the Debtors request authorization, but not direction, to pay all outstanding prepetition obligations on account of the Critical Vendor Claims, up to $785,493 in the aggregate, but only as such amounts come due in the ordinary course of business or as may be necessary to secure a vendor's agreement to continue business with the Debtors on Customary Trade Terms.

26.     While the list of Critical Vendors on Exhibit C is, upon information and belief, a complete and accurate list of all Critical Vendors and the estimated amounts that may need to be paid to such Critical Vendors, the Debtors reserve the right to identify additional Critical Vendors or to amend Exhibit C in the ordinary course of business as circumstances may warrant. As the Debtors identify additional Critical Vendors or amounts that, in the reasonable exercise of their business judgment, they believe should be paid to Critical Vendors, the Debtors will file a notice with this Court listing: (a) the Critical Vendor sought to be paid; (b) the services provided by such Critical Vendor; (c) the amount sought to be paid to such Critical Vendor; (d) the risk of harm from nonpayment or the economic benefit to the Debtors' estates from payment to such Critical Vendor; and (e) the absence of a legal or practical alternative to payment of such Critical Vendor. The Debtors seek authority to pay such additional Critical Vendors absent a timely objection from a party in interest to such payment. The Debtors propose a 14 day objection period to future requests to pay Critical Vendors.

27.     The Debtors propose to maintain a matrix summarizing (a) the name of each Critical Vendor paid on account of Critical Vendor Claims, (b) the amount paid to each Critical Vendor, and (c) the goods or services provided by such Critical Vendor.  The matrix will be

provided weekly to counsel for the DIP Lender (as defined in the DIP Order) in each week in which payments are made pursuant to the terms of the Final Order.

28.     Allowing the Debtors to pay the Critical Vendor Claims is especially appropriate where, as here, doing so is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code—preserving going concern value and maximizing the value of property available to satisfy creditors. *See Bank of Am. Nat'l Trust Savs. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999).   Based on these circumstances, the Debtors submit that the relief requested herein represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is therefore justified under sections 105(a) and 363(b) of the Bankruptcy Code.

### CAUSE EXISTS TO AUTHORIZE THE DEBTORS' FINANCIAL INSTITUTIONS TO HONOR CHECKS AND ELECTRONIC FUND TRANSFERS

29.     The Debtors have sufficient funds to pay the amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral.   In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Critical Vendor Claims. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.

30.     Therefore, the Debtors respectfully request that the Court authorize and direct all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

31.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14 day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

32.     Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

## NOTICE

33.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) the Debtors' secured creditors; (iii) any party whose interests are directly affected by this specific pleading; (iv) those persons who have formally appeared and requested notice and service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for the proposed DIP Lender; (vi) the consolidated 30 largest unsecured creditors of the Debtors; and (vii) all governmental agencies having a regulatory or statutory interest in these cases.  No other or further notice need be provided.

## NO PRIOR REQUEST

34.     No prior request for the relief sought in this Motion has been made to this or any other court.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order

and Final Order, granting the relief requested herein and such other relief as the Court deems

appropriate under the circumstances.

Dated:    September 10, 2019
          New York, New York

LOEB & LOEB LLP

*/s/ Schuyler G. Carroll*

Schuyler G. Carroll
Daniel B. Besikof
Noah Weingarten
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Fax: (212) 407-4990
scarroll@loeb.com
dbesikof@loeb.com
nweingarten@loeb.com

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**Exhibit A**

**(Interim Proposed Order)**

18140583

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
|  | ) | Chapter 11 |
|  | ) |  |
|  | ) | Case No. 19-45422 |
|  | ) | Case No. 19-45423 |
| In re: | ) | Case No. 19-45424 |
|  | ) | Case No. 19-45425 |
| Absolut Facilities Management, LLC, *et al.* | ) | Case No. 19-45426 |
|  | ) | Case No. 19-45427 |
| Debtors.[1] | ) | Case No. 19-45428 |
|  | ) | Case No. 19-45429 |
|  | ) |  |
|  | ) | (Jointly Administered) |
|  | ) |  |

## INTERIM ORDER AUTHORIZING DEBTORS TO PAY
## CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS

On September ___, 2019, the Court conducted a hearing to consider the *Debtors' Emergency*

*Motion for Entry of Interim and Final Orders Authorizing the Debtors to Pay Certain Prepetition*

*Claims of Critical Vendors* (the "**Critical Vendors Motion**")[2], filed by the above-captioned

debtors and debtors-in-possession (the "**Debtors**").  The Court finds that: (i) it has jurisdiction

over the matters raised in the Critical Vendors Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii)

this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) venue is proper in this district

pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Critical Vendors Motion

is in the best interests of the Debtors, their estates, and their creditors; (v) proper and adequate

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Critical Vendors Motion.

notice of the Critical Vendors Motion has been given and no other or further notice is necessary; and (vi) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

Therefore, IT IS HEREBY ORDERED THAT:

1.      The Critical Vendors Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "Final Hearing") on the Critical Vendors Motion shall be held on _____, 2019 at_____:_____.m., prevailing Eastern Time.  Any objections or responses to entry of a final order on the Critical Vendors Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2019.  In the event no objections to entry of a final order on the Critical Vendors Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3.      The Debtors are authorized, but not directed, to honor, pay, or otherwise satisfy prepetition amounts on account of Critical Vendor Claims to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates.

4.      The Debtors may identify additional Critical Vendors and/ or additional amounts sought to be paid to Critical Vendors by filing a notice (the "**Notice**") with the Court listing: (a) the Critical Vendor sought to be paid; (b) the services provided by such Critical Vendor; (c) the amount sought to be paid to such Critical Vendor; (d) the risk of harm from nonpayment or the economic benefit to the Debtors' estates from payment to such Critical Vendor; and (e) the absence of a legal or practical alternative to payment of such Critical Vendor. Parties shall have 14 days after the filing of such Notice to file an objection with the Court. If no objection is timely filed, the Debtors are authorized to pay the payment set forth on the Notice pursuant to the terms of this

Interim Order. If an objection is timely filed, the matter shall be considered by this Court at the next available hearing date.

5.       The Debtors shall maintain a matrix summarizing (a) the name of each Critical Vendor paid on account of Critical Vendor Claims, (b) the amount paid to each Critical Vendor, and (c) the goods or services provided by such Critical Vendor. The matrix will be provided weekly to counsel for the DIP Agent (as defined in the DIP Order) in each week in which payments are made pursuant to the terms of this Interim Order.

6.       Nothing herein shall impair or prejudice the Debtors' ability to contest, in their sole discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Critical Vendor. The Debtors do not concede that any claims satisfied pursuant to this Interim Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection or seek the avoidance of all such liens or the priority of such claims.

8.       Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Critical Vendors Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

9.       The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests

when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

10.    The contents of the Critical Vendors Motion satisfy the requirements of Bankruptcy Rule 6003(b) as necessary to avoid immediate and irreparable harm.

11.    Notice of the Critical Vendors Motion as provided therein shall be deemed good and sufficient notice of such Critical Vendors Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

12.    Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

13.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Critical Vendors Motion.

14.    This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**Exhibit B**

**(Final Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 19-45422 |
| | ) | Case No. 19-45423 |
| In re: | ) | Case No. 19-45424 |
| | ) | Case No. 19-45425 |
| Absolut Facilities Management, LLC, *et al.* | ) | Case No. 19-45426 |
| | ) | Case No. 19-45427 |
| Debtors.[1] | ) | Case No. 19-45428 |
| | ) | Case No. 19-45429 |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |

## FINAL ORDER AUTHORIZING DEBTORS TO PAY
## CERTAIN PREPETITION CLAIMS OF CRITICAL VENDORS

On September __, 2019, the Court conducted a hearing to consider the *Debtors' Emergency Motion for Entry of Interim and Final Orders Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors* (the "**Critical Vendors Motion**")[2], filed by the above-captioned debtors and debtors-in-possession (the "**Debtors**").  The Court finds that: (i) it has jurisdiction over the matters raised in the Critical Vendors Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested in the Critical Vendors Motion is in the best interests of the Debtors, their estates, and their creditors; (iv) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; (v) proper and adequate notice of the Critical Vendors Motion has been given and no other or further notice is necessary; and (vi)

---

[1]  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

Therefore, IT IS HEREBY ORDERED THAT:

1.       The Critical Vendors Motion is granted on a final basis as set forth herein.

2.       The Debtors are authorized, but not directed, to pay the Critical Vendor Claims.

3.       The Debtors may identify additional Critical Vendors and/ or additional amounts sought to be paid to Critical Vendors by filing a notice (the "**Notice**") with the Court listing: (a) the Critical Vendor sought to be paid; (b) the services provided by such Critical Vendor; (c) the amount sought to be paid to such Critical Vendor; (d) the risk of harm from nonpayment or the economic benefit to the Debtors' estates from payment to such Critical Vendor; and (e) the absence of a legal or practical alternative to payment of such Critical Vendor. Parties shall have 14 days after the filing of such Notice to file an objection with the Court. If no objection is timely filed, the Debtors are authorized to pay the payment set forth on the Notice pursuant to the terms of this Final Order. If an objection is timely filed, the matter shall be considered by this Court at the next available hearing date.

4.       The form of Trade Agreement, substantially in the form attached to the Motion as **Exhibit D**, is approved in its entirety, and the Debtors are authorized, but not directed, to negotiate, modify, or amend the Trade Agreement in their reasonable business judgment.

5.       The Debtors are authorized, but not directed, to condition payment of Critical Vendor Claims upon the execution of a Trade Agreement, and the Debtors are authorized, but not directed, to enter into such Trade Agreements when and if the Debtors determine, in the exercise of their reasonable business judgment that it is appropriate to do so.

6.     The Debtors are authorized, but not directed, to pay Critical Vendor Claims, in the event that no Trade Agreement has been executed if the Debtors determine, in their business judgment that a formal Trade Agreement is unnecessary to ensure a vendor's continued performance on Customary Trade Terms.

7.     If any party accepts payment hereunder and does not continue supplying goods or services to the Debtors in accordance with customary trade terms, then: (a) any payment on account of a prepetition claim received by such party shall be deemed, in the Debtor. discretion, an improper postpetition transfer and, therefore, immediately recoverable by the Debtors in cash upon written request by the Debtors; (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made; and (c) if there exists an outstanding postpetition balance due from the Debtors to such party, the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by the Critical Vendors Motion to such outstanding postpetition balance and such supplier or vendor will be required to repay to the Debtors such paid amounts that exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise; *provided, that,* (x) prior to exercising any remedies set forth in this Paragraph, the Debtors shall provide the applicable party with notice of their intent to exercise such remedies and a copy of this Final Order attached thereto (collectively, the "**Notice of Intent**"), and the applicable party shall have fourteen (14) days from delivery of such Notice of Intent to file an objection with the Court and serve it on the Debtors and (y) if such party files and serves such objection, the Debtors shall not exercise any remedies set forth in this paragraph pending further order of the Court or agreement of the parties. The Debtors shall provide a copy of this Final Order to the applicable party prior to such party's acceptance of any payment hereunder.

8.      The Debtors shall maintain a matrix summarizing (a) the name of each Critical Vendor paid on account of Critical Vendor Claims, (b) the amount paid to each Critical Vendor, and (c) the goods or services provided by such Critical Vendor.  The matrix will be provided weekly to counsel for the DIP Lender (as defined in the DIP Order) in each week in which payments are made pursuant to the terms of this Final Order.

9.      Nothing herein shall impair or prejudice the Debtors' ability to contest, in their discretion, the extent, perfection, priority, validity, or amounts of any claims held by any Critical Vendor.  The Debtors do not concede that any claims satisfied pursuant to this Final Order are valid, and the Debtors expressly reserve all rights to contest the extent, validity, or perfection or seek the avoidance of all such liens or the priority of such claims.

10.      Notwithstanding anything to the contrary in this Final Order, any payment made, or authorization contained hereunder shall be subject to the requirements imposed on the Debtors under any order of this Court approving the debtor-in-possession financing facility and use of cash collateral (the "**DIP Order**") and any budget in connection therewith then in effect. In the event of any inconsistency between the terms of this Final Order and the DIP Order, the terms of the DIP Order shall govern.

11.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Final Order or the Critical Vendors Motion; (e) a request or authorization to assume any

prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (f) a waiver of the Debtors' rights under the Bankrupt Code or any other applicable 1 aw.

12.     The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

13.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Critical Vendor Claims.

14.     Notice of the Critical Vendors Motion as provided therein shall be deemed good and sufficient notice of such Critical Vendors Motion and the requirements of Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules are satisfied by such notice.

15.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

16.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Critical Vendors Motion.

17.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

**Exhibit C**

**(Critical Vendors)**

## Exhibit C

| Vendor Name | Owed |
|---|---|
| American Express | $ 320,000.00 |
| Allstate Fire & Security | $ 27,458.84 |
| Penn Detroit Diesel | $ 16,625.95 |
| Sysco Foods | $ 161,032.29 |
| Instantwhip | $ 35,553.24 |
| Bimbo | $ 3,180.14 |
| Midstate Bakery | $ 8,004.82 |
| Spectrum | $ 4,546.89 |
| Time Warner | $ 6,620.83 |
| Mantis Medical | $ 9,879.25 |
| O'Connor Mechanical | $ 9,013.15 |
| Point Click Care | $ 42,055.04 |
| Maxim Staffing | $ 92,307.17 |
| Two Magnets Staffing | $ 35,542.00 |
| Associated Clinical Labs | $ 4,664.49 |
| Optima Healthcare Solutions | $ 7,970.14 |
| Allscripts Healthcare, LLC | $ 1,039.73 |
| | $ 785,493.97 |

**Exhibit D**

**(Form or Trade Agreement)**

**THIS TRADE AGREEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN. ACCEPTANCE OR REJECTION OF A CHAPTER 11 PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT FOR ANY SUCH CHAPTER 11 PLAN. THE INFORMATION IN THIS TRADE AGREEMENT STATEMENT IS SUBJECT TO CHANGE. THIS TRADE AGREEMENT STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

## TRADE AGREEMENT

**[APPLICABLE DEBTOR]** (the "Company"), on the one hand, and **[SUPPLIER]** ("Supplier"), on the other hand, hereby enter into the following trade agreement (this "Trade Agreement") dated as of **[DATE],**

### Recitals

WHEREAS on September 10, 2019 (the "Petition Date"), the Company and its affiliates and related entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

WHEREAS on **[DATE],** the Court entered its *Final Order Authorizing Debtors to Pay Certain Prepetition Claims of Critical Vendors* (the "Critical Trade Order") [Docket No. •] authorizing the Debtors on a final basis, under certain conditions, to pay the prepetition claims of certain suppliers, including Supplier, subject to the terms and conditions set forth therein.[1]

WHEREAS prior to the Petition Date, Supplier delivered goods to the Company, and the Company paid Supplier for such goods, according to Customary Trade Terms (as defined herein).

WHEREAS the Company and Supplier (each a "Party," and collectively, the "Parties") agree to the following terms as a condition of payment on account of certain pre-petition claims Supplier may hold against the Company.

### Agreement

1.    Recitals. The foregoing recitals are incorporated herein by reference as if set forth at length herein.

2.    Supplier Payment. Supplier represents and agrees that, after due investigation, the sum of all amounts currently due and owing by the Company to Supplier is $[•] (the "Agreed Supplier Claim"). Following execution of this Trade Agreement, the Company shall, in full and final satisfaction of the Agreed Supplier Claim:

      a.    Pay Supplier $[•] on account of its prepetition claim (the "Supplier Payment") (without interest, penalties, or other charges), as such invoices become due and payable; or

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Critical Trade Order.

   b. Pay the Supplier Payment (with interest, penalties, or other charges) on the date which is the later of 30 days after the effective date of a chapter 11 plan and when the invoices become payable in ordinary course.

  3. Agreement to Supply.

   a. Supplier shall supply goods to the Company for the duration of the Debtors' chapter 11 cases based on the following "<u>Customary Trade Terms</u>": the trade terms at least as favorable to the Company as those practices and programs (including credit limits, pricing, cash discounts, timing of payments, allowances, product mix, availability, and other programs) in place in the 120 days prior to the Petition Date.

   b. Supplier shall continue all shipments of goods in the ordinary course and shall fill orders for goods requested by the Company in the ordinary course of business for the duration of the Debtors' chapter 11 cases pursuant to the Customary Trade Terms.

   c. The Customary Trade Terms may not be modified, adjusted, or reduced in a manner adverse to the Company except as agreed-to in writing by the Parties.

  4. Other Matters.

   a. Supplier agrees that it shall not require a lump-sum payment upon the effective date of a plan in the Company's chapter 11 cases on account of any outstanding administrative claims Supplier may assert arising from the delivery of postpetition goods or services, to the extent that payment of such claims is not yet due. Supplier agrees that such claims will be paid in the ordinary course of business after confirmation of a plan pursuant to the Customary Trade Terms then in effect. The Supplier Payment will be made concurrently with payment of other outstanding administrative clams as provided in a confirmed plan.

   b. Supplier will not separately seek payment from the Company on account of any prepetition claim (including, without limitation, any reclamation claim or any claim pursuant to section 503(b)(9) of the Bankruptcy Code) outside the terms of this Trade Agreement or a plan confirmed in the Company's chapter 11 case.

   c. Supplier will not file or otherwise assert against the Company, its assets, or any other person or entity or any of their respective assets or property (real or personal) any lien, regardless of the statute or other legal authority upon which the lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to Supplier by the Company arising from prepetition agreements or transactions. Furthermore, if Supplier has taken steps to file or assert such a lien prior to entering into this Trade Agreement, Supplier will promptly take all necessary actions to remove such liens.

  5. Supplier Breach.

   a. In the event that Supplier fails to satisfy its undisputed obligations arising under this Trade Agreement (a "<u>Supplier Breach</u>"), upon written notice to Supplier, Supplier shall promptly pay to the Company immediately available funds in an amount equal to, at the election of the Company, the Supplier Payment or any portion of the Supplier Payment which cannot be

recovered by the Company from the postpetition receivables then owing to Supplier from the Company.

b.    In the event that the Company recovers the Supplier Payment pursuant to Section 5(a) hereof or otherwise, the full Agreed Supplier Claim shall be reinstated as if the Supplier Payment had not been made.

c.    Supplier agrees and acknowledges that irreparable damage would occur in the event of a Supplier Breach and remedies at law would not be adequate to compensate the Company. Accordingly, Supplier agrees that the Company shall have the right, in addition to any other rights and remedies existing in its favor, to an injunction or injunctions to prevent breaches of the provisions of this Trade Agreement and to enforce its rights and obligations hereunder not only by an action or actions for damages but also by an action or actions for specific performance, injunctive relief and/or other equitable relief. The right to equitable relief, including specific performance or injunctive relief, shall exist notwithstanding, and shall not be limited by, any other provision of this Trade Agreement. Supplier hereby waives any defense that a remedy at law is adequate and any requirement to post bond or other security in connection with actions instituted for injunctive relief, specific performance, or other equitable remedies.

6.    Notice.

If to Supplier:

[■]

If to Company:

[■]

and

Loeb & Loeb LLP
345 Park Avenue
New York, NY 10154
Attn: Daniel B. Besikof
E-Email: dbesikof@loeb.com
Telephone: (212) 407-4000

7.    <u>Representations and Acknowledgements</u>. The Parties agree, acknowledge and represent that:

a.    the Parties have reviewed the terms and provisions of the Critical Trade Order and this Trade Agreement and consent to be bound by such terms and that this Trade Agreement is expressly subject to the procedures approved pursuant to the Critical Trade Order;

b.    any payments made on account of the Agreed Supplier Claim shall be subject to the terms and conditions of the Critical Trade Order;

18140669

c.    if Supplier refuses to supply goods or services to the Company as provided herein or otherwise fails to perform any of its obligations hereunder, the Company may exercise all rights and remedies available under the Critical Trade Order, the Bankruptcy Code, or applicable law; and

d.    in the event of disagreement between the Parties regarding whether a breach has occurred, either Party may apply to the Court for a determination of their relative rights, in which event, no action may be taken by either Party, including, but not limited to, the discontinuing of shipment of goods from Supplier to the Company, until a ruling of the Court is obtained.

8.    <u>Confidentiality</u>. Supplier agrees to hold in confidence and not disclose to any party: (a) this Trade Agreement; (b) any and all payments made by the Company pursuant to this Trade Agreement; (c) the terms of payment set forth herein; and (d) the Customary Trade Terms (collectively, the "<u>Confidential Information</u>"); *provided, that,* if any party seeks to compel Supplier's disclosure of any or all of the Confidential Information, through judicial action or otherwise, or Supplier intends to disclose any or all of the Confidential Information, Supplier shall immediately provide the Company with prompt written notice so that the Company may seek an injunction, protective order or any other available remedy to prevent such disclosure; *provided, further, that,* if such remedy is not obtained, Supplier shall furnish only such information as Supplier is legally required to provide.

9.    Miscellaneous.

a.    The Parties hereby represent and warrant that: (i) they have full authority to execute this Trade Agreement on behalf of the respective Parties; (ii) the respective Parties have full knowledge of, and have consented to, this Trade Agreement; and (iii) they are fully authorized to bind that Party to all of the terms and conditions of this Trade Agreement.

b.    This Trade Agreement sets forth the entire understanding of the Parties regarding the subject matter hereof and supersedes all prior oral or written agreements between them. This Trade Agreement may not be changed, modified, amended or supplemented, except in a writing signed by both Parties. Moreover, Supplier agrees to vote all claims now or hereafter beneficially owned by Supplier in favor of, and not take any direct or indirect action to oppose or impede confirmation of, any chapter 11 plan on a timely basis in accordance with the applicable procedures set forth in any related disclosure statement and accompanying solicitation materials, and timely return a duly-executed ballot to the Debtors in connection therewith, if such chapter 11 plan provides for a treatment of any Agreed Supplier Claim that is materially consistent with this Agreement.

c.    Signatures by facsimile or electronic signatures shall count as original signatures for all purposes.

d.    This Trade Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement.

e.    The Parties hereby submit to the exclusive jurisdiction of the Court to resolve any dispute with respect to or arising from this Trade Agreement.

   f.  This Trade Agreement shall be deemed to have been drafted jointly by the Parties, and any uncertainty or omission shall not be construed as an attribution of drafting by any Party.

*[Signature Page Follows]*

AGREED AND ACCEPTED AS OF THE DATE SET FORTH ABOVE:

**[APPLICABLE DEBTOR]**                    **[SUPPLIER]**

_____          _____
By:                                       By:
Title:                                    Title: