**LOEB & LOEB LLP**
Schuyler G. Carroll
Daniel B. Besikof
Noah Weingarten
345 Park Avenue
New York, NY 10154
Tel: (212) 407-4000
Fax: (212) 407-4990
Email: scarroll@loeb.com
          dbesikof@loeb.com
          nweingarten@loeb.com

*Proposed Counsel to the Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | Chapter 11 |
| | ) | |
| | ) | |
| | ) | Case No. 19-45422 |
| In re: | ) | Case No. 19-45423 |
| | ) | Case No. 19-45424 |
| Absolut Facilities Management, LLC, *et al.* | ) | Case No. 19-45425 |
| | ) | Case No. 19-45426 |
| Debtors.[1] | ) | Case No. 19-45427 |
| | ) | Case No. 19-45428 |
| | ) | Case No. 19-45429 |
| | ) | |
| | ) | (Joint Administration Requested) |

## DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING, BUT NOT DIRECTING, DEBTORS TO (A) PAY AND HONOR PREPETITION EMPLOYEE OBLIGATIONS, AND (B) MAINTAIN AND CONTINUE CERTAIN COMPENSATION AND BENEFIT PROGRAMS POSTPETITION; AND (II) GRANTING RELATED RELIEF

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

By this Motion (this "**Motion**"), the above-captioned debtors (the "**Debtors**"), as debtors and debtors-in-possession herein, request the entry of an order, substantially in the form attached hereto (the "**Proposed Order**"), authorizing, but not directing, the Debtors, in accordance with their past and current employment policies and practices, to:  (a) honor any prepetition and ongoing obligations on account of accrued wages, salaries, and other compensation such as bonuses (collectively, the "**Employee Compensation**") in the ordinary course of business; (b) honor any prepetition and ongoing obligations on account of certain vacation and paid time off policies, employee benefit plans, and severance (collectively, the "**Employee Benefits**") in the ordinary course of business; (c) reimburse Employees (defined below) for prepetition expenses incurred on behalf of the Debtors in the ordinary course of business, (the "**Reimbursable Expenses**"); (d) pay all related prepetition payroll taxes and other deductions (the "**Withholding Obligations**"); (e) pay, to the extent that any of the foregoing programs is administered, brokered, insured, or paid through a third party administrator or provider (an "**Administrator**"), any prepetition claims of such Administrator in the ordinary course of business (the "**Administration Fees**") (f) pay all Union Obligations (defined below) ((a) through (f), collectively, the "**Prepetition Employee Obligations**"); and (g) maintain and continue prepetition compensation and benefit programs postpetition.  In addition, the Debtors request that the Court authorize banks and other financial institutions (collectively, the "**Banks**") to honor and process all checks and electronic transfer requests related to all of the foregoing.  In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On September 10, 2019 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") commencing the above-captioned cases (the "**Chapter 11 Cases**").   The Debtors continue to manage and operate their business as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.  Concurrently with the filing of this Motion, the Debtors have requested procedural consolidation and joint administration of the Chapter 11 Cases.

3.      An official committee of unsecured creditors has yet to be appointed in these Chapter 11 Cases.  As of the date of the filing of this Motion, no request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

4.      A detailed description of the Debtors and their business, the facts and circumstances leading up to the filing of the Debtors' Chapter 11 Cases, and the facts supporting this Motion are set forth in greater detail in the *Declaration of Michael Wise in Support of Debtors' Chapter 11 Petitions and First-Day Motions* (the "**First Day Declaration**"), which is being filed concurrently herewith and is incorporated by reference in this Motion.

5.      The Debtors' workforce is comprised of full-time employees ("**Full-Time Employees**") and part-time employees ("**Part-Time Employees**" and, together with the Full-Time Employees, the "**Employees**").    As of the Petition Date, the Debtors have approximately 975 Employees, consisting of 627 Full-Time Employees and 348 Part-Time Employees.  Of the Debtors' 975 Employees, approximately 539 are members of unions (the "**Union Employees**"), covered by several collective bargaining agreements (the "**CBAs**").

## RELIEF REQUESTED

6.      By this Motion, the Debtors request entry of the Interim Order and the Final Order, substantially in the forms attached hereto authorizing, but not directing, the Debtors to:

(a) pay the Prepetition Employee Obligations in an aggregate amount not to exceed $3,600,719 (the "**Interim Amount**") during the period between the Petition Date and the entry of the Final Order (the "**Interim Period**") and all Prepetition Employee Obligations after a hearing (the "**Final Hearing**") scheduled as soon as practicable after the 21st day following the entry of the Interim Order to consider approval of the relief requested in the Motion on a final basis, provided, that no Employee will be paid an amount exceeding the statutory cap of $13,650 in section 507(a)(4) of the Bankruptcy Code on account of any prepetition claim for Employee Compensation or Employee Benefits, and (b) maintain and continue prepetition compensation and benefit programs postpetition.

7.     The following chart illustrates the Prepetition Employee Obligations sought to be paid by this Motion:

| **Prepetition Employee Obligations** | **Estimated Interim Amount** | **Estimated Amount Paid Per Month** |
|---|---|---|
| Employee Compensation | $1,152,329 | $2,990,000 |
| Employee Benefits | $1,335,721[2] | $219,997 |
| Reimbursable Expenses | $434 | $7,263 |
| Withholding Obligations | $435,394 – FICA<br>$466,301 – FIT<br>$233,203 – NYS | $218,473 – FICA<br>$233,928 – FIT<br>$116,993 – NYS |
| Union Obligations | $81,095 | $40,547 |
| Administration Fees | $0 | $156 |
| **TOTAL** | **$3,704,477** | **$3,827,305** |

8.     The Employees are the key to the Debtors' ability to provide best-in-class care to their patients.  Their skills, knowledge and understanding of the Debtors' operations and of the

---

[2] As set forth below, a substantial portion of this amount is for accrued but unpaid vacation, which will not actually be paid out to any Employee unless such Employee leaves the Debtors' employ in a qualifying manner. The Debtors expect that paid vacation time will, in fact, be de minimis.

needs of the Debtors' patients are essential to preserving operational stablishing and efficiency and to the continued provision of top-flight care to the Debtors' patients.  In many instances, the Employees include highly trained personnel who are not easily replaced.  Without the continued, uninterrupted services of the Employees, the Debtors' restructuring efforts will be halted. Further, replacing Employees can be difficult for the Debtors given the limited number of individuals in their industry with the breadth of skills and experience required to successfully care for the Debtors' patients, particularly in the geographic region where the Debtors operate. Even outside of bankruptcy, the market for capable, experienced employees such as the Employees is very tight.

9.      If the Debtors cannot assure their Employees that they will promptly pay Prepetition Employee Obligations to the extent allowed under the Bankruptcy Code, and will continue to honor Employee Benefits, certain Employees will likely seek employment elsewhere. The loss of Employees at this critical juncture would have a material adverse impact on the Debtors' business and ability to maximize value through these chapter 11 cases.

10.      Moreover, the vast majority of Employees rely exclusively on their compensation and benefits to pay their daily living expenses and support their families.  Thus, Employees will be exposed to significant financial hardships if the Debtors are not permitted to continue paying their compensation, providing benefits, and maintaining existing programs.  The Debtors cannot risk the substantial damage to their business that would certainly occur if there were a delay in or failure to pay the Prepetition Employee Obligations or if they were unable to maintain and continue existing compensation and benefit programs postpetition.  Consequently, the relief requested is necessary and appropriate.

## PREPETITION EMPLOYEE OBLIGATIONS

### A.    Employee Compensation

### (i)    Wages and Salaries

11.    Employee Compensation is comprised of wages and salaries ("**Wages and Salaries**").  The Debtors spent approximately $35,880,000 on payroll for its Employees in 2018, which amounts to an average of approximately $2,990,000 per month.  Going forward, the Debtors' expect their estimated average payroll will continue to be approximately $2,990,000 per month.

12.    In the ordinary course of business, the Debtors incur payroll obligations for Wages and Salaries.[3]  All Employees are paid weekly, and the Debtors make payroll to Employees in arrears, such that each payroll covers approximately one week prior to the payroll date.  The Debtors' last payroll was paid on September 6 2019 on account of services performed and wages earned from August 25, 2019 through and including August 31, 2019.

13.    Because Employees are paid in arrears, Employees are owed accrued but unpaid Wages and Salaries as of the Petition Date.  As of the Petition Date, the Debtors estimate that they owe approximately $992,857 on account of Wages and Salaries for prepetition services, all of which will become due within twenty-one (21) days of the Petition Date.  To the best of the Debtors' understanding, none of the Debtors' Employees is owed more than $13,650 in accrued and unpaid general prepetition wages or salaries. To the extent that any Employee is owed more

---

[3] Wages and Salaries include amounts owing as a result of a settlement or determination with respect to a union grievance, if any.  More specifically, at any particular time, the Debtors may be subject to a number of grievances filed by their Employees through their applicable unions.  Most of the amounts requested in the grievances are in the nature of wages or similar compensation. The Debtors seek authority, but not direction, to pay as part of the Wages and Salaries any amounts owing as a result of a settlement or determination with respect to a union grievance.

than $13,650 and the Debtors seek to pay such greater amount, the Debtors will seek authority to pay such amounts by separate motion.

**(ii)    Incentive Plans**

14.    In the ordinary course of business, the Debtors have also typically maintained performance-based incentive and bonus programs for Employees (the "**Incentive Programs**"). The Debtors offer three types of Incentive Programs.  First, all unionized Employees are eligible to receive "pick-up shift" bonuses, which are paid weekly.  Second, the Employees on the Debtors' admissions team are eligible to receive "admissions performance bonuses" based on individual and team-based metrics, including patient census, which are paid monthly after the close of the prior month.  Finally, five Employees in the Debtors' business office are eligible to receive bonus compensation based on the collection of past-due accounts receivable.

15.    As of the Petition Date, the Debtors estimate that they owe approximately $159,472 to Employees in respect of the Incentive Programs.  For those Employees who receive them, bonuses earned under the Incentive Programs are an important aspect of their overall compensation.  Maintaining historical prepetition practices with regard to the Incentive Programs is essential to ensuring that the Debtors can retain their Employees and maximize value through the duration of these chapter 11 cases.  Therefore, the Debtors seek authority, but not direction, to honor their obligations under the Incentive Programs, up to the aggregate $13,650 cap per Employee, and to maintain the Incentive Programs in the ordinary course of the Debtors' business.

**B.    Employee Benefits**

16.    As part of its Employee Benefits, the Debtors offer their Employees: (a) paid time off, including vacation pay and miscellaneous paid time off; and (b) various standard employee benefits plans and programs, including without limitation, (i) health insurance, (ii) dental

insurance, (iii) workers' compensation insurance, (iv) COBRA coverage, (v) short term disability, and (vi) other miscellaneous benefits (collectively, the "**Benefit Programs**").

    **(i)**    **Paid Time Off**

        **a.**    **Vacation Time**

17.    The Debtors' Employees accrue vacation and personal time off (collectively, "**Vacation Time**"), pursuant to the Debtors' Employee benefit policies (the "**Vacation Time Policies**").  If an Employee resigns, gives proper notice of his or her resignation, and fulfills that notice, the Debtors will pay that Employee on account of accrued, but unused, Vacation Time through the last day of work.

18.    At any point in time, Vacation Time is accruing or being used by Employees, making it difficult to quantify the cost of accrued Vacation Time as of the Petition Date. Nonetheless, the Debtors estimate that they owe approximately $994,830 in the aggregate of accrued and unused Vacation Time as of August 31, 2019.  As noted above, the Debtors do not anticipate having to pay out anything more than a nominal amount of this unpaid Vacation Time, though the precise amount is hard to predict.

19.    By this Motion, the Debtors seek authorization, but not direction, to:  (a) honor, in the ordinary course of business, all unused Vacation Time accrued prior to the Petition Date, but not to make cash payments on account of such accrued but unused Vacation Time, except at separation of employment, as is consistent with prepetition practices, and in no event in excess of the statutory cap of $13,650 per Employee;[4] and (b) continue their Vacation Time Policies on a postpetition basis in the ordinary course of business and consistent with prepetition practices.

---

[4]  To the best of the Debtors' knowledge, approximately 11 Employees have accrued but unused Vacation Time in excess of $13,650.  To the extent the Debtors seek to pay such greater amounts in cash, the Debtors will seek authority to pay such amounts by separate motion.

### b.    Miscellaneous Paid Time Off

20.    Other than Vacation Time, the Debtors offer other types of paid time off to their Employees (the "**Miscellaneous PTO**").  For example, the Debtors offer, among other things, paid sick time, holiday pay, bereavement leave, paid time off for jury duty as well as paid family leave, medical leave and leave under the family medical leave act.  If an Employee is terminated for any reason, the Debtors do not pay that Employee on account of any accrued, but unused, Miscellaneous PTO.

21.    By this Motion, the Debtors seek authorization, but not direction, to continue the Miscellaneous PTO policies and to honor, in the ordinary course of business, all unused Miscellaneous PTO accrued prior to the Petition Date; provided, however, that the Debtors will not make cash payments on account of accrued but unused Miscellaneous PTO, as is consistent with prepetition practices.

### (ii)    Additional Benefit Programs

### a.    Health Insurance

22.    The Debtors offer their full-time and part-time Employees self-funded health plans (the "**Health Plans**") provided by American Plan Administrators (the "**TPA**"), the costs of which are shared by the Debtors and the Employees.  Approximately 309 Employees participate in the Health Plans.  Also participating in the Health Plans are the employees of certain non-Debtor entities ("**Non-Debtor Entities**").  The Without the Health Plans, the Employees would be forced to either forgo health insurance coverage entirely or obtain potentially expensive out-of-pocket insurance coverage, which would likely adversely affect the Employees' morale.

23.    The Debtors' average cost (after taking into account Employee contributions) of maintaining the Health Plans, including administrative costs and premiums, has been approximately $126,630 in the aggregate per month.  As of the Petition Date, however, the TPA

asserts that the Debtors are obligated to pay approximately $790,000 on account of the Health Plans. The Debtors reserve the right to dispute this amounts, but acknowledge that at least $285,000 of this amount is due to the TPA in respect of the Debtors' employee Health Plan Participants. All $285,000 of this amount is due or will become due within twenty-one (21) days of the Petition Date.

24.     By this Motion, the Debtors seek authorization, but not direction, to pay prepetition amounts due on account of the Health Plans, in an aggregate amount not to exceed $285,500 on an interim basis, plus additional amounts determined to be owed to the TPA that are necessary to ensure the provision of medical care to the Debtors' employee participants in the Health Plans in an amount not to exceed $790,000 on a final basis. The Debtors further seek to continue to pay postpetition costs of the Health Plans in the ordinary course of business and consistent with prepetition practices during the pendency of these Chapter 11 Cases

### b.     Dental Insurance

25.     The Debtors offer eligible Employees dental insurance provided by Guardian (the "**Dental Plan**"), the costs of which are paid solely by the participating Employees. Approximately 186 Employees participate in the Dental Plan.

26.     By this Motion, the Debtors seek authorization, but not direction, to continuing offering the Dental Plan.

### c.     Workers' Compensation Insurance

27.     The Debtors provide their Employees with workers' compensation insurance ("**Workers' Compensation**") as required by applicable law, which is provided by American Guarantee and Liability Insurance Company . The average annual cost of maintaining Workers' Compensation, including administrative costs and premiums, is approximately $1,026,954 in the

aggregate per annum.  As of the Petition Date, the Debtors owe $55,391 in deposits associated with their Workers' Compensation obligations.

28.     By this Motion, the Debtors seek authorization, but not direction, to pay prepetition amounts on account of Workers' Compensation, in an aggregate amount not to exceed $55,391 on an interim basis, and to continue to pay postpetition Workers' Compensation costs in the ordinary course of business and consistent with prepetition practices during the pendency of these Chapter 11 Cases.

### d.    COBRA

29.     The Debtors seek to continue to perform any obligations under section 4980B of the Internal Revenue Code (26 U.S.C. § 4980B) to administer continuation health coverage ("**COBRA**") with respect to former Employees and their covered dependents.  As of the Petition Date, the Debtors do not believe that they have any accrued, but unpaid COBRA fees.

30.     By this Motion, the Debtors request authority, but not direction, to continue offering COBRA and paying associated costs or fees, if any, in the ordinary course of business and consistent with prepetition practices during the pendency of these Chapter 11 Cases.

### e.    Severance Obligations

31.     The Debtors maintain certain severance policies and programs for their Employees in the ordinary course of business (collectively, the "**Severance Program**").  The Severance Program provides that terminated Employees are entitled to a certain amount of severance pay, including but not limited to, wages based on the Employee's year(s) of service with the Debtors and, if applicable, a continuation of medical benefits (COBRA) for no longer than four (4) months following their last date of service with the Debtors.

32.     Obligations under the Severance Program will only be available to Employees who remain with and assist the Debtors in ongoing operations during the pendency of these Chapter 11 Cases.

33.     By this Motion, and to maintain employee morale and goodwill, the Debtors are seeking authority, but not direction, to continue to honor the Severance Program obligations that may come due in the ordinary course of business for non-insider Employees, not to exceed the statutory cap, as those policies may be modified, supplemented, and amended in the ordinary course of business and consistent with the prepetition practices during the pendency of these Chapter 11 Cases.

### f.     401(k) Plan.

34.     The Debtors maintain the Absolut Retirement Savings Plan, a 401(k) plan for the benefit of the Debtors' Employees (the "**401(k) Plan**").  The 401(k) Plan provides for automatic pre-tax deductions of eligible compensation up to the limits set by the Internal Revenue Code. Approximately 424 current Employees participate in the 401(k) Plan, and the approximate amount withheld from the Employees' paychecks per payroll period is $12,800. The Debtors pay no matching amounts into the 401(k) Plan.  There are no costs to the Debtors of maintaining and administering the 401(k) Plan except for professional fees to conduct an annual audit of the plan.

35.     The Debtors request authority, but not direction, to continue the 401(k) Plan in the ordinary course of business, to continue to forward amounts deducted from Employees' wages to the 401(k) Plan and to pay any prepetition amounts owed thereunder or related thereto.

### g.     Flexible Spending Account.

36.     The Debtors maintain flexible spending accounts for the benefit of their Employees to allow the Employees to set aside money to pay for medical expenses and dependent care with pre-tax dollars (together, the "**Flexible Spending Plans**").  Each employee

who is eligible and chooses to participate may set aside up to $2,600 per year for medical expenses and up to $5,000 per year for dependent care expenses. The contributions are spread evenly over the entire year and are automatically deducted from the Employees' pay. Approximately 34 Employees participate in the Flexible Spending Plans and the approximate monthly amount withheld from the Employees' paychecks is $3,332. The annual cost to the Debtors of maintaining the Flexible Spending Plans is approximately $1,877.

37.     By this Motion, the Debtors seek authority, but not direction, to (a) continue the Flexible Spending Plans for their Employees in the ordinary course of business, (b) continue making the above-described payroll deductions and contributions and (c) pay any amounts related thereto, including any fees owed or others and claim amounts, to the extent that they remain unpaid on the Petition Date.

### h.     Income Protection Plans.

38.     The Debtors maintain certain Income Protection Plans including life insurance and accidental death or dismemberment insurance ("**Life Insurance Plans**") through Unum. Approximately 85 Employees are enrolled in the Life Insurance Plans.  Three of the Debtors' facilities – Aurora Park, Three Rivers and Westfield – have a closed, grandfathered Employee paid life insurance policy in which 5 Employees participate (the "**Employee Paid Plans**").  The Employees are responsible for payment of the premiums relating to the Employee Paid Plans. The Debtors also maintain for 80 Employees at the Aurora Park, Orchard Park, Orchard Brooke and Gasport facilities employer paid life insurance through Unum (the "**Employer Paid Plans**"). The Debtors' incur approximately $361.60 per month in respect of the Employer Paid Plans.  As of the Petition Date, the Debtors had no outstanding obligations in respect of the Life Insurance Plans.

39.     Additionally, as part of the Income Protection Plans, the Debtors also offer their full-time and part-time Employees voluntary short term disability, universal life, accident, hospital indemnity, whole life, term life and cancer and specified diseases insurance (the "**Additional Insurance Plans**") provided by Colonial Life.  With the exception of disability insurance, the Employees are responsible for payment of the premiums relating to the Additional Insurance Plans.  As of the Petition Date, the Debtors had no obligations in respect of the Additional Insurance Plans, except for $146.32 in respect of the disability insurance.

40.     By this Motion, the Debtors seek authority, but not direction, to (a) continue the Life Insurance Plans and the Additional Insurance Plans in the ordinary course of business, (b) continue making the above-described payroll deductions and contributions and (c) pay any amounts related thereto, including any amounts owed that remain unpaid on the Petition Date.

### i.     Educational Assistance.

41.     The Debtors also provide educational assistance to non-unionized full-time Employees, up to $335/quarter, $500/semester and $1,000/year, with a lifetime maximum of $5,000 (the "**Educational Assistance**").  The Debtors do not currently incur any costs in connection with the Educational Assistance.  As of the Petition Date, the Debtors owed no amounts in respect of the Educational Assistance.

42.     By this Motion, the Debtors seek authority, but not direction, to (a) continue the Educational Assistance in the ordinary course of business and (b) pay any amounts related thereto, including any amounts owed that remain unpaid on the Petition Date.

### C.     Union Obligations

43.     The Debtors provide Union Employees, in the ordinary course of business, with certain benefits through union plans funded by the Debtors' contributions, which are required under the CBAs.  Specifically, the Debtors contribute to pension funds under the CBAs, which

contributions are due on the 15th day of each month (the "**Pension Fund Obligations**").  The amount of the Pension Fund Obligations depends on the number of hours work and the rate of pension (due to the Employee's work anniversary date).  On average, however, the Debtors spend approximately $25,405 per month on the Pension Fund Obligations.  The Debtors also contribute .5% of gross payroll to an education fund, which contribution is due by the 10th day of each month (the "**Education Fund Obligations**" and together with the Pension Fund Obligations, the "**Union Obligations**").  On average, the Debtors incur $7,327 per month in Education Fund Obligations.

44.    As of the Petition Date, the Debtors are obligated in respect of the Union Obligations in the aggregate amount of $81,095.  The Debtors seek authority to pay that amount and to continue paying the Union Obligations in the ordinary course of business.

**D.    Reimbursable Expenses**

45.    Prior to the Petition Date, the Debtors routinely reimbursed the Employees for Reimbursable Expenses incurred on behalf of the Debtors during the scope of their employment.  The Reimbursable Expenses are incurred in the ordinary course of the Debtors' business operations and include, without limitation**,** business related travel expenses, business meals, relocation allowances, tuition reimbursement, car rentals, mileage reimbursement.  Employees receive reimbursement in one of two ways.

46.    *First*, they can submit expense reports and paper receipts and receive reimbursement for approved expenses in accordance with the Debtors' internal policies, which includes approval of all Reimbursable Expenses by a member of management.  Although it is the Debtors' policy to submit reimbursement requests promptly, submission delays do occur.  Accordingly, Employees may submit reimbursement requests for prepetition expenses after the Petition Date.  Reimbursable Expenses are incurred by Employees with the understanding that

they will be reimbursed by the Debtor.  Without continued reimbursement of the Reimbursable Expenses, Employees relying on these benefits would be saddled with additional costs, potentially causing personal financial hardship.

47.      Historically, the Debtors pay approximately $3,500 in the aggregate on account of Reimbursable Expenses each month.  As of the Petition Date, the Debtors estimate that they owe approximately $434.21 in Reimbursable Expenses, all of which will become due within twenty-one (21) days of the Petition Date.  Absent authority to pay the Reimbursable Expenses incurred prepetition, the Employees could be obligated to pay such amounts out of their personal funds. The Debtors therefore seek authority to pay all outstanding prepetition Reimbursable Expenses, in an aggregate amount not to exceed $500, on an interim basis upon entry of the Interim Order, and to continue the foregoing policy in the ordinary course of business and consistent with prepetition practices during the pendency of these Chapter 11 Cases.

48.      *Second*, certain of the Debtors' Employees can charge expenses to corporate credit cards.   Specifically, the Debtors are a party to a corporate credit card program (the "**Corporate Credit Card Program**") with American Express.  As of the Petition Date, the Debtors estimate that they owe approximately $3,763 under the Corporate Credit Card Program for Reimbursable Expenses.  The Debtors request authority to continue the Corporate Credit Card Program and to pay amounts due thereunder as of the Petition Date in the ordinary course of business.

E.       **Withholding Obligations**

49.      The Debtors routinely deduct certain amounts from Employees' compensation that represent various Withholding Obligations, including for example, various federal, state and local income, Federal Insurance Contribution Act ("**FICA**"), unemployment and disability taxes and fees, union dues, insurance premiums, FSA withholdings and other taxes, garnishments,

child support, service charges, and similar deductions (collectively, the "**Employee Withholdings**"). The amount deducted and remitted by the Debtors with respect to Employee Withholdings averages approximately $135,005 per week in the aggregate. Approximately $1,134,898 of deductions have accrued prepetition but have not yet been remitted to various third parties. All of the amounts relating to the Employee Withholdings will become due within twenty-one (21) days of the Petition Date.

50.    The Debtors seek authority to deduct and remit accrued but unfunded Employee Withholdings, in an aggregate amount not to exceed $794,429, on an interim basis. The Debtors also seek authority to continue to deduct and remit Employee Withholdings in the ordinary course of business and consistent with prepetition practices during the pendency of these Chapter 11 Cases.

## DIRECTION TO BANKS

51.    By this Motion, the Debtors seek an order authorizing the Banks to receive, process, honor, and pay all of the Debtors' prepetition checks and fund transfers on account of any Prepetition Employee Obligations, including all checks issued with regard to Employee Benefits, and prohibiting the Banks from placing any holds on, or attempting to reverse, any automatic transfers to any account of an Employee or other party for Prepetition Employee Obligations. The Debtors also seek an order authorizing them to issue new postpetition checks or effect new postpetition fund transfers on account of the Prepetition Employee Obligations to replace any prepetition checks or fund transfer requests that may have been dishonored or rejected.

## BASIS FOR RELIEF REQUESTED

**A.     Certain of the Proposed Payments are Afforded Priority Under Section 507(a) of the Bankruptcy Code**

52.     Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code require that certain claims for prepetition wages, salaries, severance, and employee benefit contributions be afforded priority in payment in an amount up to $13,650 for each Employee.  To confirm a chapter 11 plan, the Debtors must provide for payment of the priority claims in full, ahead of any payments to general unsecured creditors.  *See* 11 U.S.C. § 1129(a)(9)(B).  Thus, granting the Debtors the authority to pay amounts up to the statutory cap of $13,650 affects only the timing of payments and not the recoveries for general unsecured creditors.

**B.     The Proposed Payments Are Appropriate Under Sections 105(a), 363, 1107(a), and 1108 of the Bankruptcy Code**

53.     The Court may grant the relief requested herein pursuant to section 363 of the Bankruptcy Code.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims where a sound business purpose exists for doing so.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that there must be a sound business justification to justify payment of prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 of the Bankruptcy Code to allow contractor to pay prepetition claims of suppliers).

54.     In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the

Bankruptcy Code. Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to act as a fiduciary to "'protect and preserve the estate, including an operating business' going-concern value,'" on behalf of the debtor's creditors and other parties in interest. *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); *see also Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232–33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee."). Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a); *see Ionosphere Clubs*, 98 B.R. at 175 (applying section 105(a) to justify an order authorizing the payment of certain pre-petition wages, salaries, medical benefits, and business expense claims to debtor's employees); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims).

55.    Courts in this Circuit and others have approved relief similar to the relief requested in this Motion. *See, e.g.*, *In re Aegerion Pharm., Inc.*, *et al.*, Case No. 19-11632, Docket No. 48 (Bankr. S.D.N.Y. May 24, 2019) (approving payment of employee compensation and benefits on an interim basis); *In re Glansaol Holdings, Inc.*, Case No. 18-14102 (MEW), Docket No. 25 (Bankr. S.D.N.Y Dec. 21, 2018) (same); *In re Sears Holdings Corp.*, *et al.*, Case No. 18-23538 (RDD), Docket No. 114 (Bankr. S.D.N.Y. Oct. 16, 2018) (same); *In re Cenveo, Inc.*, Case No. 18-22178 (RDD), Docket No. 42 (Bankr. S.D.N.Y. Feb. 2, 2018) (same); *In re*

*21st Century Oncology Holdings, Inc.*, *et al.*, Case No. 17-22770 (RDD), Docket No. 40 (Bankr. S.D.N.Y. May 26, 2017) (same).

56.     As discussed above, the Debtors have a fiduciary duty to continue to operate the business as a going concern.  Fulfilling this duty requires the Debtors pay their employees on account of the Prepetition Employee Obligations.  Failure to do so will adversely impact the Debtors' relationships with its workforce and could irreparably harm morale, dedication, confidence, and cooperation.  In the event that failure to pay led to any significant employee departures, stability of the Debtors' workforce would be jeopardized, which would additionally pose substantial risk to the Debtors' continued operations.

57.     For the reasons set forth herein, and in light of the critical need for the Debtors to preserve the value of their estate, authorizing the Debtors to pay the Prepetition Employee Obligations as requested herein is proper in accordance with sections 105, 363, 1107 and 1108 of the Bankruptcy Code.  *See, e.g.*, *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid") (citation omitted).  Accordingly, the Court should grant the relief requested.

## C.     Certain of the Payments Represent Trust Fund Payments and Are Appropriate Under Section 541 of the Bankruptcy Code

58.     Certain of the Employee Withholdings are held in trust for the benefit of the payees, and thus, do not constitute property of the Debtors' estate under section 541 of the Bankruptcy Code.  *See Begier v. IRS*, 496 U.S. 53, 58–59 (1990); *see also* 11 U.S.C. § 541(d); *In*

*re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993) (concluding that property that a debtor holds in trust for another—either express or constructive—does not become property of the estate when the debtor files for bankruptcy, and stating that "Congress clearly intended the exclusion by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust[]"); *EBS Pension L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.)*, 243 B.R. 231, 235 (Bankr. D. Del. 2000) (same) (citing *Columbia Gas Sys.*, 997 F.2d at 1059).

59.    The 2005 amendments to the Bankruptcy Code amended section 541(b) to explicitly remove from property of the estate "any amount withheld by an employer from the wages of employees for payment as contributions" to certain ERISA qualified, tax-deferred annuities and health insurance plans.  *See* 11 U.S.C. § 541(b)(7)(A).  Out of an abundance of caution, the Debtors seek authority, but not direction, to make these payments to the appropriate payees, as necessary and in the ordinary course of business, on a postpetition basis under sections 541(b)(7)(A) and 541(d) of the Bankruptcy Code.

**D.    Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Transfer Requests**

60.    To facilitate the implementation of the above-requested relief, the Debtors further request that the Court authorize all Banks to receive, process, honor, and pay any and all checks drawn on, or electronic transfer requests from, the Debtors' accounts, whether such checks or requests are presented or submitted prior to or after the Petition Date, to the extent such checks or requests are expressly identified by the Debtors as related directly to the payment of the Prepetition Employee Obligations, including all checks issued with regard to Employee Benefits, or to the continuance of certain programs in the ordinary course of business and on a postpetition basis.

## RESERVATION OF RIGHTS

61.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors and their estates, a waiver of the rights of the Debtors and their estates to dispute any claim, or an approval or assumption of any agreement or contract under section 365 of the Bankruptcy Code.  The Debtors and their estates expressly reserve the rights to dispute any claim asserted by an Employee under applicable bankruptcy and non-bankruptcy law.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the rights of the Debtors and their estates to dispute such claim subsequently.

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED

62.     Bankruptcy Rule 6003 provides that, to the extent that relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the Petition Date.  Fed. R. Bankr. P. 6003.  As described in the First Day Declaration, the Debtors would suffer immediate and irreparable harm if the relief sought herein is not promptly granted.  Accordingly, the Debtors have satisfied the requirements of Bankruptcy Rule 6003.

## REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

63.     The Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and a waiver of the 14-day stay of an order authorizing the use, sale, or lease of property pursuant to Bankruptcy Rule 6004(h).  Pursuant to Bankruptcy Rule 6004(a), certain interested parties must receive 21 days' notice by mail of the "proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens

the time or directs another method of giving notice." Fed. R. Bankr. P. 2002(a)(2). Pursuant to

Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than

cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court

orders otherwise." Fed. R. Bankr. P. 6004(h). As explained above and in the First Day

Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to

the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements

under Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), to the

extent such stay applies.

## **<u>NO PREVIOUS REQUEST</u>**

64.    No previous request for the relief sought herein has been made by the Debtors to

this or any other Court.

## **<u>NOTICE</u>**

65.    Notice of this Motion has been provided to: (i) the Office of the United States

Trustee; (ii) the Debtors' secured creditors; (iii) any party whose interests are directly affected by

this specific pleading; (iv) those persons who have formally appeared and requested notice and

service in these proceedings pursuant to Bankruptcy Rules 2002 and 3017; (v) counsel for the

proposed DIP Lender; (vi) the consolidated 30 largest unsecured creditors of the Debtors; and

(vii) all governmental agencies having a regulatory or statutory interest in these cases. No other

or further notice need be provided.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order

and Final Order, granting the relief requested herein and such other relief as the Court deems

appropriate under the circumstances.

Dated:    September 10, 2019            LOEB & LOEB LLP
          New York, New York

                                      */s/ Schuyler G. Carroll*

                                      Schuyler G. Carroll
                                      Daniel B. Besikof
                                      Noah Weingarten
                                      345 Park Avenue
                                      New York, NY 10154
                                      Tel: (212) 407-4000
                                      Fax: (212) 407-4990
                                      scarroll@loeb.com
                                      dbesikof@loeb.com
                                      nweingarten@loeb.com

                                      *Proposed Counsel to the Debtors*
                                      *and Debtors-in-Possession*

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ) | Chapter 11 |
| ) | |
| ) | Case No. 19-45422 |
| ) | Case No. 19-45423 |
| In re: ) | Case No. 19-45424 |
| ) | Case No. 19-45425 |
| Absolut Facilities Management, LLC, *et al.* ) | Case No. 19-45426 |
| ) | Case No. 19-45427 |
| Debtors.[1] ) | Case No. 19-45428 |
| ) | Case No. 19-45429 |
| ) | |
| ) | (Jointly Administered) |
| ) | |

### INTERIM ORDER (I) AUTHORIZING, BUT NOT DIRECTING, DEBTORS TO (A) PAY AND HONOR PREPETITION EMPLOYEE OBLIGATIONS AND (B) MAINTAIN AND CONTINUE CERTAIN COMPENSATION AND BENEFIT PROGRAMS POSTPETITION; AND (II) GRANTING RELATED RELIEF

On September ___, 2019, the Court conducted a hearing to consider the Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing, but Not Directing, Debtors to (A) Pay and Honor Prepetition Employee Obligations, and (B) Maintain and Continue Certain Compensation and Benefit Programs Postpetition; and (II) Granting Related Relief (the "**Employee Wage Motion**")[2] filed by the above-captioned debtors (the "**Debtors**"). The Court finds that: (i) it has jurisdiction over the matters raised in the Employee Wage Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii)

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2] Capitalized terms used but not defined shall have the meaning ascribed to them in the Employee Wage Motion.

the relief requested in the Employee Wage Motion is in the best interests of the Debtors, their estates, and their creditors; (iv) proper and adequate notice of the Employee Wage Motion has been given and no other or further notice is necessary; and (v) upon the record herein after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

Therefore, IT IS HEREBY ORDERED THAT:

1.        The Employee Wage Motion is GRANTED on an interim basis.

2.        Pursuant to sections 105(a), 363(b), 507(a)(4), 507(a)(5), 541, 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003, the Debtors are authorized, but not directed, to: (a) pay and/or honor, in their sole discretion, all Prepetition Employee Obligations; provided, however, that prior to the entry of an order following the hearing to consider the relief requested in the Motion on a final basis (the "**Final Hearing**"), such payments shall not exceed $3,704,477 unless otherwise ordered by the Court; and (b) maintain and continue to honor certain obligations, practices, programs, and policies for the Employees as they were in effect as of the Petition Date as the same may be modified, amended, or supplemented from time to time in the ordinary course of business; provided, however, that no single individual shall be paid on account of any prepetition claim for wages, benefits, or other compensation over the statutory cap of $13,650 provided for under sections 507(a)(4) and (5) of the Bankruptcy Code, absent further order of the Court.

3.        Nothing herein shall be deemed to authorize the payment of any amounts in satisfaction of bonus or severance obligations to insiders that are subject to section 503(c) of the Bankruptcy Code.

4.        The Debtors are authorized, in their sole discretion, to pay all outstanding

prepetition Reimbursable Expenses, including, without limitation all amounts due as of the Petition Date under the Corporate Credit Card Program.

5.      The Debtors are authorized, in their sole discretion, to pay all outstanding prepetition Pension Fund Obligations and Education Fund Obligations.

6.      The Debtors and any applicable third parties are authorized to continue to allocate and distribute Employee Withholdings to the appropriate taxing authorities or third-party recipients in accordance with the Debtors' stated policies and prepetition practices.

7.      The Banks are authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks drawn on, or electronic transfer requests from, the Debtors' accounts, whether such checks or requests are presented or submitted prior to or after the Petition Date, to the extent such checks or requests are expressly identified by the Debtors as related directly to the payment of Prepetition Employee Obligations, provided that sufficient funds are available in the applicable bank accounts to make such payments.

8.      The Banks may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations.

9.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a result of the filing of these Chapter 11 Cases with respect to prepetition amounts owed in connection with any Prepetition Employee Obligations.

10.     Subject to the applicable provisions of the Bankruptcy Code, the Debtors are authorized to modify, change, and discontinue any of the policies, plans, programs, practices, and

procedures associated with the Employees and/or to implement new plans, policies, practices and procedures related thereto in the ordinary course of business during these Chapter 11 Cases, in their sole discretion and without the need for further Court approval; provided, however, that the Debtors shall give notice to beneficiaries of such policies, plans, programs, practices, and procedures.

11.    A final hearing to consider the relief requested in the Motion shall be held on _____, 2019 at _____ (Eastern Time) and any objections or responses to the Motion shall be filed and served so as to be actually received on or prior to _____ __, 2019 at 4:00 p.m. (Eastern Time), and served on the following parties: (a) proposed counsel to the Debtors, Loeb & Loeb LLP, 345 Park Avenue, New York, New York 10154, Attn:    Schuyler G. Carroll (scarroll@loeb.com); (b) the U.S. Trustee for the Eastern District of New York; and, if applicable, (c) counsel to any statutory committees appointed in these Chapter 11 Cases.

12.    Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission regarding the validity or amount of any claim against the Debtor; (b) a waiver of the Debtors' rights to subsequently dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (e) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (f) to grant third-party beneficiary status or bestow any additional rights on any third party; or (g) to be otherwise enforceable by any third party.

13.    Notwithstanding the relief granted herein or any action taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any Employee, or any other person or entity.

14.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

15.     The notice of the relief requested in the Motion satisfies Bankruptcy Rule 6004(a) and, pursuant to Bankruptcy Rule 6004(h), the terms and provisions of this Order shall be immediately effective and enforceable upon its entry.

16.     The Debtors are authorized to take all steps necessary or appropriate to carry out the terms of this Order.

17.     The Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.

**Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | ) | Chapter 11 |
|---|---|---|
| | ) | |
| | ) | Case No. 19-45422 |
| | ) | Case No. 19-45423 |
| In re: | ) | Case No. 19-45424 |
| | ) | Case No. 19-45425 |
| Absolut Facilities Management, LLC, *et al.* | ) | Case No. 19-45426 |
| | ) | Case No. 19-45427 |
| Debtors.[1] | ) | Case No. 19-45428 |
| | ) | Case No. 19-45429 |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |

**FINAL ORDER (I) AUTHORIZING, BUT NOT DIRECTING, DEBTORS
TO (A) PAY AND HONOR PREPETITION EMPLOYEE OBLIGATIONS
AND (B) MAINTAIN AND CONTINUE CERTAIN COMPENSATION AND
BENEFIT PROGRAMS POSTPETITION; AND (II) GRANTING RELATED RELIEF**

On _____, the Court conducted a final hearing to consider the Debtors' Emergency Motion for Interim and Final Orders (I) Authorizing, but Not Directing, Debtors to (A) Pay and Honor Prepetition Employee Obligations, and (B) Maintain and Continue Certain Compensation and Benefit Programs Postpetition; and (II) Granting Related Relief (the "**Employee Wage Motion**")[2] filed by the above-captioned debtors (the "**Debtors**"). The Court finds that: (i) it has jurisdiction over the matters raised in the Employee Wage Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); (iii) the relief requested

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2] Capitalized terms used but not defined shall have the meaning ascribed in the Employee Wage Motion.

18147280

is in the best interests of the Debtors, their estates, and their creditors; (iv) proper and adequate notice of the Employee Wage Motion has been given and no other or further notice is necessary; and (v) upon the record herein, including the interim hearing, and after due deliberation thereon, good and sufficient cause exists for the granting of the relief.

Therefore, IT IS HEREBY ORDERED THAT:

1.      The Employee Wage Motion is GRANTED on a final basis, as set forth herein.

2.      Pursuant to sections 105(a), 363(b), 507(a)(4), 507(a)(5), 541, 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003, the Debtors are authorized, but not directed, to: (a) pay and/or honor, in their sole discretion, all Prepetition Employee Obligations; and (b) maintain and continue to honor certain obligations, practices, programs, and policies for the Employees as they were in effect as of the Petition Date as the same may be modified, amended, or supplemented from time to time in the ordinary course of business; provided, however, that no single individual shall be paid on account of any prepetition claim for wages, benefits, or other compensation over the statutory cap of $13,650 provided for under sections 507(a)(4) and (5) of the Bankruptcy Code, absent further order of the Court.

3.      Nothing herein shall be deemed to authorize the payment of any amounts in satisfaction of bonus or severance obligations to insiders that are subject to section 503(c) of the Bankruptcy Code.

4.      The Debtors are authorized, in their sole discretion, to pay all outstanding prepetition Reimbursable Expenses, including, without limitation all amounts due as of the Petition Date under the Corporate Credit Card Program.

5.      The Debtors are authorized, in their sole discretion, to pay all outstanding prepetition Pension Fund Obligations and Education Fund Obligations.

6.      The Debtors and any applicable third parties are authorized to continue to allocate and distribute Employee Withholdings to the appropriate taxing authorities or third-party recipients in accordance with the Debtors' stated policies and prepetition practices.

7.      The Banks are authorized, when requested by the Debtors, to receive, process, honor, and pay any and all checks drawn on, or electronic transfer requests from, the Debtors' accounts, whether such checks or requests are presented or submitted prior to or after the Petition Date, to the extent such checks or requests are expressly identified by the Debtors as related directly to the payment of Prepetition Employee Obligations, provided that sufficient funds are available in the applicable bank accounts to make such payments.

8.      The Banks may rely on the representations of the Debtor with respect to whether any check or other transfer drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations.

9.      The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a result of the filing of these Chapter 11 Cases with respect to prepetition amounts owed in connection with any Prepetition Employee Obligations.

10.     Subject to the applicable provisions of the Bankruptcy Code, the Debtors are authorized to modify, change, and discontinue any of the policies, plans, programs, practices, and procedures associated with the Employees and/or to implement new plans, policies, practices and procedures related thereto in the ordinary course of business during these Chapter 11 Cases, in their sole discretion and without the need for further Court approval; provided, however, that the Debtors shall give notice to beneficiaries of such policies, plans, programs, practices, and

procedures.

11.       Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission regarding the validity or amount of any claim against the Debtor; (b) a waiver of the Debtors' rights to subsequently dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code;  (e) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; (f) to grant third-party beneficiary status or bestow any additional rights on any third party; or (g) to be otherwise enforceable by any third party.

12.       Notwithstanding the relief granted herein or any action taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any Employee, or any other person or entity.

13.       The notice of the relief requested in the Motion satisfies Bankruptcy Rule 6004(a) and, pursuant to Bankruptcy Rule 6004(h) the terms and provisions of this Order shall be immediately effective and enforceable upon its entry.

14.       The Debtors are authorized to take all steps necessary or appropriate to carry out the terms of this Order.

15.       This Court shall retain jurisdiction with respect to all matters relating to the interpretation or implementation of this Order.