**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| | ) Chapter 11 |
| | ) |
| | ) Case No. 19-76260-ast |
| | ) Case No. 19-76263-ast |
| In re: | ) Case No. 19-76267-ast |
| | ) Case No. 19-76268-ast |
| Absolut Facilities Management, LLC, *et al.* | ) Case No. 19-76269-ast |
| | ) Case No. 19-76270-ast |
| Debtors.[1] | ) Case No. 19-76271-ast |
| | ) Case No. 19-76272-ast |
| | ) |
| | ) (Jointly Administered) |

## ORDER AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS TO RCA HEALTHCARE MANAGEMENT, LLC, FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS (EXCEPT FOR ASSUMED LIABILITIES) AND (II) ASSUMPTION AND ASSIGNMENT OF CONTRACTS

Upon the motion, dated November 22, 2019 [Dkt No. 269] (the "**Motion**") of the above-caption ed debtors and debtors in possession (the "**Debtors**" or "**Seller**"), seeking, among other things, entry of an order pursuant to sections 105, 363 and 365 of Title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the Debtors to sell the Acquired Assets pursuant to the terms of an Asset Purchase Agreement, dated as of January 30, 2020 (the "**Agreement**"),[2] by and among the Debtors, as Seller, and RCA Healthcare Management, LLC, as buyer (together with its designees, successors and permitted assigns, the "**Buyer**"); and the Court

---

[1] The Debtors in these chapter 11 cases (as captioned above, these "**Chapter 11 Cases**"), along with the last four digits of each Debtors' federal tax identification number, are: Absolut Facilities Management, LLC (1412); Absolut Center for Nursing and Rehabilitation at Allegany, LLC (7875); Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (8266); Absolut Center for Nursing and Rehabilitation at Gasport, LLC (8080); Absolut at Orchard Brooke, LLC (1641); Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC (8300); Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC (8133); and Absolut Center for Nursing and Rehabilitation at Westfield, LLC (7924).

[2] Any capitalized term used but not otherwise defined herein shall have the meaning ascribed to such term in the Agreement or the Motion.

having entered an *Order (I) Approving Bidding Procedures for the Sale of Substantially all of the Debtors' Assets, (II) Authorizing the Selection of a Stalking Horse Bidder, (III) Approving Bid Protections, (IV) Scheduling Auctions and Hearings to Consider Such Sale of Assets, (V) Approving Assumption and Assignment Procedures Related to Such Sale and (VI) Approving the Form and Manner of Related Notice,* dated December 18, 2019 [Dkt No. 323] (the "**Sale Procedures Order**"), based upon the record made at the hearing held on December 18, 2019 (the "**Sale Procedures Hearing**"); the Auction having been cancelled due to the Debtors' determination, in consultation with the official committee of unsecured creditors (the "**Committee**"), that the Buyer was the only qualified bidder per the Sale Procedures Order and the Agreement constitutes the highest and otherwise best offer for the Acquired Assets; and the Court having conducted a hearing to consider the Motion and the Debtors' request to enter into and consummate the transactions contemplated by the Agreement on January 30, 2020 (the "**Sale Hearing**"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Agreement, whereby Seller has agreed to sell and Buyer has agreed to acquire, the Acquired Assets (the "**Sale**") and Seller has agreed to transfer and Buyer has agreed to assume certain of the Debtors' liabilities (collectively and as specifically set forth and defined in the Agreement, the "**Assumed Liabilities**") (collectively and including all actions taken or required to be taken in connection with the implementation and consummation of the Agreement, the "**Transactions**"); and the Court having reviewed and considered the Agreement, the Motion and all evidence and arguments in support thereof, the Sale Procedures Order, the Agreement, the Plan Term Sheet (as defined below) and any objections and responses to the Motion and the Transactions; and the Court having considered the arguments of counsel made and the evidence adduced at the Sale Procedures Hearing and the Sale Hearing; and upon the record of the Sale

2

Procedures Hearing, the Sale Hearing and these Chapter 11 Cases; and it appearing that due notice of the Motion, the Sale Procedures Order and the Sale has been provided; and it appearing that the relief requested in the Motion with respect to the Transactions is in the best interests of the Debtors, their estates, their stakeholders and all other parties in interest; and it appearing that the Court has jurisdiction over this matter; and it further appearing that the legal and factual bases set forth in the Motion, at the Sale Procedures Hearing and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good and sufficient cause appearing therefor, it is hereby,

FOUND AND DETERMINED THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      The Court has jurisdiction over the Motion and the Transactions contemplated by the Agreement pursuant to 28 U.S.C. §§ 157 and 1334 and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d) and to any extent necessary under Bankruptcy Rules 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order and expressly directs entry of judgment as set forth herein.

D.      The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006 and 9014 and Rule 6004-1

of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of New York (the "**Local Rules**").

E.      As evidenced by the affidavits of service and publication previously filed with the Court and based on the representations of counsel at the Sale Hearing, (i) due, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing, the Sale Procedures Hearing, the Sale and the assumption and assignment of the Assumed Contracts has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014, the applicable Local Rules, including Local Rule 9006-1 and in compliance with the Sale Procedures Order to each party entitled thereto, (ii) such notice was good and sufficient and appropriate under the particular circumstances and (iii) no other or further notice of the Motion, the Sale Hearing and the Sale is or shall be required.

F.      Pursuant to the Sale Procedures Order, the Debtors filed a schedule of cure obligations on December 26, 2019  [Dkt No. 348] (the "**Executory Contract List**") and served the Executory Contract List on each of the non-debtor parties listed on the Executory Contract List electronically and by first class mail on such date, notifying contract counterparties: (a) that Seller may seek to assume and assign certain Contracts on the Closing Date of the Sale or thereafter as provided in the Sale Procedures Order and (b) of the proposed Cure Amounts. The service of the Executory Contract List was good, sufficient and appropriate under the circumstances and no further notice need be given in respect of the assumption, assignment and establishing a cure amount for those Contracts listed on the Executory Contract List that have been designated by the Buyer for assumption and assignment at any time prior to the Closing and that are ultimately assumed in connection with this Order (the "**Assumed Contracts**").  Each of the counterparties to

4

the Assumed Contracts has had an opportunity to object to the assumption, assignment and the Cure Amounts and has consented to the assumption and assignment pursuant to this Order.

G.      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and the Sale Procedures Hearing and (ii) the representations of counsel made on the record at the Sale Hearing and the Sale Procedures Hearing, the Debtors (x) have adequately marketed the Acquired Assets since one year prior to the Petition Date in these cases, (y) have exercised sound business judgment in determining not to proceed with the Auction and (z) have duly and properly agreed, in accordance with their business judgment, that the Transactions contemplated by the Agreement are in the best interest of the estates and creditors.

H.      As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, under the circumstances, the consideration provided by Buyer under the Agreement, and this Order, constitutes or provides the highest or otherwise best offer obtained, and provides fair and reasonable consideration to the Debtors for the sale of all Acquired Assets and the assumption of all Assumed Liabilities, and the performance of the other covenants set forth in the Agreement, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative resulting from the Debtor's sale process. The Debtors' determination that the Agreement and the Transactions contemplated thereby constitutes the highest and best offer for the Acquired Assets is a valid and sound exercise of the Debtors' business judgment. Approval of the Agreement and consummation of the Sale and the other Transactions at this time are in the best interests of the Debtors, their creditors, their estates and other parties in interest.

I.      Notice and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all parties in interest in these Chapter 11

Cases, including: (a) the U.S. Trustee; (b) counsel to the Committee; (c) counsel to the Buyer; (d) all parties which, to the best of the Debtors' knowledge, information and belief, have asserted a lien or security interest against any of the Acquired Assets; (e) all of the Debtors' landlords (the "Landlords"); (f) all applicable federal, state and local taxing and regulatory authorities which have a reasonably known interest in the relief requested in the Motion, including the Internal Revenue Service; (g) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; and (h) all other known creditors of the Debtors, including any contract counterparties.

J.     The Agreement was negotiated, proposed and entered into by Seller and the Buyer without collusion, in good faith and from arm's-length bargaining positions.  Neither the Debtors, nor the Buyer, nor any Affiliate of the Buyer, has engaged in any conduct that would cause or permit the Agreement to be avoided under section 363(n) of the Bankruptcy Code. Specifically, the Buyer has not acted in a collusive manner with any person and the aggregate consideration provided by the Buyer for the Acquired Assets was not controlled by any agreement among any bidders.

K.     The Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. Specifically, (i) the Buyer recognized that the Debtors were free to deal with any other party interested in acquiring the Acquired Assets; (ii) the Debtors agreed that the sale to the Buyer constitutes or provides the highest or otherwise best offer obtained and provides fair and reasonable consideration to the Debtors for the sale of all Acquired Assets and the assumption of all Assumed Liabilities; (iii) the Buyer in no way induced or caused the chapter 11 filings by the Debtors; and (iv) the negotiation and execution of the Agreement was at arms' length and in good faith.

L.     The consideration provided by Buyer for the Acquired Assets pursuant to the Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession and the District of Columbia.

M.     There has been no showing that Seller or Buyer (i) have entered into the Agreement or propose to consummate the Transactions for the purpose of hindering, delaying or defrauding the Debtors' present or future creditors or (ii) are entering into the Agreement or proposing to consummate the Transactions fraudulently, for the purpose of statutory or common law fraudulent conveyance and fraudulent transfer claims, whether under the Bankruptcy Code or any other applicable law.

N.     The Sale must be approved and consummated promptly in order to preserve the value of the Debtors' assets, as there is substantial risk of deterioration of the value of the Acquired Assets if the Transactions are not consummated quickly.

O.     The Seller and Buyer have authorized the execution and delivery of the Agreement, the sale of all Acquired Assets to Buyer and the assumption of all Assumed Liabilities by Buyer. The Seller and the Buyer (i) have full corporate power and authority to execute and deliver the Agreement and all other documents contemplated thereby, as applicable, (ii) have all of the power and authority necessary to consummate the Transactions and (iii) have taken all action necessary to authorize and approve the Agreement and to consummate the Transactions, and no further consents or approvals are required for the Seller or the Buyer to consummate the Transactions contemplated by the Agreement, except as otherwise set forth in the Agreement.

P.      Effective upon the Closing, the transfer and assignment of the Acquired Assets to the Buyer will be a legal, valid, enforceable and effective transfer and assignment of the Acquired Assets, and will vest the Buyer with all right, title and interest of the Debtors in the Acquired Assets free and clear of all Liens, Claims and Interests (as defined below) except for the Assumed Liabilities, or as otherwise provided in this Order.  A sale of the Acquired Assets other than one free and clear of all Liens, Claims and Interests, except for the Assumed Liabilities, or as otherwise provided in this Order, would adversely impact the Debtors' estates and would yield substantially less value for the Debtors' estates, with less certainty than the Sale.  Therefore, the Sale contemplated by the Agreement is in the best interests of the Debtors, their estates and creditors and all other parties in interest.

Q.      The consummation of the Sale and Transactions is legal, valid, properly authorized and complies with all applicable state and federal law.

R.      The Acquired Assets constitute property of the Debtors' estates and title thereto is presently vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

S.      Neither the Buyer nor any of its Affiliates, successors, or assignees is a successor to the Debtors or their bankruptcy estates by reason of any theory of law or equity and neither the Buyer nor any of its Affiliates, successors, or assignees shall assume or in any way be responsible for any liability or obligation of the Debtors and/or their bankruptcy estates, except as otherwise expressly provided in the Agreement or this Order.

T.      The Buyer would not have entered into the Agreement and will not consummate the Transactions if the sale of the Acquired Assets is not free and clear of all Liens, Claims and Interests, except for the Assumed Liabilities, or as otherwise provided in this Order.

U.      The Debtors have demonstrated that it is an exercise of their sound business judgment to assume and assign the Assumed Contracts to the Buyer in connection with the consummation of the Sale, and the assumption and assignment of the Assumed Contracts, is in the best interests of the Debtors, their estates and their creditors.  The assumption and assignment of the Assumed Contracts pursuant to the terms of this Order is integral to the Agreement, in the best interests of the Debtors and their respective estates, creditors and other parties in interest, and represent the reasonable exercise of sound and prudent business judgment by the Debtors. Accordingly, such assumption and assignment of Assumed Contracts and Assumed Liabilities are reasonable and enhance the value of the Debtors' estates.

V.      For all counterparties to Assumed Contracts other than the Landlords, the "cure" amounts set forth on the Executory Contract List (the "**Cure Amount**") are approved and shall be paid by the Buyer to each counterparty.

W.      The Debtors, the Landlords, the Committee, and ABS DIP, LLC have entered into the Plan Term Sheet, attached hereto as Exhibit A (the "**Plan Term Sheet**"), the terms of which are incorporated herein by reference.  Pursuant to the Plan Term Sheet, the Landlords' Cure Amount will remain the obligation of the Debtors' estates and the Landlords have agreed to certain compromises as to the priority, treatment, and amount of their Cure Amounts solely with respect to this Sale, as set forth in the Plan Term Sheet.

X.      The Debtors have met all requirements of section 365(b) of the Bankruptcy Code for each of the Assumed Contracts.  Except as set forth in the immediately preceding paragraph, effective upon the Closing and in accordance with the Agreement, the Buyer will have agreed to (i) cure, or provide adequate assurance of cure, of any default existing prior to the date hereof under any of the Assumed Contracts, within the meaning of section 365(b)(1)(A) of the

Bankruptcy Code and (ii) provide compensation or adequate assurance of compensation to any appropriate party for any actual pecuniary loss incurred by such party resulting from a default prior to the date hereof under any of the Assumed Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code. Further, the Buyer has provided adequate assurance of future performance of and under the Assumed Contracts, within the meaning of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code. Each of the Assumed Contracts is assigned and remain in full force and effect for the benefit of, the Buyer notwithstanding any provision in the contracts or other restrictions prohibiting their assignment or transfer free and clear of Liens, Claims and Interests, except for the Assumed Liabilities, against the Buyer.

Y.      No default exists in the Debtors' performance under the Assumed Contracts as of the date of this Order other than the failure to pay Cure Amounts (if any), or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code.

Z.      Time is of the essence. To maximize the value of the Debtors' assets, it is critical that the Transactions close within the time constraints set forth in the Agreement, and the Debtors and Buyer intend to close the Transactions as soon as practicable. Accordingly, there is good cause to waive the stay contemplated by Bankruptcy Rules 4001, 6004 and 6006.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED and DECREED THAT:**

1.      The Motion is granted, to the extent, and as further described herein. The Sale and the Transactions contemplated by the Agreement, the ASA and the other Transaction Documents (defined below) are approved.

2.      All objections to the Motion and the Transactions or the relief requested therein that have not been withdrawn, waived, or settled and all reservations of rights included therein, are

hereby overruled on the merits with prejudice. All persons and entities given notice of the Motion that failed to timely object thereto are deemed to consent to the relief sought therein, including all non-Debtor parties to the Assumed Contracts.

3. Findings of fact and conclusions of law in the Sale Procedures Order, including the record of the Sale Procedures Hearing, are incorporated herein by reference.

### Approval of the Transaction Documents

4. The Agreement, the Administrative Services and Consulting Agreement ("**ASA**") and the other Transaction Documents, and all of the terms and conditions thereof and all Transactions contemplated therein are hereby approved.

5. Pursuant to sections 363(b) and 365 of the Bankruptcy Code, the Debtors are authorized to (a) perform their obligations under and comply with the terms of the Agreement, the ASA and the other Transaction Documents, and consummate, implement and fully close the Transactions, pursuant to and in accordance with the terms and conditions of the Agreement, the ASA, the other Transaction Documents and this Order, and (b) assume and assign any and all Assumed Contract(s) as and when provided in the Agreement, or this Order.

6. This Order, the Agreement, the ASA and the other Transaction Documents shall be binding in all respects upon all creditors (whether known or unknown) of the Debtors, all non-Debtor parties to the Assumed Contracts, successors and assigns of the Buyer, the Debtors and their affiliates and subsidiaries and any subsequent trustees appointed in the Debtors' chapter 11 cases or appointed upon a conversion to chapter 7 under the Bankruptcy Code. Nothing contained in any chapter 11 plan confirmed in this bankruptcy case (the "**Plan**"), the order confirming any such Plan (the "**Confirmation Order**") or any order dismissing or converting to chapter 7 of the Bankruptcy Code any of the Debtors' bankruptcy cases (the "**Other Orders**"), shall conflict with,

supersede, abrogate, nullify or restrict the terms of the Agreement, the ASA, the other Transaction Documents, the Sale Procedures Order, or this Order, or in any way prevent or interfere with the consummation or performance of the Transactions contemplated by the Agreement, the ASA or the other Transaction Documents, including, without limitation, any transaction contemplated or approved pursuant to this Order or the Sale Procedures Order.

7. The Agreement, the ASA and the other Transaction Documents may be modified, amended, or supplemented by the parties thereto in a writing signed by both parties and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on the Debtors' estates.

### Transfer of Assets

8. Pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code, upon the Closing Date, the Acquired Assets shall be transferred to the Buyer in accordance with the Agreement and such transfer shall constitute a legal, valid, binding and effective transfer of such Acquired Assets, and shall, except with respect to the Assumed Liabilities, or as otherwise provided in this Order, vest the Buyer with title to the Acquired Assets, free and clear of all liens, claims and interests and all mortgages, pledges, options, security interests, charges, rights of first refusal, hypothecations, encumbrances on real or personal property, easements, encroachments, rights of way, restrictive covenants on real or personal property, real or personal property licenses, leases, or conditional sale arrangements, debts, liabilities, obligations, judgments, mechanics liens, artisans liens, charging liens, suppliers' liens, design professionals' liens, laborers' liens, construction liens, constitutional, statutory and other liens and claims (as that term is defined in section 101(5) of the Bankruptcy Code), including rights or claims based upon successor or

transferee liability, Environmental Laws, liability under the Federal and State WARN Acts or similar law, whether accrued or fixed, direct or indirect, liquidated or unliquidated, absolute or contingent, matured or unmatured, known or unknown, determined or undeterminable, including those arising under any law or action and those arising under any contract or otherwise, including any tax liability and including any rights, claims, or causes of action based on any theories of transferee or successor liability (collectively, the "**Liens, Claims and Interests**").  Liens, Claims and Interests shall also include but are not limited to: (a) those that purport to give to any party a right terminate the Debtors' or the Buyer's interest in the Acquired Assets, or any similar rights; (b) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Acquired Assets prior to the Closing; and (c) all debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or any of the Debtors' predecessors or affiliates, claims (as that term is defined in the Bankruptcy Code), obligations, liabilities, demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and matters of any kind and nature, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these Chapter 11 Cases and whether imposed by agreement, understanding, law, equity, or otherwise, including but not limited to claims otherwise arising under doctrines of successor liability.

9.	All Liens, Claims and Interests released, terminated and discharged as to the Acquired Assets shall attach to the proceeds of the Sale (the "**Proceeds**"), with the same validity, force and effect that they now have as against the Debtors, the estates, or the Acquired Assets, subject with respect to the Proceeds to any claims and defenses the Debtors may possess with respect thereto. For the avoidance of doubt, except with respect to the Assumed Liabilities, or as otherwise provided in this Order, upon the Closing Date the sole and exclusive right and remedy

with respect to the Acquired Assets available to purported creditors, equity holder(s), including, without limitation, the equity holder(s) of the Debtors and the holders of any other Liens, Claims and Interests and parties in interest, shall be a right to assert Liens, Claims and Interests against the Proceeds and the Debtors' estates.

10. As of the Closing, the Buyer shall have any and all rights, claims, defenses and offsets held by Debtors and their estates with respect to all Assumed Liabilities.

11. The Buyer shall not be deemed, as a result of any action taken in connection with the Agreement, the consummation of the Transactions, or the transfer, operation or use of the Acquired Assets, to (a) be a legal successor, or otherwise be deemed a successor to the Debtors; (b) have, *de facto* or otherwise, merged with or into the Debtors; or (c) be an alter ego or a mere continuation or substantial continuation of the Debtors, including within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine.

12. Except as expressly provided in the Agreement with respect to the Assumed Liabilities, or as otherwise provided in this Order, Buyer shall have no liability whatsoever with respect to the Debtors' (or their predecessors or affiliates) respective businesses or operations or any of the Debtors' (or their predecessors' or affiliates') obligations (as described below, "**Successor or Transferee Liability**") based, in whole or part, directly or indirectly, on any theory of successor or vicarious liability of any kind or character, or based upon any theory of antitrust, environmental, successor or transferee liability, *de facto* merger or substantial continuity, labor and employment or products liability, whether known or unknown as of the Closing, now existing

14

or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated, including liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the Acquired Assets or the Business prior to the Closing. Except to the extent expressly included in the Assumed Liabilities or otherwise provided for in the Agreement or this Order, Buyer shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 2101 et seq.) and its state law equivalents; the Comprehensive Environmental Response Compensation and Liability Act (42 U.S.C. §§ 9601 et. seq.); the Employment Retirement Income Security Act of 1974, as amended (29 U.S.C. §§ 2101 et seq.) ("**ERISA**") or any foreign, federal, state or local labor, employment or environmental law whether of similar import or otherwise by virtue of Buyer's purchase of the Acquired Assets or assumption of the Assumed Liabilities by Buyer. Except as otherwise provided herein, the Buyer and its Affiliates shall have no liability or obligation with respect to any environmental conditions related to the Acquired Assets.

13.     Except as otherwise provided in this Order, effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action or other proceeding, whether in law or equity, in any judicial, administrative, arbitral or other proceeding against the Buyer, its Affiliates or their assets (including the Acquired Assets), with respect to any (a) Liens, Claims and Interests, except for any Assumed Liabilities, or (b) Successor or Transferee Liability, including the following actions with respect to clauses (a) and (b): (i) commencing or continuing any action or other proceeding pending or threatened; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any Liens, Claims and Interests, except with respect to any Assumed Liabilities; (iv) asserting any setoff, right of subrogation or recoupment of any

kind; (v) commencing or continuing any action, in any manner or place, that does not comply with, or is inconsistent with, the provisions of this Order or other orders of this Court, or the agreements or actions contemplated or taken in respect hereof; or (vi) revoking, terminating or failing or refusing to renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with such assets.

### Assumption and Assignment of Contracts

14. Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing Date, the Debtors' assumption and assignment to the Buyer and the Buyer's assumption on the terms set forth in the Agreement of the Assumed Contracts are hereby approved, and the requirements of section 365(b)(1) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

15. The Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to (a) assume and assign to the Buyer, effective upon and subject to the occurrence of the Closing and the Closing Date, the Assumed Contracts free and clear of all Liens, Claims and Interests of any kind or nature whatsoever, except for Assumed Liabilities, or as otherwise provided in this Order, which Assumed Contracts by operation of this Order, shall be deemed assumed and assigned effective as of the Closing Date and (b) execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer such Assumed Contracts and Assumed Liabilities to the Buyer.

16. The Assumed Contracts shall be transferred and assigned to, and following the Closing Date, remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms (as may be modified by agreement between the Buyer and the applicable counterparty), notwithstanding any provision in any such Assumed Contract (including those of

the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to the Assumed Contracts after such transfer and assignment to the Buyer. The Buyer may assume the Assumed Contracts in accordance with section 365 of the Bankruptcy Code. The Debtors may assign each Assumed Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the non-debtor party to such Assumed Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, shall constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption and assignment by the Debtors to the Buyer of each Assumed Contract have been satisfied. Upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title and interest of each Assumed Contract. For the avoidance of doubt, the Buyer shall be able to designate contracts from the Executory Contract List (or any supplement or modification to the Executory Contract List) for assumption through the Closing.

17. All defaults or other obligations of the Debtors under the Assumed Contracts arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code as to which no objections were interposed), are deemed satisfied by the Cure Amounts with respect to each Assumed Contract in those amounts agreed to by the Buyer and non-debtor counterparties to the Assumed Contracts and which were satisfied, or shall be satisfied as soon as practicable

following Closing, by the Buyer; provided, however, that pursuant to the Plan Term Sheet and notwithstanding anything in this Order or the Sale Procedures Order to the contrary, the Landlords' Cure Amount will remain the obligation of the Debtors' estates, as modified by the terms and conditions contained in the Plan Term Sheet.

18. Except as otherwise provided in this Order and the Plan Term Sheet with respect to the Landlords, each non-debtor party to an Assumed Contract hereby is forever barred, estopped and permanently enjoined from asserting against the Debtors, the Buyer, or the property of any of them, any default existing as of the Closing Date; or, against Buyer, any counterclaim, defense, setoff, or any other claim asserted or assertable against the Debtors. Except as provided in the Agreement, the Plan Term Sheet, or this Order, after the Closing Date, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property, or their assets or estates. There shall be no rent accelerations, assignment fees, increases, or any other fees charged to the Buyer or the Debtors as a result of the assumption, assignment and/or transfer of any Assumed Contract. The Buyer's agreement pursuant to the terms of the Agreement to pay the Cure Amounts and to perform the obligations under the Assumed Contracts after the Closing Date shall constitute adequate assurance of its future performance under the Assumed Contracts being assigned to it within the meanings of sections 365(b)(1)(C) and (f)(2)(B) of the Bankruptcy Code.

**The Sale Does Not Require the Appointment of a Consumer Privacy Ombudsman**

19. The Debtors did not have any privacy policy in effect on the Petition Date and the Debtors are not selling or leasing any personally identifiable information (as that term is defined

18

in 11 U.S.C. § 101(41A)) of any individual. Accordingly, no consumer privacy ombudsman is required in connection with the sale under section 363(b)(1) of the Bankruptcy Code.

**Additional Provisions**

20. The Debtors are parties to Medicare provider agreements (the "**Medicare Provider Agreements**") with the Secretary of the United States Department of Health and Human Services, acting through its designated component, the Centers for Medicare & Medicaid Services ("**CMS**"), to receive payment for services provided to Medicare beneficiaries pursuant to the provisions of and regulations promulgated under, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll. Notwithstanding anything in this Order, the Motion, the Agreement, the Plan Term Sheet, the ASA, or any other Transaction Documents:

(a) the Medicare Provider Agreements shall be governed exclusively and solely by the Medicare statutes, regulations, rules, policies and procedures, including, but not limited to, transfer of the Medicare Provider Agreements with successor liability through a valid "change of ownership". Pursuant to 42 C.F.R. § 489.18(c), the Provider Agreements shall be automatically assigned to the Buyer or any subsequent operator of the Facilities (globally defined herein as defined in the ASA) (collectively, the "**New Operators,**" and each a "**New Operator**") upon a change in ownership, subject to the terms and conditions under which the Medicare Provider Agreements were originally issued, including, but not limited to, the recoupment of all pre-assignment Medicare overpayments and all other monetary liabilities, regardless of whether they have not yet been determined by CMS;

(b) the New Operators shall be subject to compliance with applicable health and safety standards pursuant to all Medicare statutes, regulations, rules, policies and procedures;

(c) nothing shall affect or impair the United States' defenses, claims, rights, or ability to recoup, setoff, or otherwise recover Medicare overpayments and any other monetary liabilities from the Debtors and/or any New Operator under the Medicare Provider Agreements in accordance with the Medicare statutes, regulations, rules, policies and procedures;

(d) nothing shall relieve or be construed to relieve the Debtors or any New Operator from complying with all Medicare statutes, regulations, rules, policies and procedures, including, but not limited to, the requirement that the Debtors and any New Operator apply for and obtain CMS approval of a change of ownership by the filing of Form CMS-855A; and

(e) The Debtors and New Operators shall comply with the anti-assignment provisions of the Medicare Act and regulations at, respectively, 42 USC 1395g(c) and 42 CFR 424.73(a). Specifically, any payments billed for services under the Debtors' provider numbers prior to the change of ownership will be deposited into the Debtors' respective accounts. Further, pursuant to 42 C.F.R. § 424.550 and 42 C.F.R. § 424.535(a)(7), the New Operators are prohibited from using the Debtors' Medicare Provider Numbers to bill for services except pursuant to a valid change of ownership. Any ASA Servicer (globally defined herein as defined in the ASA) will not have a Power of Attorney with respect to Medicare payments due to the Debtors prior to the change of ownership.

21. The financial accounts of the Facilities (as defined in the ASA) during the Interim Period (as defined in the ASA) shall be maintained for federal, state and local taxation purposes as if the ASA Servicers (globally as defined in the ASA) are the actual owners of the operation of the Facility from and after the ASA Effective Date (as defined in the ASA), and ASA Servicers shall file tax returns and pay any other applicable governmental assessments, including the Cash Assessment for the Interim Period, indicating that all expenses for such period were incurred by

ASA Servicers, all revenue for such period was earned by ASA Servicers and the gain or loss from the operation of the Facility during such period is the sole responsibility of ASA Servicers.

22.     Notwithstanding anything in this Order, the Motion, the ASA, the Agreement, the Plan Term Sheet, or the Transaction Documents (as defined below), all rights of the Debtors and the U.S. Trustee relating to quarterly fees under 28 U.S.C. § 1930 are reserved and not impaired in any way.

23.     Debtors are also parties to Medicaid provider agreements (the "**Medicaid Provider Agreements**") with New York State Department of Health.  Notwithstanding anything in this Order, the Motion, the ASA, the Agreement, the Plan Term Sheet, or the Transaction Documents (as defined below):

(a)     The Medicaid Provider Agreements shall be governed exclusively and solely by applicable Medicaid statutes, regulations, rules, policies and procedures, including, but not limited to, the adjustment of any payments to the New Operators, including but not limited to the recoupment of all pre-assignment Medicaid overpayments and all other monetary liabilities, regardless of whether they have been determined;

(b)     The New Operators and the Medicaid Provider Agreements shall be subject to compliance with applicable health and safety standards pursuant to all Medicaid and other pertinent statutes, regulations, rules, policies and procedures relating to the operation of the Facilities;

(c)     Nothing shall affect or impair New York State's defenses, claims, rights, or ability to recoup, setoff, or otherwise recover Medicaid overpayments and any other monetary liabilities from the Debtors and/or any New Operator under the Medicaid Provider Agreements in accordance with all applicable Medicaid statutes, regulations, rules, policies and procedures;

21

(d)     Nothing shall relieve or be construed to relieve the Debtors or any New Operator from complying with all applicable Medicaid statutes, regulations, rules, policies and procedures; and

(e)     The Debtors and/or New Operators shall retain their respective right to an administrative appeal of any overpayment determination in accordance with the applicable statutes, regulations, rules, policies and procedures.

24.     Notwithstanding anything to the contrary in this Order, the Motion, the Agreement, the ACSA, the Sale Procedures Order or any other Transaction Documents, the New York State Department of Health ("DOH") expressly reserves all rights regarding the jurisdiction and authority of the DOH and the New York Public Health and Planning Council under all applicable laws, statutes, rules, policies, procedures and regulations in connection with all approvals, consents, licenses, permits and other regulatory matters related to the sale of the Debtors' assets and continued operation of the Debtors' healthcare facilities.

25.     Nothing contained herein shall transfer Cass Development Company's interest in personal property located at the Debtor's Westfield New York facility.

26.     Notwithstanding anything in this Order, the Motion, the Plan Term Sheet, the Agreement, the ASA, or any other of the Transaction Documents (as defined below), the Debtors, the New Operators and the Landlords shall abide by all U.S. Department of Housing and Urban Development ("**HUD**") statutes, regulations, and policies, including but not limited to all current requirements in HUD handbooks, guides, notices or mortgagee letters, procedures, rules and regulatory agreements with respect to changes in the operator of the Facilities, including that as condition precedent to Closing, any New Operator will be subject to HUD's Transfer of Physical Assets review and will have received all required consents and approvals from HUD and from

Capital Funding, LLC, Capital Funding Group, Inc., and any of their predecessors, successors and/or assigns (collectively, "**Capital Funding**") and Midland Loan Services, Inc., acting by and through its authorized sub-servicer Berkadia Commercial Mortgage LLC (collectively, the "**HUD Insured Lenders**"). The Debtors, the New Operators and the Landlords shall otherwise abide by all HUD statutes, regulations, policies, including but not limited to all current requirements in HUD handbooks, guides, notices or mortgagee letters, procedures, rules and regulatory agreements. Notwithstanding anything in this Order, the Motion, the Plan Term Sheet, the Agreement, or any other Transaction Documents (as defined below), nothing shall impair or affect HUD's authority under any statutes, regulations, policies, procedures, rules, or regulatory agreements, including, but not limited to, enforcement and administrative actions and proceedings related to the project(s) financed by the HUD Insured Lenders.

27. Notwithstanding anything contained in this Order, the Motion, the Plan Term Sheet, the Agreement, the ASA, the Memorandum of Understanding with the Buyer (the "**Buyer MOU**"), the Memorandum of Understanding with the Landlords and Sublandlord (the "**Landlord MOU**"), or any other agreements, documents or instructions in connection with the sale or assignment of the Acquired Assets and/or the operation of the Facilities (collectively, the "**Transaction Documents**"), the Acquired Assets shall be subject to the liens, claims, interests and encumbrances of Capital Funding, Capital Finance, LLC ("**Capital Finance**"), ABS DIP LLC, and HUD.

28. Notwithstanding anything contained in this Order, the Motion, the Plan Term Sheet, the Agreement, the ASA, the Buyer MOU, the Landlord MOU, the Transaction Documents or otherwise, it is a condition precedent to the closing of the Sale to the Buyer and the Transactions and to the effectiveness of the ASA that (a) the Buyer, its designee and/or its successors and/or assigns, executes and performs under that certain Loan Sale and Assignment Agreement dated as

23

of January 30, 2020 (the "**Loan Sale Agreement**") by and among the Buyer and Capital Finance; and (b) in connection therewith, the Buyer pays to Capital Finance indefeasibly and in immediately available funds, an amount equal to all of the obligations outstanding to Capital Finance, including as required under (i) that certain Credit and Security Agreement dated as of May 22, 2009 by and among Capital Finance and Debtors Absolut Facilities Management, LLC and Absolut Center for Nursing and Rehabilitation at Westfield, LLC and all documents and agreements related thereto (collectively, the "**Capital Finance Non-HUD Loan Documents**"); (ii) that certain Credit and Security Agreement dated as of May 22, 2009 by and among Capital Finance and Debtors Absolut Center for Nursing and Rehabilitation at Allegany, LLC, Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC, Absolut Center for Nursing and Rehabilitation at Gasport, LLC, Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC, and Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC and all documents and agreements related thereto (collectively, the "**Capital Finance HUD Loan Documents**" and together with the Capital Finance Non-HUD Loan Documents, the "**Capital Finance Loan Documents**"); and (iii) the Final DIP Financing Order (as defined below). Upon completion of the conditions precedent set forth in the foregoing sentence, the Debtors shall be immediately and automatically deemed to have no claim, demand, defense, right of setoff or counterclaim of any kind or nature whatsoever against Capital Finance or any of its officers, employees or agents, nor shall the Debtors be permitted to bring any such claim, demand, defense, right of setoff or counterclaim of any kind or nature whatsoever, whether known or unknown, matured or unmatured, anticipated or unanticipated, suspected or unsuspected, vested, fixed, contingent or conditional, at law or in equity, against Capital Finance or any of its officers, employees or agents, with respect to the Loan Sale Agreement, the Capital Finance Loan Documents, the Final DIP Financing Order (as defined

24

below) or the obligations thereunder or in connection therewith, with respect to any action previously taken or not taken, or taken or not taken in the future by Capital Finance or any of Capital Finance's officers, employees or agents, relating thereto, or with respect to any lien, collateral or third party collateral securing any liabilities, obligations or indebtedness under the Capital Finance Loan Documents or the Final DIP Financing Order. The deadline to object to the findings with respect to the validity of Capital Finance's claims against the Debtors and liens on the Debtors' property has expired and all findings and releases set forth in the Final DIP Financing Order (as defined below) related thereto are final and binding.

29. Notwithstanding anything contained in this Order, the Motion, the Plan Term Sheet, the Agreement, the ASA, the Buyer MOU, the Landlord MOU, the Transaction Documents or otherwise, the Acquired Assets and the Assumed Contracts shall be subject to the Lessee Security Agreements (collectively, the "**Capital Funding Security Agreements**" and each, a "**Capital Funding Security Agreement**") executed by Absolut Center for Nursing and Rehabilitation at Allegany, LLC; Absolut Center for Nursing and Rehabilitation at Gasport, LLC; Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC; Absolut Center for Nursing and Rehabilitation at Orchard Park, LLC; Absolut at Orchard Brooke, LLC; and Absolut Center for Nursing and Rehabilitation at Three Rivers, LLC, as well as any related documents, that granted to Capital Funding and to HUD, security interests in and liens upon the Collateral (as defined in the Capital Funding Security Agreements), and to the liens, claims, interests, or encumbrances granted to Capital Funding and to HUD, under the Capital Funding Security Agreements and any related documents.

30. The Buyer shall execute and deliver to (i) Capital Funding and HUD, a Lessee Security Agreement(s) (the "**New Capital Funding Security Agreements**" and each, a "**New**

**Capital Funding Security Agreement**"), in the form and substance acceptable to Capital Funding and to HUD, that grants to Capital Funding and to HUD, a first priority security interest in, and lien upon all of the Acquired Assets and Assumed Contracts (except with respect to the Acquired Assets of Absolut Center for Nursing and Rehabilitation at Westfield, LLC and Absolut Facilities Management, LLC), and/or any other assets otherwise constituting the Collateral; (ii) Capital Funding, an intercreditor agreement, a deposit account control agreement(s) and such other and further documents required by Capital Funding and HUD, in the form and substance satisfactory to Capital Funding and HUD (collectively, the "**Additional Security Documents**"); and (iii) HUD, a Healthcare Regulatory Agreement(s) – Operator, as well as such other documents as may be required by HUD, to operate each of the Facilities.

31.     Notwithstanding anything contained in this Order, the Motion, the Plan Term Sheet, the Agreement, the ASA, the Buyer MOU, the Landlord MOU or any of the other Transaction Documents, any loans provided by the Buyer, any New Operator, or by any other person or entity, and any claims, obligations, liens or encumbrances arising under such loans, shall be subject to and subordinated to the rights, remedies, claims, obligations, liens or encumbrances granted to Capital Funding and to HUD under the Capital Funding Security Agreements, the *Final Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 363, and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363, and 364* [Dkt No. 264] (the "**Final DIP Financing Order**"), the New Capital Funding Security Agreements and/or the Additional Security Documents.

32.     Nothing in this Order shall effect the rights or liens granted to ABS DIP LLC under the Final DIP Financing Order or the DIP Loan Agreement.

33.     Notwithstanding anything contained in this Order, the Motion, the Plan Term Sheet, the Agreement, the ASA or any other Transaction Documents, any claims, obligations, liens or encumbrances arising under the Transaction Documents shall be subject to and subordinated to the rights, remedies, claims, liens or encumbrances granted to Capital Funding and to HUD under the Capital Funding Security Agreements, the Final DIP Financing Order, the New Capital Funding Security Agreements and the Additional Security Documents.

34.     Notwithstanding anything contained in this Order, the Motion, the Plan Term Sheet, the Agreement, the ASA or any other Transaction Documents, nothing contained therein shall modify, affect, impair or alter any rights, remedies, claims, liens, encumbrances, interests or defenses of the HUD Insured Lenders or HUD under any agreements, documents, statutes, rules, regulations, regulatory agreements, policies, loan agreements and documents, security agreements, leases, lease addenda, deeds of trust, orders, or applicable law.

35.     Seller has agreed to transfer and Buyer has agreed to assume the liabilities of Signature Financial LLC's ("**Signature**") rights and remedies as a purchase money secured interest pursuant to the April 10, 2017 Promissory Note, Master Security Agreement and Schedule of the equipment given, and entered into by Absolute Center for Nursing and Rehabilitation at Aurora Park, LLC.  Buyer agrees that all of Signatures rights, remedies claims or defenses shall not be affected or alter any rights, remedies, claims or defenses and Signature shall retain its liens of its equipment and collateral.  All of Signature's rights and remedies as a purchase money secured interest creditor pursuant to the April 10, 2017 Promissory Note, Master Security Agreement, and Schedule of Equipment ("**the Original Debt Documents**") given, executed, and entered into by Absolut Center for Nursing and Rehabilitation at Aurora Park, LLC (the "**AP Debtor**") and Signature in the amount of $1,036,000.00 are preserved, and any sale or assignment

shall not affect or alter any rights, remedies, claims or defenses of Signature, who shall retain its liens on the equipment and collateral set forth in the Original Debt Documents. At no time shall there be a sale or other disposition of the AP Debtor's equipment by AP Debtor, Purchaser, or any other person or party without Signature's written consent.

36. In accordance with UCC §9-103(f), it is hereby expressly identified that the Original Debt Documents shall maintain and continue the effectiveness of Signature's priority Purchase Money Security Interest ("**PMSI**"). Notwithstanding the foregoing, prior to Closing, the Purchaser shall be required to execute and deliver to Signature a security agreement with attached equipment schedule as well as an amended UCC filing statement evidencing Signature's continued priority interest ("**the New Documents**"). The New Documents to be executed by Debtor's Purchaser shall constitute an assignment and restructuring not intended to be a discharge, novation, cancellation, or extinguishment of the original debt, obligation, and priority of the PMSI.

37. The Debtors are in possession of a bank account in the amount of $425,000, which was created on November 27, 2018 pursuant to the Consent Decree entered in *Equal Employment Opportunity Commission v. Absolut Facilities Management, LLC, et al.*, 1:18-cv-01020 (W.D.N.Y.). This Order, the ASA, the Agreement, or the Plan Term Sheet, do not include any legal or equitable title to such funds and nothing in this Order, the ASA, the Agreement, or the Plan Term Sheet changes, affects or alters any rights, remedies or legal obligations of the Debtors or the U.S. Equal Employment Opportunity Commission under the Consent Decree.

38. Except as otherwise set forth in this Order, on the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release its Liens, Claims and Interests in the Acquired Assets, if any, except

with respect to the Assumed Liabilities, as such Liens, Claims and Interests may have been recorded or may otherwise exist.

39.  Except as otherwise set forth in this Order, this Order (a) shall be effective as a determination that, upon the Closing Date, all Liens, Claims and Interests of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing Date, except with respect to the Assumed Liabilities, have been unconditionally released, discharged and terminated and that the conveyances described herein and the Agreement have been effected and (b) shall be binding upon and shall govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets.

40.  Except with respect to the Assumed Liabilities, or as otherwise provided in this Order, the Debtors are hereby authorized to execute and file such statements, instruments, releases of mortgages, releases and such other documents of any kind on behalf of the person or entity with respect to such Acquired Assets and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Liens, Claims and Interests in such Acquired Assets of any kind or nature whatsoever. This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, or local government agency, department or office.

41.     All non-debtor entities that are presently, or on the Closing may be, in possession of some or all of the Acquired Assets are hereby directed to surrender possession of the Acquired Assets to the Buyer on the Closing Date.

42.     The Acquired Assets are to be sold free and clear of the Cash Receipts Assessments made pursuant to Public Health Law § 2807-d [10] [a]) that were made or accrued for receipts for services rendered by the Debtor prior to or on the ASA Effective Date although the payments may be received after the ASA Effective Date.

43.     The Personal Property transferred to Buyer shall not be subject to New York City or State sales tax liability.

44.     Notwithstanding anything in this Order, the Plan Term Sheet, the Agreement, the ASA, or any other Transaction Document, nothing releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit arising from or related to the enforcement of any applicable police or regulatory law or regulation to which any entity would be subject to as the owner, operator or licensee of property from and after the date of the closing of the Sale. Nothing in this Order authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police and regulatory law.

45.     Notwithstanding anything in this Order, the Plan Term Sheet, the Agreement, the ASA, or any other Transaction Document, (1) the Debtors and New Operators shall abide by all Social Security Administration ("**SSA**") statutes, regulations, rules, policies, and procedures, including, but not limited to, (a) the transfer of any account holding Social Security benefits, or (b) any New Operators' actions as any beneficiary's representative payee; (2) nothing shall impair

30

or affect SSA's authority, rights, claims or defenses under SSA statutes, regulations, rules, policies, and procedures; and (3) to the extent the Debtors may need to disclose information they possess solely by virtue of being organizational representative payees, the Debtors shall seek a protective order or request the information be sealed.

46. Pursuant to section 4 of the Plan Term Sheet, the Debtors and Committee will share exclusivity under section 1121 of the Bankruptcy Code until the Confirmation Deadline (as such date is defined in and may be extended in accordance with the Plan Term Sheet), after which, if the Confirmation Date (as defined in the Plan Term Sheet) has not occurred, or if any other breach of the Plan Term Sheet by any party thereto other than the Landlords occurs: (i) the Landlord Cure Claim and the OP Claim (as defined in the Plan Term Sheet) will be allowed and paid as follows: (a) $1 million will be an allowed administrative expense claim that will be paid after the Debtors' payroll taxes are paid in full but before payment of all other priority claims, and (b) the balance of the amounts asserted in the Landlord's proofs of claim against the Debtors and AFM in respect of the Landlord Cure Claim (as defined in the Plan Term Sheet) and the OP Claim (as defined in the Plan Term Sheet) will be allowed general unsecured claims; and (ii) the Landlords otherwise reserve all rights with respect to these Chapter 11 Cases, including without limitation the right to seek termination of exclusivity as to the Landlords.

47. This Court retains jurisdiction to enforce and implement the terms and provisions of this Order, the Plan Term Sheet, and the Agreement, all amendments thereto, any waivers and consents thereunder and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Acquired Assets to the Buyer, (b) compel delivery of the Purchase Price or performance of other obligations owed to the Debtors, (c) resolve any disputes arising under or related to the Agreement, except as

otherwise provided therein, (d) interpret, implement and enforce the provisions of this Order, and (e) protect the Buyer against any of the Excluded Liabilities, successor liability or any Liens, Claims and Interests in the Debtors or the Acquired Assets, of any kind or nature whatsoever.

48. Notwithstanding the possible applicability of Bankruptcy Rules 4001(a)(3), 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. In the absence of any entity obtaining a stay pending appeal before Closing, the Debtors and the Buyer are free to close under the Agreement at any time.

49. In accordance with the Plan Term Sheet and the settlement agreement dated November 22, 2019 (the "Settlement Agreement") approved by the *Order Approving Settlement Agreement Between the Debtors, the Landlord Group and Israel Sherman* [Docket No. 322], there will be no TSA Fee (as defined in the Settlement Agreement) payable by the Landlords to Israel Sherman in connection with the Sale or the transition of the Facilities to the New Operators.

50. The Buyer shall not acquire the 2019 Chevrolet Traverse, vehicle identification number 1GNERFKW9KJ218832, and such vehicle shall be designated as an Excluded Asset (as defined in the Agreement).

51. The provisions of this Order are non-severable and mutually dependent without the written consent of the Buyer and the Debtors.

52. To the extent of any conflict between the Agreement, the ACSA, or the Sale Procedures Order, on the one hand, and this Order on the other hand, the terms and provisions of this Order shall govern.

53. Notwithstanding anything contained herein to the contrary, any counterparty to an executory contract with the Debtors, who timely files an objection to the cure amounts due to such counterparty (including any objections that may arise from any supplements to the Executory

Contract List) shall be preserved.  A hearing shall be held on February 25, 2020 at 11:30 a.m. before the Honorable Alan S. Trust, in Courtroom 2554, 271-C Cadman Plaza East, Brooklyn, New York 11201 as a status conference only.



**Dated: February 10, 2020**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**